IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| KIP EDWARDS, JADRIAN MITCHELL, CURTIS HENDERSON, MICHELLE A. BRAILEY, WINTHROP BROWN, CHASE W. ERICSSON, WILLIE H. GARNER, IV, CHRISTOPHER GREEN, TERENCE K. GREENE, TRENTON J. HARRIS, CORTNI D. HILL, NATHAN MARTINEZ, LANDRESS POUNCY, KATHERINE J. SHERROW, MARK SLIEPCEVIC, KENDRICK C. WHITE, LACY E. VINSON, and JEFFREY L. SPILLERS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KB HOME, <br><br> Defendant. | Civil Action No. 3:11-cv-240 <br><br> COLLECTIVE ACTION (JURY TRIAL) |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs Kip Edwards, Jadrian Mitchell, Curtis Henderson, Michelle A. Brailey, Winthrop Brown, Chase W. Ericsson, Willie H. Garner, IV, Christopher Green, Terence K. Greene, Trenton J. Harris, Cortni D. Hill, Nathan Martinez, Landress Pouncy, Katherine J. Sherrow, Mark Sliepcevic, Kendrick C. White, Lacy E. Vinson, and Jeffrey L. Spillers, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") file this First Amended Complaint and in support thereof would show as follows:

## I. INTRODUCTION

1.1    Plaintiffs and all others similarly situated who have worked for Defendant, including its affiliates and subsidiaries, as salespersons in the three years preceding the filing of this lawsuit, bring this collective action to recover overtime compensation, minimum wages and other wages, liquidated damages, attorney's fees, litigation expenses, costs of court, pre-judgment and post-judgment interest and injunctive relief under the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA").

1.2    The collective action consists of current and former salespersons who worked for Defendant who in the three years preceding the filing of this suit were misclassified as exempt and were not paid minimum wages and/or overtime compensation at time and one half for hours they worked over 40 in a week in violation of the FLSA.  The collective action includes, without limitation, any individual with the job title of sales counselor, sales associate, sales representative or with any similar title who performed similar duties of the named Plaintiffs and was paid as a commissioned, exempt employee (referred to herein as a "salesperson").

1.3    Plaintiffs and all others similarly situated demand a jury trial.

## II. PARTIES

**A.    PLAINTIFFS**

2.1    At all relevant times, Plaintiffs were employed by Defendant within the meaning of the FLSA as a salesperson.  The Notice of Consent for each of the following persons was previously filed in this matter: Kip Edwards, Jadrian Mitchell, Curtis Henderson, Michelle A. Brailey, Winthrop Brown, Chase W. Ericsson, Willie H. Garner, IV, Christopher Green, Terence K. Greene, Trenton J. Harris, Cortni D. Hill, Nathan Martinez, Landress Pouncy, Katherine J.

Sherrow, Mark Sliepcevic, Kendrick C. White, Lacy E. Vinson, and Jeffrey L. Spillers.

*Collective Action Members*

2.2     The collective action members are those current and former salespersons similarly situated to the named Plaintiffs as set forth above.

**B.     DEFENDANT**

2.3     Defendant has already entered an appearance herein.

2.4     Defendant is engaged in interstate commerce with an annual volume of sales of not less than $500,000.

2.5     At all relevant times to this action, Defendant was the employer of Plaintiffs within the meaning of 29 U.S.C. § 203(d) and constitutes an "enterprise" engaged in commerce as defined in 29 U.S.C. §§ 203(r), 203(s).

## III. JURISDICTION AND VENUE

3.1     Jurisdiction of this action is conferred on this Court by 29 U.S.C. § 216(b) and by the provisions of 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any act of Congress regulating commerce."

3.2     Venue is proper in the Southern District of Texas, Galveston Division pursuant to 28 U.S.C. §§ 1391(a)(2) and 1391(b), because among other reasons, Defendant is a resident of and is doing business in this District; some of the Plaintiffs worked for Defendant in Galveston County, Texas; and a substantial part of the events giving rise to the claim occurred in Galveston County, Texas.

