IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **KIP EDWARDS et al.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:11-CV-00240 |
| | § | |
| **KB HOME,** | § | |
| | § | |
| Defendant. | § | |

## KB HOME'S REPLY TO PLAINTIFFS' RESPONSE TO KB HOME'S RULE 12(b)(6) MOTION TO DISMISS

**A.   Plaintiffs Fail to put KB Home on Notice of the *Collective* Nature of Their Claims.**

Plaintiffs, a handful of local new home sales persons, take a remarkable leap in their pleadings, arguing collective treatment on a grand scale, but without pleading any of the grounds sufficient to put KB Home on notice as to how such grand treatment is appropriate. As the Supreme Court has instructed, however:

> Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Relying on (but misapplying) the oft-cited case of *Lusardi v. Xerox Corp.*,[1] Plaintiffs claim that *Lusardi* eases their pleading obligations under Rule 8 and *Iqbal*, because the Court should not peer into the collective pleadings until the Plaintiffs later request conditional certification under the *Lusardi* two-stage process.

Indeed, *Lusardi* sets forth a two-stage proffer of proof for purposes of certification under the FLSA claims. During the first stage, typically occurring during

---

[1] 118 F.R.D. 351 (D.N.J. 1987).

the discovery phase of the litigation but prior to notice to potential class members, Plaintiffs must present <u>evidence to support their allegations</u> in the complaint that the putative class members were together the victims of a single decision, policy, or plan. *Mooney v. Aramco Services, Inc.*, 54 F.3d 1207, 1214 (2005). This initial presentation of proof, however, does not replace Plaintiffs' obligations to initially, <u>and sufficiently</u> plead the factual <u>allegations</u> in their complaint for which they will later present proof during their initial request for conditional certification.

Here, Plaintiffs hope to skip this pleading requirement under Rule 8 and *Iqbal/Twombly*, and only provide details of collective treatment once they request conditional certification later in the course of litigation. This re-ordering of the stages of litigation robs KB Home of sufficient notice regarding the allegations supporting collective treatment, and cannot be squared with either the pleading requirements of *Iqbal* and *Twombly* or the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*.

Plaintiffs fail to put KB Home on notice of <u>any</u> relevant data about the purported class, how the local new home sales persons are similarly situated to others outside of the geographic area, what necessary common <u>policy</u> or <u>practice</u> binds these local new home sales persons to other persons, how this common policy or practice has affected other purported employees, and how the day to day <u>duties</u> of such purported employees are <u>substantially similar</u> to the Plaintiffs. Indeed, this claim boils down to Plaintiffs conclusion that "similarly situated" individuals are treated "similarly," without providing any notice to KB Home of the grounds for such conclusion. *See, e.g., Landry v. Peter Pan Bus Lines, Inc.*, No. 09-11012-RWZ, 2009 U.S. Dist. LEXIS 129873, at *3-4 (D. Mass. Nov. 20, 2009) (dismissing FLSA collective action claims under Rule 12(b)(6)).

These hollow conclusions are further highlighted by the United States Supreme Court's recent decision in *Wal-Mart v. Dukes*. While Plaintiffs reject the applicability of this case out of hand, its central holding is not confined to class (as opposed to collective) actions. Instead, *Dukes* reaffirms the role of the district court as the appropriate gatekeeper to ensure that "an examination of the entire class will produce not just a common question—here, unpaid wages—but a <u>common answer</u> to the crucial question." *Wal-Mart Stores, Inc. v. Dukes*, No. 10-277, slip op. at 12 (U.S. June 20, 2011) (emphasis added). This examination directly implicates the initial allegations about the putative class. Without sufficient information about the putative class, a collective action claim is merely "possible" rather than "plausible." The first step of the gatekeeper role is to ensure that the gates to discovery are not opened upon the mere mention of "collective" treatment in a complaint.

**B.     Plaintiffs Materially Misstate the Department of Labor's Opinions on New Home Sales Persons.**

In their Response, Plaintiffs misstate the actual language in the Department of Labor's multiple, and consistent, opinions regarding new home sales persons, which expressly state that such persons are exempt from the minimum wage and overtime wage requirements.

For example, Plaintiffs state that DOL Opinion Letter 2007-1, "concerns sales associates *stationed in temporary trailers away from the development*." Pls.' Resp. and Objection to Def.'s Rule 12(b)(6) Mot. to Dismiss ("Pls.' Resp."), at 8. The quote, however, is incomplete and misleading.

