UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KIP EDWARDS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3-11-240 |
| | § | |
| KB HOME, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Forty current and former salespersons of new homes have filed suit against KB Home.  They allege that KB, by paying them only commissions, violated the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA").   KB contends that Plaintiffs were properly classified as exempt employees under the FLSA's "Outside Sales Exemption."

Plaintiffs now seek conditional certification so they can provide nationwide notice of this lawsuit to "onsite" salespersons employed by KB and its subsidiaries over the three years preceding the filing of this lawsuit. This Court has considered the arguments of counsel, the applicable authorities, and the facts of the case, and now **GRANTS** Plaintiffs' motion for conditional certification.

## I.    BACKGROUND

KB is a major homebuilding company that builds single-family homes, townhomes, and multilevel residential buildings.  It operates a number of subsidiaries in at least twelve different states and, in fiscal year 2010, had total revenues of approximately $1.59 billion.  Although KB's subsidiaries have authority to independently set their own sales goals and have discretion in how they pursue those goals, all of KB's subsidiaries allegedly follow the following basic pattern of operation.

Typically, KB builds homes as part of planned home communities that consist of a large number of individual home plots as well as some community features and neighborhood amenities.  KB sells these homes directly to individual homebuyers, and it employs salespersons to do so.  When KB begins building a new home community, it usually leaves most of the home plots vacant and instead builds one or more model homes, each of which is usually fully upgraded.  These are then used to convince buyers to purchase a built-to-order home on one of the vacant lots.  Often, one of these model homes is stocked with basic office equipment and doubles as a "model home sales office."  Other times, one of the model homes' garages or a mobile home may serve as the sales office. Many of KB's salespersons are assigned to work "onsite" at the sales offices of certain new home

communities, though others are assigned "offsite" to more permanent company locations rather than a particular community.  Onsite salespersons work from the sales offices to sell new homes to potential customers who visit their assigned community.

KB's onsite salespersons generally have similar duties nationwide. Salespersons are primarily responsible for making sales by taking potential homebuyers on tours of the model homes, vacant home sites, and neighborhood amenities of new KB communities.  Salespersons also complete paperwork in the temporary sales office or permanent KB office, contact potential homebuyers from the office via telephone and the internet, and perform a variety of miscellaneous duties.  Onsite salespersons occasionally go to locations outside their assigned communities to network, distribute promotional materials, attend sales meetings, or perform opposition research.

Plaintiffs allege that KB salespersons generally work in excess of 40 hours per week, and normally work weekends.  KB pays its salespersons on a commission-only basis.  It does not pay them a base salary or any set wages or overtime, even when salespersons fail to sell any homes.  Instead of paying a minimum wage in such circumstances, KB allegedly allows its salespersons to take a draw, essentially a loan, against future commissions.

3

Through its subsidiaries, KB allegedly employs thousands of these salespersons.

Plaintiffs are current and former employees of KB's Texas subsidiary, KB Home Lone Star, Inc. They filed this suit in May 2011. KB thereafter filed a motion to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6). KB contended that two Department of Labor opinion letters interpreting the Outside Sales Exemption to apply to new home salespersons applied to this case, so that each individual Plaintiff was properly classified as exempt from the FLSA's minimum wage and overtime provisions. *See* Docket Entry No. 10, at 4 (citing Wage & Hour Opinion Letter FLSA 2007-1 (Jan. 25, 2007); Wage & Hour Opinion Letter FLSA 2007-2 (Jan. 25, 2007)). Although KB's motion to dismiss was granted in August 2011, Plaintiffs promptly moved for reconsideration, and the case was reinstated in November 2011. Plaintiffs moved to conditionally certify a nationwide class in January 2012, and, in May 2012, while the motion for certification was pending, the case was reassigned to this Court.

In support of conditional certification, Plaintiffs have submitted 33 essentially identical declarations from onsite salespersons employed by KB Home Lone Star, Inc., as well as public job postings advertising onsite salesperson positions with a number of KB subsidiaries in different states.

