IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **KIP EDWARDS *et al.*,** | § § § | |
| Plaintiffs | § § | |
| v. | § § | NO. 3:11-CV-00240 |
| **KB HOME *et al.*,** | § § § | |
| Defendants. | § § § § | |

### DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING THE DEPOSITION OF THEIR CORPORATE REPRESENTATIVE RELATING TO THEIR "GOOD FAITH" AFFIRMATIVE DEFENSE

Pursuant to Federal Rule of Civil Procedure 26(c), Defendants KB Home *et al.* ("KB Home") file this Motion for Protective Order.

## I.
## INTRODUCTION

With the deposition of KB Home's corporate representative, Plaintiffs seek to discover KB Home's 1) confidential and privileged communications with its attorneys concerning the subject matter of this litigation and 2) the protected work product of KB Home's legal counsel. Specifically, Plaintiffs seek privileged information concerning the classification of the salesperson position at issue in this collective action.

KB Home anticipates Plaintiffs will argue that because it asserted the statutory affirmative defense of "good faith" under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), it waived the attorney-client and work product privileges. However, a waiver of attorney-client and work product privileges does not arise merely from the assertion of a good faith affirmative defense. Thus, the Court should not permit Plaintiffs to discover what, if any, communications KB Home had with its attorneys regarding the classification of salespersons as exempt under the FLSA and all claims by salespersons alleging wage and hour violations.

The privileged information Plaintiffs seek is not relevant to any claim or defense in this action. KB Home has not asserted a "good faith" defense based upon advice of counsel. Instead, KB Home asserts that its actions taken regarding Plaintiffs' compensation were done "in good faith in conformity with and reliance upon written administrative regulations, orders, rulings, approvals, interpretations, and written and unwritten administrative practices or enforcement policies of the Administrator of the Wage and Hour Division of the United States Department of Labor, including, but not limited to, certain Department of Labor opinion letters addressing the issues raised by Plaintiffs," and were taken in "reliance upon certain Department of Labor opinion letters addressing the issues raised by Plaintiffs." *See* Doc. No. 161 at pp. 19-20 (defenses nos. 4 & 7).

KB Home explicitly set forth the evidence it intends to use to support its affirmative defense and did not assert that it would rely on the advice of counsel. Plaintiffs' attempt to force KB Home to disclose communications with its legal counsel that KB Home has not expressed any intent to rely upon is improper.

Second, allowing Plaintiffs to discover KB Home's privileged communications and its counsel's work product in this context is contrary to public policy. Public policy supports the attorney-client and work product privileges to enable the free exchange of information between an attorney and client. This public policy extends to any information resulting from a company's efforts to obtain legal advice for the purpose of complying with the law. If these efforts can be discovered and affirmatively used against a company based only on the assertion of statutory defenses to unsubstantiated allegations in a Complaint that would otherwise be waived, companies would be discouraged from seeking advice from, and openly communicating with, legal counsel. This is a result that can be – and should be – avoided by prohibiting Plaintiffs from discovering KB Home's privileged communications under the circumstances presented here.

For these reasons, KB Home respectfully requests that the Court issue a protective order pursuant to Federal Rule of Civil Procedure 26(c) prohibiting Plaintiffs from deposing KB Home's corporate representative about KB Home's privileged communications with its legal counsel and its attorneys' work product.

## II.
## STATEMENT OF RELEVANT FACTS

Plaintiffs filed their Complaint alleging collective claims under the FLSA on May 23, 2011, asserting that KB Home willfully misclassified sales counselors employed by KB Home as exempt. *See* Dkt. No. 1. Plaintiffs filed Amended Complaints on July 8, 2011, and on November 12, 2013. *See* Dkt. Nos. 17 and 158.

On November 29, 2013, Defendants filed their Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint and asserted various affirmative defenses. *See* Dkt. No. 161. Specifically, in its Fourth Affirmative Defense, KB Home pled:

> Plaintiffs' claims are barred in whole or in part by the provisions of Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259, because actions taken in connection with Plaintiffs' compensation were done **in good faith in conformity with and reliance upon written administrative regulations, orders, rulings, approvals, interpretations, and written and unwritten administrative practices or enforcement policies of the Administrator of the Wage and Hour Division of the United States Department of Labor, including, but not limited to, certain Department of Labor opinion letters addressing the issues raised by Plaintiffs.** This defense may also apply to the claims of some or all of the class of allegedly similarly situated persons.