## IV. FACTUAL BACKGROUND

4.1     KB Home is one of the nation's largest homebuilders.  KB Home operates a homebuilding, development and financial services business serving homebuyers in markets nationwide.

4.2     In 2010, KB Home generated total revenues of $1.59 billion from homebuilding operations and mortgage banking services to KB Home's buyers.  KB Home is also a developer of new home communities in which it builds new homes.

4.3     In the past 3 years, Defendant has employed thousands of individuals throughout the country as salespersons.

4.4     Plaintiffs were all employed by Defendant.  Plaintiffs worked performing inside sales in Defendant's office.  Plaintiffs were paid by Defendant.  Plaintiffs' paychecks were issued by Defendant with Defendant as the payor.  Plaintiffs' federal W-2 wage and earning statements were issued by Defendant.  Moreover, Defendant filed such W-2 statements with the federal government.  Defendant identified itself as the "employer" of Plaintiffs on such W-2 statements which Defendant prepared and filed with the federal government.

4.5     Plaintiffs performed inside sales work and were not paid time and one-half their regular rate of pay for hours they worked over 40 in a work week ("overtime compensation") and/or minimum wages.

4.6     Plaintiffs worked from a model home sales office provided by Defendant. Plaintiffs' office included a desk, an executive chair, at least two chairs for customers on the other side of the desk, a computer with internet access and email, a telephone, a fax machine, file cabinets, and all other accoutrements of a typical business office.

4.7     Plaintiffs were required to work over 40 hours in a work week while employed by Defendant.  Defendant's sales offices are open at least 9 hours each day 7 days per week. Plaintiffs were required to work 5 to 7 days each week.  Plaintiffs were required to arrive 15-30 minutes prior to start of opening the sales office opening to the public in order to prepare the office for business and admission of the general public.  Plaintiffs very rarely took a lunch break,

and typically worked through lunch almost every business day. Plaintiffs were also required to stay late and to close the sales office at the end of each day after the last customer had left the office.

4.8   Plaintiffs are inside salespersons who sold newly constructed homes and mortgages to Defendant's customers making such sales while working in Defendant's sales office.

4.9   Defendant builds new homes and provides mortgages to the buyers of its new homes. Plaintiffs sold both Defendant's new homes and mortgage products to buyers from the sales office.

4.10   When potential buyers came to Defendant's model home sales office, Plaintiffs determined the buyer's home needs in order to match the buyer with a KB home; obtained a mortgage loan application from the buyer; ran a credit check on the buyer; obtained the buyer's credit score; collected income and debt information from the buyer; and calculated the buyer's debt to equity ratio.

4.11   Plaintiffs were required and trained by Defendant to sell to the buyer the maximum amount of home and accompanying mortgage for which the buyer would qualify under applicable federal guidelines. Plaintiffs used the SIMS prequalification system provided by Defendant in order to sell a mortgage to buyers. Plaintiffs counseled buyers on the qualifications for an FHA loan and the guidelines required by the federal government for such loans. Plaintiffs also provided buyers with a mortgage loan Good Faith Estimate.

4.12   Plaintiffs were further required to provide the buyer with Defendant's incentive information in order to sell Defendant's mortgage to the buyer. For example, Defendant offered various mortgage incentive plans such as paying the buyer's title insurance and closing costs,

and lowering the requirements for earnest money for those new home buyers who also purchased Defendant's mortgage.

4.13 Plaintiffs were also required to obtain a copy of various documents from the buyer in order to sell Defendant's mortgage product to the buyer, including a copy of the buyer's social security card, recent pay check, W-2 statements, tax returns, bank statements, credit card statements, loan statements and other income and debt documentation. After completing these tasks, Plaintiffs were required to continue to work with Defendant's mortgage loan officers and loan processors in completing the loan until the close of the mortgage loan. These activities were all conducted by Plaintiffs while working in Defendant's sales office, either in person or by telephone, facsimile and/or email.

4.14 Plaintiffs were paid on a commission only basis for sales of new homes. Initially, Plaintiffs were paid on a flat fee basis for sales of mortgages, which ranged from $50 to $400 per mortgage sold. In the last two years, Plaintiffs received no compensation for the mortgages that they sold.