A reading of Opinion Letter 2007-1 indicates that it covers much more than sales associates stationed in off-site trailers. Indeed, the very sentence from which the

3

Plaintiffs draw their language proves a much broader scope, expressly stating that coverage includes "[s]ales associates [who] are based at the company's offices located within subdivisions that are in the process of being constructed or sold, <u>or</u> in temporary sales trailers outside such subdivisions." Accordingly, reading Opinion Letter 2007-1 as a whole—or just reading the relevant sentence in its entirety—indicates that the Plaintiffs fall within the coverage of the letter.

Plaintiffs further distort the DOL's determinations when discussing Opinion Letter 2007-2. Plaintiffs argue that this letter only applies to employees who are "'frequently' absent from the model home—at least one or two hours a per day, twice a week." Pls. Resp. at 9. Again, Plaintiffs misquote the opinion letter in a manner that does not favor Plaintiffs. Clarity is quickly restored by attention to the actual text of the letter, which states, "[s]ales employees generally leave the model home or trailer one or two hours a day, <u>one or two times a week</u>, to engage in selling or sales-related activities." Op. Letter 2007-2 (emphasis added). The plain text of the letter accordingly covers employees who engage in sales activities outside of the model home <u>for as little as one hour per week</u>.[2]

This final point highlights the fatal flaw in Plaintiffs' pleading. Plaintiffs argue that the timing requirements of Opinion Letters 2007-1 and 2007-2 do not apply to them, as each letter requires employees to spend some amount of time outside of the model

---

[2] This conclusion is also <u>consistent with language from the Field Operations Handbook</u> of the Wage and Hour Division ("FOH"), which is cited in the opinion letters relevant to this case but is not discussed by Plaintiffs. Under the handbook, employees meet the Outside Sales exemption provided they leave the office or model home "customarily and regularly" to perform sales tasks. FOH § 22e06c. <u>Regarding the frequency of such outside sales tasks, "[n]othing . . . requires that, to meet the definition of 'customarily and regularly, a task be performed more than once a week."</u> 69 Fed. Reg. at 22,187.

4

home or sales office.[3] However, while Plaintiffs recite a laundry list of activities that they performed "inside" the sales office, nowhere do they plead that their activities were conducted solely in the sales office. When the applicable Opinion Letters require as little as one hour per week to be spent outside of the sales office, specificity regarding all time spent outside of the sales office is necessary to prevent the defense of the Outside Sales exemption from appearing on the face of the pleadings.

**C.  Plaintiffs Seek to Distance Themselves From the Recent and Thorough Analysis Given by the United States Department of Labor.**

Plaintiffs contest the weight to be given to the Opinion Letters, stating that courts are not necessarily bound by agency opinions, and that courts may choose whether to defer to agency opinions based on a number of factors. Pls.' Resp. at 8 (citing *U.S. v. Mead Corp.*, 533 U.S. 218, 228 (2001)). Plaintiffs ignore, however, the fact that other courts have engaged in this analysis and have determined that Opinion Letters 2007-1 and 2007-2 are entitled to deference.

For example, in *Billingslea v. Brayson Homes, Inc.*, the court noted that these identical opinion letters (2007-1 and 2007-2-) "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." No. 1:04-CV-00962-JEC, 2007 U.S. Dist. LEXIS 52566, at *10 (N.D. Ga. July 19, 2007). The court further stated that, "When a regulation is ambiguous, the implementing agency's interpretation of its language is entitled to deference, and must be upheld 'so long as it is reasonable.'" *Id.* (quoting *Sierra Club v. Johnson*, 436 F.3d 1269, 1274 (11th Cir. 2006)). Based on these established principles of deference to DOL opinions, the

---

[3] Plaintiffs also cite Opinion Letter 2007-4, which involved the Department of Labor's review of time-share sales. Plaintiffs have made no allegations that KB Home is in the business of time-shares, or that it retains a shared ownership in the property after contracting with a customer, both of which were the determinative distinctions for the Department of Labor in its opinion. *See generally* Op. Letter 2007-3.

5

court relied on Opinion Letters 2007-1 and 2007-2 in determining that the Outside Sales exemption barred the plaintiffs' claims. *Id.* at *11-14.