Though not submitted in support of its current motion, Plaintiffs earlier filed an additional sixteen declarations in support of their motion for reconsideration.  In opposition, KB has submitted the declarations of 28 salespersons employed by different KB subsidiaries nationwide, as well as "secret shopper" video evidence documenting the ways in which different salespersons attempt to sell homes.

## II.   LEGAL STANDARD

Under the FLSA, nonexempt employees must be paid a legally prescribed minimum hourly wage. 29 U.S.C. § 206(a)(1).  In addition, those that work more than 40 hours per regular workweek must be paid "time and a half" overtime compensation.  *Id.* § 207(a).  The FLSA creates a private right of action pursuant to which employees may sue their employers to recover unpaid minimum wages and overtime.  *See id.* § 216(b).

Employees who bring suit under the FLSA may do so individually or as a collective action on "behalf of . . . themselves and other employees similarly situated."  *Id.*  Unlike traditional Rule 23 class actions, FLSA collection actions operate on an "opt-in" basis in which potential class members must give affirmative notice of their consent to join the suit.  *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  The

collective action tool allows plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Of course, because FLSA collective actions are "opt-in," these benefits are only available if "employees receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* Notice to putative class members, however, will only issue if a collective action is conditionally certified by the district court. *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 800 (S.D. Tex. 2010).

District courts have discretion whether or not to certify proposed collective actions because section 216(b) gives them "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly[][and] sensible." *Hoffman-LaRoche*, 493 U.S. at 170. In the Fifth Circuit, as well as most other circuits, this discretion is generally guided by the "two-step *ad hoc*" method commonly known as the *Lusardi* approach. *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-00738, 2012 WL 334038, at *1 (S.D. Tex. Feb. 2, 2012) (citing *Mooney*, 54 F.3d at 1213–14). The two steps of the *Lusardi* approach are, respectively, the "notice stage" and the "decertification stage." *In re Wells Fargo Wage and Hour Emp't Practices Litig. (No. III)*, No. H-11-2266, 2012 WL 3308880, at

*19 (S.D. Tex. Aug. 10, 2012).  At the notice stage, the district court must determine whether to conditionally certify the class and issue notice to the putative class members.  *Richardson*, 2012 WL 334038, at *1.  Then, if a class is conditionally certified, notice may issue and the action remains a collective one throughout discovery.  *McKnight*, 756 F. Supp. 2d at 802.  At the decertification stage, which usually takes place only after discovery is nearly complete, the defendant may move to "decertify" the class.  *Id.* (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987)).  District courts do not decide the merits of the parties' claims or defenses at either stage.  *Richardson*, 2012 WL 334038, at *1 (citing *McKnight*, 756 F. Supp. 2d at 802).

In deciding whether to permit notice to other potential plaintiffs, this Court should consider only the pleadings and any other affidavits or related evidence that has been submitted.  *Mooney*, 54 F.3d at 1213–14.  The named plaintiffs must "make . . . a minimal showing that putative class members are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted."  *Richardson*, 2012 WL 334038, at *2 (quotation marks and citations omitted).  This standard is "fairly lenient" and "typically results

in conditional certification of a representative class."[1]  *Mooney*, 54 F.3d at 1214 (quotation marks omitted).

The "key consideration" in determining whether the plaintiffs have satisfied this standard is that they must show there to be "substantial allegations that potential members were together the victims of a single decision, policy, or plan."  *Richardson*, 2012 WL 334038, at *2 (quoting *McKnight*, 756 F. Supp. 2d at 801) (quotation marks omitted).  In making this determination, the district court should consider whether there is evidence that the individual plaintiffs had similar "factual and employment settings" and whether there was a "common policy or plan" that affected the potential plaintiffs.  *Id.* (citing *Hardemon v. H & R Block Enters.*, No. 11-20193-CIV, 2011 WL 3704746, at *3 (S.D. Fla. Aug. 23, 2011); *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 937 (N.D. Ill. 2008)).  Even at the notice stage, conditional certification "should be denied if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice."  *Id.* (citation and quotation marks omitted).  The fundamental inquiry is whether the plaintiffs show

---

[1] This is not a case in which extensive discovery has already taken place thus warranting "a more exacting level of scrutiny" at the conditional certification stage. *Richardson*, 2012 WL 334038, at *2.  No deposition testimony was submitted in the conditional certification briefing, which relied on declarations and other documents obtained by the parties' own investigation prior to the start of discovery.  *Cf. id.* (declining to apply the heightened standard even though deposition testimony and other evidence had been placed in the record).