*Id*. at p. 19 (emphasis added). In its Fifth Affirmative Defense, KB Home pled:

> Plaintiffs' claims are barred in whole or in part by the provisions of Section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, because any acts or omissions giving rise to this action were done in good faith and with reasonable grounds for believing that the actions or omissions

> were not a violation of the FLSA, including, but not limited to, **reliance upon certain Department of Labor opinion letters addressing the issues raised by Plaintiffs**. This defense may also apply to the claims of some or all of the class of allegedly similarly situated persons.

*Id*. at p. 20 (emphasis added). In its Seventh Affirmative Defense, KB Home pled:

> Defendants at all times acted in good faith to comply with the FLSA and with reasonable grounds to believe that their actions did not violate the FLSA, including, but not limited to, **reliance upon certain Department of Labor opinion letters addressing the issues raised by Plaintiffs**, and Defendants assert a lack of willfulness or intent to violate the FLSA as a defense to any claim by Plaintiffs for liquidated damages. This defense may also apply to the claims of some or all of the class of allegedly similarly situated persons.

*Id*. at p. 21 (emphasis added). In its Eighteenth Affirmative Defense, KB Home pled:

> Defendants allege that they have not willfully failed to pay Plaintiffs any wages and/or other monies claimed due, and there is a bona fide, good faith dispute with respect to Defendants' obligation to pay any sum that may be alleged to be due. This defense may also apply to the claim of some or all of the class of allegedly similarly situated persons.

*Id*. at p. 24.

On June 19, 2015, Plaintiffs served Defendants with its Notice of Deposition Pursuant to Federal Rule 30(b)(6) Relating to FLSA "Willfulness" and "Good Faith" Topics. *See* Exhibit A. A total of 29 proposed topics were listed. *Id*. With this Motion, Defendants object to topics 3, 4, 7-12, 19-27, and 29. These proposed topics are listed below:

3. All analysis performed by KB Home **or its attorneys (both in-house and external)** preceding and with respect to its determination that the salesperson position is/was classified as "exempt" under the FLSA.

4. All analysis performed by KB Home **or its attorneys (both in-house and external)** with respect to the reclassification of salespersons under the FLSA at any time.

7. All communications both within KB Home and **between KB Home and its attorney(s) (both in-house and external)** relating to your determination that the salesperson position is/was considered "exempt" under the FLSA.

8. All communications both within KB Home and **between KB Home and its attorney(s) (both in-house and external)** relating to your consideration of the job duties and responsibilities of salespersons in making a determination that the salesperson position would be classified as "exempt" under the FLSA.

9. All communications both **within KB Home** and between KB Home and the Department of Labor relating to your classification of the salesperson position under the FLSA.

10. All communication both **within KB Home** and between KB Home and the Department of Labor regarding any allegation of failure to pay overtime and/or minimum wages to KB Home workers.

11. All communications both within KB Home and **between KB Home and its attorney(s) (both in-house and external)** relating to any and all FLSA exemptions that you claim are applicable to salespersons.

12. All materials and authorities actually relied upon by KB Home in determining that the salesperson position was properly treated as "exempt," including in connection with any analysis of the job duties and responsibilities of the position, performance of the duties of the position, hours relating thereto and pay practices applicable to that position, as well as the identification of all persons involved in the

foregoing research or evaluation and the date on which such materials were initially reviewed by and relied upon by each person.

19. All evaluations performed and all discussions had (both within KB Home and **between KB Home and its attorney(s) whether internal or external)** regarding any lawsuit or claim made against KB Home by any salesperson alleging misclassification under the FLSA and/or any state wage and hour law.

20. All evaluations performed and all discussions had (both within KB Home and **between KB Home and its attorney(s) whether internal or external)** regarding any lawsuit or claim made against KB Home by any salesperson challenging the salesperson's classification at "exempt" under the FLSA and/or any state wage and hour law.

21. All legal and factual research conducted by KB Home **or its attorneys (whether internal or external)** in any lawsuit or claim against KB Home by any salesperson alleging failure to pay overtime wages and/or minimum wages.

22. All legal and factual research conducted by KB Home **or its attorneys (whether internal or external)** in any lawsuit or claim against KB Home by any salesperson alleging misclassification under the FLSA and/or any state wage and hour law.

23. All legal and factual research conducted by KB Home **or its attorneys (whether internal or external)** in any lawsuit or claim against KB Home by any salesperson challenging the salesperson's classification as "exempt" under the FLSA and/or any state wage and hour law.