4.15 Plaintiffs were also required to participate in "call-a-thons," which involved performing "cold calls" by telephone for two or more hours at night to prospective buyers from Defendant's office. Plaintiffs were required to work at "call-a-thons" on a weekly basis, and sometimes more frequently if the sales goals had not been met. Plaintiffs received no compensation for working at "call-a-thons."

4.16 Plaintiffs were also required to attend training seminars and meetings at Defendant's office. Plaintiffs were not compensated for the hours spent performing such work.

4.17 Plaintiffs were also required to act as customer service representatives and warranty representatives. Plaintiffs were required to perform warranty reviews, as well as

customer satisfaction surveys and follow-up with respect to buyers of new homes that had been sold by a different salesperson. Plaintiffs were further required to respond to all warranty and customer complaints of Defendant's new home buyers with respect to homes sold by various salespersons. Plaintiffs were required to perform these customer service and warranty functions on a daily basis. Plaintiffs received no compensation for performing customer service or warranty service work.

4.18   Defendant's policy and/or practice was to not pay Plaintiffs overtime compensation for hours worked over 40 in a week as required by the FLSA and/or minimum wages. Plaintiffs were only paid a commission on new homes that they sold.

4.19   Plaintiffs are non-exempt current and/or former employees of Defendant that were misclassified as exempt.

4.20   Plaintiffs at times worked for Defendant without receiving any wages in some pay periods. For example, if Plaintiffs failed to sell a new home during a pay period, he/she received no wages for the pay period.

4.21   Plaintiffs were not paid a salary or hourly rate for work performed as a salesperson.

4.22   Plaintiffs were never paid overtime compensation.

4.23   Defendant's business operations, and the wages and compensation of Plaintiffs and all others similarly situated are substantially similar, if not identical, at all of Defendant's locations throughout the country.

4.24   Defendant knowingly failed to pay overtime to Plaintiffs in violation of the FLSA.

4.25    Defendant has been previously sued multiple times by other employees for failing to pay overtime compensation. Defendant has also been previously sued multiple times by other employees for misclassifying its employees under the FLSA.

4.26    Since this lawsuit was originally filed, Defendant has changed the job duties and responsibilities of its salespersons.

4.27    Defendant is aware that its policy and practice of requiring its salespersons to sell both its new homes and its mortgages violated federal law.

4.28    Defendant is further aware that it required Plaintiffs to perform work for which they received no compensation, and certainly no overtime compensation.

4.29    Defendant's conduct has been willful and in bad faith. Plaintiffs are entitled to liquidated damages for such conduct.

4.30    Defendant's practice is to be deliberately indifferent to violations of overtime and/or minimum wage requirements.

## V. COLLECTIVE ACTION ALLEGATIONS

5.1    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

5.2    Other employees have been victimized by this pattern, practice, and policy of the Defendant that is in violation of the FLSA. Plaintiffs are aware that the illegal practices and policies of Defendant have been imposed on other workers.

5.3    Plaintiffs and all others similarly situated shared common job duties and responsibilities as salespersons. Thus, Plaintiffs' experiences are typical of the experience of Defendant's other salespersons.

5.4     Plaintiffs file this case as an "opt-in" collective action as specifically allowed by 29 U.S.C. §216(b).

5.5     Plaintiffs bring these claims on their behalf and on behalf of all others similarly situated salespersons who have not been fully compensated for all work performed, time spent, and activities conducted for the benefit of Defendant.

5.6     Plaintiffs and those similarly situated frequently performed work for which they were not compensated. Plaintiffs and those similarly situated were not paid minimum wages and/or overtime compensation.

5.7     Plaintiffs request that Defendant fully identify all others similarly situated in order that proper notice of their right to consent to participation in this collective action may be distributed, including immediately providing the name, last known address, telephone number dates of employment, and job title(s) of all those similarly situated so that notice may be sent to those persons immediately.

5.8     Plaintiffs seek to represent those similarly situated who have provided consent in writing to join this action as required by 29 U.S.C. § 216(b).