Further, the court in *Tracy v. NVR, Inc.*—the case that Plaintiffs cite for the proposition that the DOL's Opinion letters should not apply—also relied on the DOL's letters. *See* 599 F. Supp. 2d 359, 362-63 (W.D.N.Y. 2009). In *Tracy*, the court "found that there is no reason to reject the DOL's opinion letters as unreliable," further stating that it was "compelled to accept the DOL's reasoning" as set forth in Opinion Letters 2007-1, 2007-2, and 2007-4. *Id.* at 363. Plaintiffs' reliance on this case is entirely misplaced, as *Tracy* stands for the proposition that the DOL's Opinion Letters are <u>entitled</u> to deference.[4]

As the applicability of the Outside Sales exemption constitutes a defense to Plaintiffs' claims, and Plaintiffs have wholly failed to demonstrate the inapplicability of this relatively low bar, dismissal of the suit is proper. *See Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008) (holding that dismissal is proper if "the facts pleaded and judicially noticed" demonstrate applicability of a successful defense).

**D.   Plaintiffs Fail to Plead Facts Showing That KB Home Was Their Employer.**

Dismissal of the Complaint is also proper due to the lack of factual support for Plaintiffs' conclusory allegations that KB Home "employed" them. Plaintiffs argue that KB Home employed them because "KB Home paid Plaintiffs as evidenced by Plaintiffs' paychecks and W-2 wage and earning forms on which KB Home identified itself as the

---

[4] <u>Plaintiffs further misstate the holding in *Tracy*</u>, indicating that the court "held that [the] opinion letters did not establish that the outside sales exemption applied to new home salespersons who worked from a model home sales office." The court held no such thing, as the court was never asked to decide the ultimate applicability of the exemption. *Tracy* involved the <u>plaintiff's</u> motion for summary judgment on his FLSA claims. *Tracy*, 599 F. Supp. 2d at 360. The court, relying on the DOL's opinion letters, determined that a fact issue regarding the applicability of the Outside Sales exemption existed, and therefore denied the plaintiff's motion for summary judgment. *Id.* at 364-65. Accordingly, the actual holding in *Tracy* undermines Plaintiffs' position.

6

'employer' of Plaintiffs." Pls.' Resp. at 6. These allegations, however, do not sufficiently meet the requirements of the "economic reality" test used to determine employer status in the Fifth Circuit. *See, e.g.*, *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010). Rather, at least one other court ruling on a collective action against KB Home has specifically stated that contentions that KB Home maintains employment records and provides payroll services "are <u>as a matter of law insufficient to establish</u> that KB Home was plaintiff's employer under the economic reality test." *Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1234 (C.D. Cal. 2007) (emphasis added).

Materially absent from the pleadings are any allegations of what persons or companies directed the day to day activities of the Plaintiffs; who supervised their daily work schedules; who provided daily assignments to the Plaintiffs; what persons or companies make decisions regarding their compensation, their method of employment, their promotions, their demotions, their hiring or firing; what persons or companies provide the tools for them to perform their duties; or what persons or companies evaluate their performance. *See, e.g., Cavallaro v. UMass Memorial Health Care Inc.*, __ F.3d __, 2011 U.S. Dist. LEXIS 61003, *13 (1st Cir. June 8, 2011) (holding that the plaintiffs failed to sufficiently allege that (a) the defendant had the power to hire and fire employees, (b) supervised and controlled employee work schedules or conditions of employment, (c) determined the rate and method of pay, and (d) maintained employment records). Without such information, KB Home cannot be placed on fair notice as to the grounds for KB Home's liability for another employer's purported violation of the FLSA.

[2]

8

Accordingly, for the reasons set forth above, Plaintiffs' failure to properly meet their obligations under Rule 8 and *Twombly/Iqbal* warrants dismissal of their claims against KB Home, and any such other relief the Court deems appropriate.

                Respectfully submitted,

                /s/David B. Jordan

                David B. Jordan
                State Bar No. 24032603
                LITTLER MENDELSON
                A PROFESSIONAL CORPORATION
                1301 McKinney Street
                Suite 1900
                Houston, TX 77010-3031
                713.951.9400 (Telephone)
                713.951.9212 (Telecopier)
                djordan@littler.com

                ATTORNEY FOR DEFENDANT

**OF COUNSEL:**

Kevin S. Little
State Bar No. 24070155
LITTLER MENDELSON
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX 77010-3031
713.951.9400 (Telephone)
713.951.9212 (Telecopier)
djordan@littler.com
klittle@littler.com

Jennifer A. Youpa
State Bar No. 01383400

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX 75201.2931
214.880.8100 (Telephone)
214.880.0181 (Telecopier)
jyoupa@littler.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 18th day of July 2011, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing upon the counsel below:

Rhonda H. Wills
Wills Law Firm
1776 Yorktown, Suite 600
Houston, TX  77056
*Attorney for Plaintiff*

                              /s/Kevin S. Little_____