"some identifiable facts or legal nexus that bind the claims so that hearing the cases together promotes judicial efficiency." *McKnight*, 756 F. Supp. 2d at 801 (quoting *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)) (brackets omitted).

## III.  DISCUSSION

### A.  *The Relevant Evidence*

The declarations of the Houston-based salespersons tend to show that all the onsite salespersons in the Houston area had similar job duties and were classified as exempt employees paid only by commission. First, as noted, Plaintiffs have submitted 33 indistinguishable declarations from onsite salespersons who, according to KB, were all based in the Houston area and were employed by KB Home Lone Star, Inc., KB's Texas subsidiary. In each of these declarations, the declarants state that, as part of their duties, they (1) "sold newly constructed homes to KB Home's customers while working from a KB Home sales office . . . within a community under development"; (2) "reported to work at a sales office where [their] day-to-day business operations were conducted"; (3) "were "required to perform a great deal of paper work in the sales office each day and spend several hours each day on the telephone in the sales office"; (4) "demonstrate[d] the model home where the sales office was located";

(5) were "provided with floor plans and pricing information of all available homes in the sales office . . . [and] would in turn provide this information to potential new buyers when they visited the sales office"; (6) "regularly worked more than 40 hours per week, . . . [were] not paid any overtime compensation[,] . . . [and were] paid a commission only, with no salary, guaranteed minimum wages or overtime pay."  *E.g.*, Docket Entry No. 56-18, at ¶¶ 4–5, 7–8, 10, 12.  Moreover, the sixteen declarations Plaintiffs previously submitted in support of their motion for reconsideration show that the Houston-based salespersons would leave the sales office "to show prospective home buyers 'spec' houses and vacant lots," which they allegedly did "2 to 3 times per month," or to "visit[] local real estate agents and brokers to market KB Home's communities."[2]  *E.g.*, Docket Entry No. 26-1, at ¶¶ 7, 9.

Second, Plaintiffs have submitted seventeen copies of online job postings for KB salesperson jobs, postings that were listed on KB's own website as well as general job-finding websites like monster.com and jobing.com.  Courts rely on such job postings at the conditional certification

---

[2] KB argues that the two sets of declarations contradict each other and show that Plaintiffs are selectively updating their declarations to avoid the Outside Sales Exemption.  But however the statements concerning work performed outside the sales offices might affect the merits of the exemption, at this stage the statements merely corroborate Defendants' declarations, discussed below, thus helping to show that the putative class members are similarly situated.

stage because at the prediscovery stage more thorough corporate documents are generally not available to plaintiffs. *See, e.g.*, *Zaniewski v. PRRC, Inc.*, 848 F. Supp. 2d 213, 227–29 (D. Conn. 2012); *Craig v. Rite Aid Corp.*, No. 08-cv-2317, 2009 WL 4723286, at *3 (M.D. Pa. Dec. 9, 2009).   The submitted postings, which advertise positions from sixteen cities in eight different states,[3] list some of the basic duties of an onsite salesperson, referred to in the postings as an "Onsite Sales Counselor" or "New Home Sales Counselor."   Every one of the postings states that salespersons are required to "[l]earn and adopt KB Home's structured selling process and complete required training through KB Home's online University"; "[c]ontinually prospect for new customers through networking, referrals, and effective follow-up"; and "[s]et and maintain the required number of appointments to meet/exceed sales goals."  *See* Docket Entry No. 56-35.  All but one of the postings represent that salespersons must "[p]resent and sell the features and benefits of new homes within a KB Home community."  *Id.*  Thirteen of the seventeen postings represent that salespersons must "work every weekend, evenings, and most holidays."  *Id.*  Finally, all of the postings clearly state that "[t]his is a 100% commission (against draw)