24. All correspondence between KB Home **and its attorneys (whether internal or external), as well as all legal opinions to KB Home from its attorneys (whether internal or external)** involving any claim alleging misclassification of a salesperson.

25. All correspondence between KB Home **and its attorneys (whether internal or external), as well as all legal opinions to KB Home from its attorneys (whether internal or external)** involving

any claim alleging failure to pay overtime and/or minimum wages to a salesperson.

26. All correspondence between KB Home **and its attorneys (whether internal or external), as well as all legal opinions to KB Home from its attorneys (whether internal or external)** involving any claim by a salesperson alleging wage and hour violations.

27. All correspondence between KB Home **and its attorneys (whether internal or external), as well as all legal opinions to KB Home from its attorneys (whether internal or external)** relating to any claim by any salesperson challenging the salesperson's classification as "exempt" under the FLSA.

29. All FLSA audits, evaluations, surveys, reports or analysis performed by KB Home (whether internally or externally) relating to salespersons, including but not limited to the job duties of salespersons, the exemptions applicable to salespersons, the compensation paid to salespersons, the hours worked by salespersons, alleged FLSA violations by salespersons and/or the FLSA classification of salespersons.

Exhibit A (emphasis added). KB Home objects to these topics on the basis of attorney-client and work product-privilege, and further on the basis of overbreadth, burdensomeness, and relevance, and files this Motion for Protective Order to prevent discovery into these topics.

### III.
### ARGUMENT AND AUTHORITIES

**A.    Legal Standard for Protective Order.**

District courts have broad discretion regarding entering protective orders to prevent disclosure of privileged or confidential information. *Scott v. Monsanto Co.*, 868 F.2d 786, 792 (5th Cir. 1989). Federal Rule of Civil Procedure 26(c)

provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See* FED. R. CIV. P. 26(c)(1). Moreover, a valid assertion of privilege constitutes good cause supporting the entry of a protective order. *See EEOC v. TIC-The Indus. Co.*, Civil Action No. 01-1776 SECTION "I" (2), 2002 U.S. Dist. LEXIS 22728, at *9 (E.D. La. Nov. 21, 2002) ("[The attorney-client privilege], if applicable, provides good cause for a protective order without any other showing").

## B.     The Good Faith Defense Under the FLSA.

In defending against claims of exempt status misclassifications under the FLSA, an employer may assert a "good faith" defense. The FLSA allows defendant employers to avoid liability for failure to pay overtime if the defendant pleads and proves that the act or omission complained of was in good faith conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation of the Administrator of the Wage and Hour Division of the Department of Labor. 29 U.S.C. § 259. Also, section 260 of the FLSA allows an employer found liable for past wages to allege a reasonable, good faith belief that it was not violating FLSA to avoid liability for liquidated damages. *See* 29 U.S.C. § 260. A lack of willfulness also affects the FLSA's statute of limitations, which is generally two years but extended to three years for willful

violations. 29 U.S.C. § 255(a). Here, KB Home asserted the affirmative defenses of good faith and lack of willfulness in its answer. *See* Dkt. No. 161.

C. **KB Home Has Not Waived Any Attorney-Client or Work-Product Privilege.**

KB Home expects Plaintiffs will argue that, simply by asserting a good-faith defense under the FLSA, KB Home waived the privilege regarding any advice it may have received from counsel regarding the classification of its salespersons. KB Home has not waived the privilege, either through its assertion of the defense or by its conduct.

The Fifth Circuit has held that:

> [W]aiver by implication involves two basic elements. The first is subjective – Does the person holding the right to claim the privilege intend to waive it? The second element is objective – Is it fair and consistent with the assertion of the claim or defense being made to allow the privilege to be invoked? This objective determination should be based upon whether the position taken by the party goes so far into the matter covered by the privilege that fairness requires the privilege shall cease even when, subjectively, he never intended that result.

*Hyde Constr. Co. v. Koehring Co.*, 455 F.2d 337, 342-43 (5th Cir. 1972) (quoting *United States v. Woodall*, 438 F.2d 1317 (5th Cir. 1970) and 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2327 at p. 638 (internal quotation marks omitted) (explaining that the privilege cannot be used as both a shield and a sword – "a client's offer of his own or his attorney's testimony as to a specific communication

constitutes a waiver as to all other communications on the same matter . . . . This is so because the privilege of secret communication is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former").