5.9     Those individuals who choose to opt in will be listed on subsequent pleadings and copies of the written consents to sue will be incorporated herein by reference.

5.10     Plaintiffs will fairly and adequately represent and protect the interests of those who are similarly situated.

## VI.  COUNT 1—VIOLATIONS OF THE FLSA

6.1     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

6.2     Plaintiffs and all others similarly situated are lawfully non-exempt employees and were improperly classified as exempt employees.

6.3     Defendant has violated the FLSA by failing to pay Plaintiffs and all other similarly situated salespersons minimum wages and/or overtime compensation at a rate of one and one half their regular rate of pay for all hours worked in excess of 40 hours per week.

6.4     Defendant has not made a good faith effort to comply with the FLSA.

6.5     Defendant's conduct was willful within the meaning of 29 U.S.C. § 255(a).

6.6     In further violation of the FLSA, Defendant has failed to maintain accurate employee pay records, including the number of hours worked per work week, by Plaintiffs and by all other similarly situated employees.

6.7     Defendant deliberately misclassified Plaintiffs and all others similarly situated as exempt employees to avoid paying them overtime compensation and minimum wages.

6.8     No exemption excused the Defendant from paying Plaintiffs and all others similarly situated minimum wages and/or overtime compensation.

6.9     Defendant knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice regarding overtime compensation owed to Plaintiffs and to all other similarly situated employees.

## VII. JURY DEMAND

7.1     Plaintiffs hereby demand a trial by jury.

## PRAYER

WHEREFORE Plaintiffs and all those similarly situated to them who have or will opt into this action, respectfully pray that this Court follow the certification procedures of § 216 of the Fair Labors Standards Act and conditionally certify a collective action as described herein

pending the identification of and receipt of consent from others similarly situated, and that subsequent thereto Plaintiffs and all others who opt-in to this action recover the following:

- a. an order preliminarily and permanently restraining and enjoining Defendant from engaging in the aforementioned pay violations;

- b. damages and restitution for all unpaid wages (including fringe benefits and bonuses), unpaid overtime compensation (at time and one-half), and unpaid minimum wages and other injuries, as provided by the FLSA;

- c. liquidated damages, as provided by the FLSA, equal to the sum of the amount of wages and overtime compensation that were not properly paid;

- d. all applicable penalties for the violations set forth herein;

- e. an award of reasonable attorney's fees, expenses, expert fees and costs incurred in vindicating the rights of Plaintiffs and all those similarly situated;

- f. an award of pre-judgment and post-judgment interest at the highest rate permitted by law; and

- g. such other and further relief, at law or in equity, as this Court deems just and appropriate.

DATED: July 8, 2011

                                  Respectfully submitted,

                                  By: <u>/s/ Rhonda H. Wills</u>
                                      Rhonda H. Wills
                                      ATTORNEY-IN-CHARGE
                                      State Bar No. 00791943
                                      S.D. Id. No. 20699
                                      WILLS LAW FIRM
                                      1776 Yorktown, Suite 600
                                      Houston, Texas 77056
                                      Telephone: (713) 528-4455
                                      Facsimile: (713) 528-2047

                                  ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

      I hereby certify that on **July 8, 2011**, I electronically filed the foregoing document with the clerk of the court for the Southern District of Texas using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented to accept this Notice as service of this document by electronic means:

David B. Jordan
LITTLER MENDELSON
APROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX 77010-3031
713.951.9400 (Telephone)
713.951.9212 (Telecopier)
djordan@littler.com

Kevin S. Little
LITTLER MENDELSON
APROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX 77010-3031
713.951.9400 (Telephone)
713.951.9212 (Telecopier)
klittle@littler.com

Jennifer A. Youpa
LITTLER MENDELSON
APROFESSIONAL CORPORATION
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX 75201.2931
214.880.8100 (Telephone)
214.880.0181 (Telecopier)
jyoupa@littler.com

ATTORNEYS FOR DEFENDANT


                                        /s/ Rhonda H. Wills
                                        Rhonda H. Wills