---

[3] The job postings advertise positions in Tucson, Arizona; Riverside and Wildomar, California; Denver, Colorado; Daytona Beach, Jacksonville, Orlando, and Tampa, Florida; Charles County, Maryland; Albuquerque, New Mexico; Raleigh, North Carolina; Las Vegas, Nevada; and Austin, Houston, San Antonio, and Temple, Texas.  *See* Docket Entry No. 56-35.

opportunity" where compensation is "determined solely by the success of the individual Sales Representative." *Id.* There are no apparent differences between the postings for the Texas-based salesperson positions and the postings for positions in other states.

Third, KB has submitted 28 salesperson declarations of its own, some from onsite salespersons and some from offsite salespersons. As KB has noted, this Court should "consider the evidence presented by *both* parties, without weighing the evidence submitted by the plaintiff any more strongly than that submitted by the defendant." Docket Entry No. 60, at 23 (emphasis in original) (citations omitted). KB has presented declarations from five salespersons working in California, three in Colorado, four in Florida, two in North Carolina, three in Nevada, and eleven in Texas.

Though submitted in an attempt to demonstrate distinctions among potential class members, the declarations show that KB's onsite salespersons follow the same basic sales methods, just as Plaintiffs allege. The salespersons "typically work out of temporary sales facilities, such as a sales office attached to a model home or located in [the] model home's garage . . . in the community where KB Home is building and selling homes." Docket Entry No. 61-2, Ex. A-7, at ¶ 6. In these offices, the salespersons perform duties such as "meeting with buyers, meeting with real estate sales

12

employees, [and] meeting with construction personnel . . . ." Docket Entry No. 61-3, Ex. A-16, at ¶ 6. When potential buyers come to their sales offices, they show them through the model homes in the community. *See, e.g.*, Docket Entry No. 61-3, Ex A-17, at ¶ 11. Afterwards, the salespersons often "take them out to see available lots based on their preferences." Docket Entry No. 61-3, Ex. A-18, at ¶ 12. Where possible, they "site" the lots to make potential buyers more familiar with the lot and increase the chances of a sale, a process in which they "physically walk the customer on the land and pace out the lot, show them where the front of the house would be, show them how big the front & back [of the] yard will be, etc." Docket Entry No. 61-3, Ex. A-19, at ¶ 11. Salespersons often take potential buyers "around the neighborhood to show them the amenities, such as the community center or pool." Docket Entry No. 61-1, Ex. A-6, at ¶ 17. In addition, though the declarations do reveal differences between onsite and offsite salespersons, these differences are not relevant because Plaintiffs only seek to provide notice to those working onsite.

Further showing similarity and corroborating Plaintiffs' allegations, KB's declarations tend to show that its onsite salespersons spend a great deal of time working in the sales offices performing duties including "completing paperwork, prospecting customers, following up with customers, scheduling

appointments, calling real estate agents to generate interest in homes, emailing and faxing marketing materials, translating paperwork, obtaining updates from banks, arranging closing dates with buyers, . . . etc." Docket Entry No. 61-4, Ex. A-25, at ¶ 25. The salespersons also spend some time networking or leaving sales materials at locations outside their assigned communities, but generally they do not appear to directly contact potential buyers at these locations. *See, e.g.*, Docket Entry No. 61-1, Ex. A-4, at ¶ 28. KB's declarations are either silent with regard to how salespersons are paid or, like those submitted by Plaintiffs, show that they are paid on a commission basis. *See, e.g.*, Docket Entry No. 61-1, Ex. A-2, at ¶ 3.