Under the *Hyde* test, Plaintiffs cannot establish KB Home impliedly waived privilege with regard to any attorney-client communications or work-product information concerning the classification of new home salespersons because KB Home does not, and never did, intend to waive privileged information in support of its defenses in this case. KB Home has actively sought, as it does here, to protect its privileged information. *See Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-295, 2014 U.S. Dist. LEXIS 85476, at *14 (S.D. Tex. June 24, 2014) ("Defendant's representatives asserted the attorney-client privilege when they were asked specific questions about advice given by its attorney [in the FLSA context] and they have not disclosed, or discussed specific advice from counsel. Under the criteria set out in *Hyde* and *Nguyen*, [Defendant] has not waived the attorney-client privilege."). Accordingly, under the first prong of the *Hyde* test, KB Home has a clear right to invoke the privilege and has not demonstrated any intent to waive it.

Under the second prong of the *Hyde* test, invocation of the privilege is fair and consistent with the good faith defense. While courts in the Fifth Circuit have not directly addressed the issue of implied waiver through the assertion of the

good-faith defense, the Fifth Circuit has expressly declined to adopt the view that merely asserting the good faith defense in an FLSA suit waives any privilege. *See Nguyen v. Excel Corp.,* 197 F.3d 200, 205-06 (5th Cir. 1999) ("Appellees chiefly rely on cases from the Eleventh and Second circuits for its conclusions that invocation of a good-faith defense waives the attorney-client privilege. **We need not and do not adopt the position [of the Eleventh and Second Circuits]** . . . .") (emphasis added). This is consistent with the Fifth Circuit's holdings outside of the FLSA context that, when a defense does not explicitly implicate the advice of counsel, a party's reliance upon a defense that merely **could** implicate privileged information does not waive any applicable privilege. *See In re Burlington N., Inc.*, 822 F.2d 518, 533 (5th Cir. 1987) (finding no waiver of privilege in antitrust case and explaining that "[t]his is not a case in which a party has asserted a claim or defense that **explicitly** relies on the existence or absence of the very communications for which he claims a privilege") (emphasis added); *see also Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) ("The great weight of authority holds that the attorney-client privilege is waived when a litigant "place[s] information protected by it in issue through **some affirmative act for his own benefit**, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.").

KB Home has not asserted the advice of counsel as a defense, nor has it taken any other affirmative act to rely on the advice of counsel in support of its good-faith defenses. Accordingly, KB Home has not waived any privilege with regard to those defenses, consistent with the holdings of numerous district courts that have addressed this issue with regard to the good-faith defense under the FLSA. *See McKee v. PetSmart, Inc.*, No. 12-1117-SLR-SRF, 2014 U.S. Dist. LEXIS 146583, at *5-6 (D. Del. Oct. 15, 2014) (denying plaintiffs' motion to compel privileged testimony relating to classification decision and explaining that "defendant has not waived the attorney-client privilege by asserting a good faith affirmative defense because defendant has not relied on privileged communications or testimony in support of its defense") (citing *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994)); *see also McKeen-Chaplin v. Provident Sav. Bank, FSB*, 2015 U.S. Dist. LEXIS 14143, at *23-24 (E.D. Cal. Jan. 4, 2015) ("Plaintiffs' argument that defendant waived the attorney client privilege by asserting a good faith affirmative defense is unconvincing. . . . Defendant must support its good faith defense by citing the advice of counsel in order to put it in issue."); *Brackett v. St. Louis Bd. of Police Comm'rs*, No. 4:12-CV-898-JAR, 2014 U.S. Dist. LEXIS 95899, at *6-8 (E.D. Mo. July 15, 2014) (denying motion to compel privileged testimony relating to good-faith defense); *Harter v. CPS Sec. (USA), Inc.*, No. 2:12-cv-00084-MMD-PAL, 2013 U.S. Dist. LEXIS 85237 (D.

Nev. June 14, 2013) (denying motion to compel disclosure of attorney-client communications regarding good-faith defenses and explaining that defendants "have not taken affirmative steps to interject the advice of any lawyer acting in the capacity of a confidential legal advisor to assert these affirmative defenses or to defend against Plaintiffs' claim of willful violation").

Because KB Home has not placed the advice of its counsel at issue, either by asserting the good-faith defense or by any other means, it is entitled to a protective order prohibiting Plaintiffs from deposing KB Home's corporate representative on any privileged communications with counsel concerning the classification of its salespersons.