### B.   *Analysis*

While the merits are not for the Court to decide at this stage, *see Richardson*, 2012 WL 334038, at *1, identifying the underlying dispute is necessary to determine whether the potential class is similarity situated with respect to a common FLSA policy. The central dispute in this case is whether KB improperly classified its salespersons as falling under the FLSA's Outside Sales Exemption.[4] *See* 29 U.S.C. § 213(a)(1) (exempting

---

[4] Although KB relies primarily on the Outside Sales Exemption, it also opposes certification on the ground that another exemption for "Highly Compensated Employees" may apply to some potential class members. *See* 29 C.F.R. § 541.601. However, it is likely that the merits of that defense hinge on whether any of the Plaintiffs meet the exemption's monetary requirements: a total annual compensation of at least $100,000, with at least $455 per week of that amount paid on a salary or fee basis. *Id.* Given that

"any employee employed . . . in the capacity of outside salesman" as defined by the Department of Labor's regulations); 29 C.F.R. § 541.500(a) (defining the term).   KB argued in its motion to dismiss that this classification, supported by two Department of Labor opinion letters, was proper under the FLSA and warranted dismissing the claims of all Plaintiffs.[5]   And the evidence before the Court at this stage indicates that KB classifies all "onsite" salespersons nationwide, not just Plaintiffs who work in Texas, under this exemption.

KB's treatment of all onsite salespersons as "one homogenous group for purposes of the FLSA" is enough to establish that the potential class members are sufficiently situated at this preliminary stage.   *Delgado v. Ortho-McNeil, Inc.*, No. SACV07-263CJCMLGX, 2007 WL 2847238, at

---

the records of each employee's compensation should be easy to obtain and quantify, it should not be difficult for the Court to resolve the merits of that defense without impairing the efficient exercise of the collective action tool.
[5] KB admitted at the hearing on Plaintiffs' motion for reconsideration that it did not dispute Plaintiffs' characterization of how its onsite salespersons performed their work:

> THE COURT: Do I take it then there is no serious factual dispute as it relates to what [Plaintiffs' counsel] says about how the work is accomplished; that is, I gather these salespersons, whatever you might call them—inside, outside—they show up at a particular site which is a model home site . . . the person coming in, I gather, actually sees what these amenities look like, I gather, because they are all installed in this model home, right?
>
> [KB]: I think that's exactly right, Your Honor.  We don't really allege that there's any factual dispute at all.

Docket Entry No. 33, at 17:8–20.

*2–3 (C.D. Cal. Aug. 7, 2007). The distinctions among salespersons that KB highlights—*e.g.*, how much time they spend outside the sale office showing homes, how often they engage in promotional activities, how many model homes they show each potential buyer, and whether or not they highlight the neighborhoods' communal amenities to potential buyers— reflect the unsurprising fact that salespersons use different sales tactics and have varying levels of success, but those different tactics do not affect KB's classification that they all fall under the Outside Sales Exemption. Another court has noted the inconsistency of an employer "argu[ing] that they should be permitted to treat all sales representatives as one group for purposes of classifying them as exempt, but that this Court can only determine the validity of that classification by looking to the specific job duties of each individual sales representative." *Id.*; *see also Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) ("Defendant cannot, on the one hand, argue that all [plaintiffs] are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each [plaintiff] in order to determine whether that individual is exempt.") (quotation marks omitted).

Because the global application of an FLSA exemption to a particular job presumes substantial similarities in those employees' duties, conditional

certification is commonly granted in cases alleging misclassification. *See Davis v. Mostyn Law Firm, P.C.*, No. 4:11-cv-02874, 2012 WL 163941, at *9 & n.1 (S.D. Tex. Jan. 19, 2012) ("[Defendant] avers that an employer's classification of employees is not a decision, policy, or plan that supports collective action treatment.  The Court disagrees, noting that many courts have issued class notice at the first *Lusardi* stage even when the alleged policy is a classification of exempt."); *see also, e.g.*, *Walker v. Honghua Am., LLC*, No. 4:12-cv-00134, 2012 WL 1601288, at *6 (S.D. Tex. May 7, 2012); *Delgado*, 2007 WL 2847238, at *3; *Craig*, 2009 WL 4723286, at *3. In contrast, courts are more skeptical about certifying cases alleging that an employer denied overtime pay to nonexempt employees by forcing them to work off-the-clock.  *See, e.g.*, *Richardson*, 2012 WL 334038, at *4–5 (declining to certify a nationwide class of personal bankers allegedly forced to perform unpaid overtime work when the defendant bank's official policy forbade such work and there was no evidence that the bank had an unofficial nationwide practice of pressuring bankers to work without overtime pay).  In this case, where it is undisputed that the potential class members were subject to a single policy classifying KB onsite salespersons under the Outside Sales Exemption, Plaintiffs have met their admittedly light burden to show that notice should issue.