### D. Public Policy Counsels Against Implying a Waiver of Privilege Merely Because a Good Faith Defense Is Asserted.

A protective order is also warranted because allowing Plaintiffs to discover KB Home's privileged communications with its lawyers and its counsel's work product contravenes well-established public policy. The attorney-client privilege is fundamental, and its purpose is to "encourage full and frank communication between attorneys and their clients [and to] promote broader public interests in the observance of law and the administration of justice. The privilege recognizes that sound legal advice or advocacy . . . depends on the lawyers being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Companies – and especially nationwide companies such as KB Home – are tasked with navigating federal, state and local wage and hour laws. Therefore, these companies seek advice of their legal counsel (both in-house and external) in response to the requirements of these numerous laws. In fact, legal advice facilitates the goal of the wage and hour laws: the payment of proper and lawful compensation to all employees.

If, however, a company will be penalized by forfeiting the protections afforded by the attorney-client and work product privileges merely by asserting statutorily authorized defenses to liquidated damages and a three-year statute of limitations, the incentive to seek legal advice is lost. Companies may very well refuse to seek legal counsel out of fear that their efforts may be used against them in later litigation. Rather than promote the interests of the wage and hour laws, this could result in companies making uninformed and possibly, unlawful determinations. This is a wholly undesirable result. The attorney-client and work product privileges should be protected by complying with well-established law and holding that the privileges are waived only where an employer intends to use the privileged communications as both a "sword and shield." This is not the case here, and thus, the privileged communications between KB Home and its attorneys and the work product of KB Home's attorneys should be the protected.

### E. Topics 7-11, Seeking Testimony Regarding "All Communications" on Various Topics, Are Overly Broad and Unduly Burdensome

In addition to seeking privileged information, topics 7 through 11 are overly broad and unduly burdensome. These requests seek testimony concerning "all communications" on a variety of topics, including all company communications (including communications with counsel) concerning the determination that new home salespersons are exempt and what exemptions apply to the salespersons, all company communications regarding the job duties and responsibilities of new home salespersons, and all company communications (including communications with the Department of Labor) concerning the classification and payment of salespersons under the FLSA. These requests are patently overbroad and staggeringly burdensome, as a corporate representative could not possibly be expected to be prepared to offer testimony on each and every internal and external letter, email, or other communication on these topics.

Further, topic 10 seeks information concerning communication within KB Home and with the DOL "regarding any allegation of failure to pay overtime and/or minimum wages to **KB Home workers**." (Emphasis added.) This request seeks information far beyond the salesperson position in this suit, and accordingly is overly broad, unduly burdensome, and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. KB Home is accordingly entitled to a protective order regarding these topics.

## IV.
## CONCLUSION

Wherefore, premises considered, KB Home respectfully request that the Court enter an Order pursuant to Rule 26(c) prohibiting Plaintiffs from deposing KB Home's corporate representative about KB Home's privileged communications with its legal counsel and its attorneys' work product. Defendants further request that the Court award them such further and additional relief to which they are justly entitled.

Respectfully submitted,

*/s/ David B. Jordan*
**David B. Jordan**
Texas Bar No. 24032603
Fed. ID No. 40416
**LITTLER MENDELSON, P.C.**
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
djordan@littler.com

**ATTORNEYS FOR DEFENDANTS**

Of Counsel:

**Jennifer A. Youpa**
Texas Bar No. 01383400
Fed. ID No. 19932
**Kimberly Rives Miers**
Texas Bar No. 24041482
Fed. ID No. 674452
**LITTLER MENDELSON, P.C.**
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX 75201
214.880.8100 (Telephone)
214.880.0181 (Facsimile)
jyoupa@littler.com
kmiers@littler.com

**Kevin Little**
Texas Bar No. 24070155
Fed. ID No. 1138412
**LITTLER MENDELSON, P.C.**
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
klittle@littler.com

## CERTIFICATE OF CONFERENCE

On June 23 and 24, 2015, I conferred with Plaintiffs' counsel John Padilla via telephone and email regarding the relief requested in this motion. The parties were not able to reach a resolution regarding the relief requested.

*/s/ David B. Jordan*
David B. Jordan

## CERTIFICATE OF SERVICE

On June 25, 2015, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court, which will automatically send notice to all counsel of record.

*/s/ Kevin Little*
Kevin Little