KB's other arguments opposing conditional certification ignore that this is merely a preliminary stage in the FLSA certification process, one that is simply the prelude more exacting scrutiny at the decertification stage. For example, KB argues that the lenient *Lusardi* approach is inconsistent with the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), which reversed certification of a nationwide sex discrimination case. But conditional certification under *Lusardi* is not a final certification decision like the one the Supreme Court examined in *Dukes*; a more rigorous, final inquiry will follow, upon KB's request, after notice and discovery.[6]   Moreover, even if this were the final stage of certifying an FLSA collective action, *Dukes* focused on the specific requirements of Rule 23 and there are vast differences, both legally and practically, between those class actions which bind absent class members and FLSA collective actions which affect only those who opt in. *See In re Wells Fargo*, 2012 WL 3308880, at *23 n.11; *Richardson*, 2012 WL 334038, at *2 n.8. This Court thus agrees with the majority of courts that have considered the question and finds that *Dukes* does not undermine using

---

[6] It is also worth noting that the Supreme Court's holding that the *Dukes* class did not meet Rule 23's commonality requirement turned on the fact that the challenged Wal-Mart policy granted discretion to supervisors at each store, which meant that each store was treating employees differently. *Dukes*, 131 S. Ct. at 2554. As discussed above, in this case the Plaintiffs are challenging a nationwide classification policy.

the *Lusardi* approach at this notice stage.  *See In re Wells Fargo*, 2012 WL 3308880, at \*23 (citing cases).

KB also warns the Court about difficulties other district courts have faced when trying to manage FLSA collective actions in which large numbers of plaintiffs joined after the notice stage.  *See* Docket Entry No. 60, at 18–19, 31–32 (citing *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278 (N.D. Tex. 2008); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 578–79 (E.D. La. 2008)).  In *Proctor* and *Johnson*, courts decertified FLSA collective actions after determining that the plaintiffs were not similarly situated because the merits would turn on a large number of individualized issues.  *See Proctor*, 250 F.R.D. at 284; *Johnson*, 561 F. Supp. 2d at 579.  But this is not the problem KB makes it out to be; it is what is expected under *Lusardi*.  At the decertification stage, some collective actions will continue to satisfy the certification standards and will proceed to trial; some will present too many individualized questions and will no longer proceed collectively.

Plaintiffs have made a sufficient showing at this preliminary stage to warrant the issuance of notice, to permit full discovery, and to then allow the Court to conduct the more rigorous analysis at the final decertification stage when it has the benefit of more information.

**IV.   ORDER**

For the foregoing reasons, **IT IS ORDERED**:

Plaintiffs' Motion for FLSA Conditional Certification and Class Notice Under 29 U.S.C. § 216(b) (Docket Entry No. 56) is **GRANTED**.

Accordingly, the following collective action class is **CONDITIONALLY CERTIFIED**: all onsite salespersons employed in the United States by KB Home or any of its subsidiaries from **May 23, 2008 until the present.**

Counsel for Plaintiffs and KB are **ORDERED** to confer and agree, if they can do so in good faith, upon the content of the Proposed Notice.  The Proposed Notice should be modified to clearly reflect that the class only includes "onsite" salespersons, that is, those salespersons that were assigned to work out of temporary sales offices in KB's home communities.  The Proposed Notice should also reflect the reassignment of the case to this Court.

KB must file any objections it may have to the Proposed Notice by **October 10, 2012**, and, by that date, it must provide Plaintiffs with the names, current or last-known physical and e-mail addresses, telephone

numbers, and dates of employment of the members of the collective action class.

**IT IS SO ORDERED**.

**SIGNED** this 25th day of September, 2012.

_____
Gregg Costa
United States District Judge