UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KIP  EDWARDS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:11-CV-00240 |
| | § | |
| KB HOME, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

In this Fair Labor Standards Act (FLSA) case, Plaintiffs allege that KB Home misclassified them as exempt outside salespeople not entitled to overtime wages.  In addition to contending that the classification is correct, KB Home is asserting affirmative defenses that would apply if its classification decision was mistaken but made based on a good faith belief in its lawfulness.[1]  The issue the Court must decide is whether KB Home's decision to assert those defenses waives any privilege that attaches to communications from its attorneys concerning the classification decision.

The upcoming deposition of KB Home corporate representative Tom Norton

---

[1] *See* 29 U.S.C. § 259 (providing it is a complete defense if the employer establishes it acted in good faith reliance on "any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States . . . or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged"); 29 U.S.C. § 260 (allowing court to not award liquidated damages if the employer convinces the court that it had a reasonable belief (not limited to agency guidance) that its act or omission did not violate the FLSA).

1

presents this issue.  KB Home moved for a protective order, asserting attorney-client privilege over certain document requests and deposition topics listed in the deposition notice.  *See* Docket Entry No. 196.  The categories of information at issue include any analysis, evaluations, and research KB Home's attorneys performed as well as any related communication and correspondence between KB Home employees and inside or outside counsel.  *See* Docket Entry No. 196-1.

Plaintiffs contend that the good faith defenses KB Home has injected into the case waive privilege for communications that would shed light on what information KB Home had when it made, and continued to adhere to, its classification decision.  KB Home counters that it bases its good faith defenses not on advice of counsel, but on other employees' understanding of Department of Labor (DOL) opinion letters.

After full briefing and a telephone hearing on the matter, this Court issued an Order requiring Norton to file a declaration stating whether he or other KB Home employees involved in the classification determination had any communications with inside or outside counsel regarding that decision or the related DOL letters.  *See* Docket Entry No. 201.  The declaration filed in response explains that the original classification decision was made before 2004 and was "outside of the memory of KB Home," but "[t]hereafter, KB Home employees involved in a classification decision regarding the sales counselor[s] did have

communications with attorneys in connection with that decision or related to the

DOL opinion letters."  Docket Entry No. 202 at 3.  He attested, however, that "KB

Home is not relying on the advice of counsel in asserting its defenses under 29

U.S.C. §§ 255, 259, and 260."  *Id.*   Norton's declaration is not the only evidence

that KB Home communicated with its attorneys regarding the opinion letters: KB

Home also designated as privileged "Email correspondence between in-house

counsel David Simons, associate general counsel Larry Gotlieb, KB Home

employees and outside counsel re: January 25, 2007 DOL opinion letter."  *See*

Docket Entry No. 200-1 at 2.

The Fifth Circuit has not addressed the waiver issue in the context of the

specific FLSA defenses at issue here.[2]  But the circuit's general approach to waiver

of privilege provides guidance.  It has noted that the "great weight of authority

holds that the attorney-client privilege is waived when a litigant 'place[s]

information protected by it in issue through some affirmative act for his own

---

[2] The issue was raised in *Nguyen v. Excel Corp.*, 197 F.3d 200, 205 (5th Cir. 1999).  The
defendant similarly claimed that it never intended to raise reliance on advice of counsel as
support for its good faith defense and therefore did not waive privilege.  *See id.* (arguing that
"mere relevance of the privileged communication is inadequate for a court to authorize
disclosure, instead the information must be 'vital' to the party seeking disclosure").  In response,
the plaintiffs contended that if the defendant could "control what information it relied upon for
its affirmative defense, then it will not disclose information about which it had knowledge that
revealed the illegality of its conduct.  Such non-disclosure . . . would run contrary to the 'honest
intentions' that [defendants] seek[] to establish."  *Id.*  But the court did not take the opportunity
to decide the issue, instead relying on other grounds—failing to assert the privilege when
confidential information was sought and selectively disclosing portions of privileged
communications—to uphold the district court's decision to pierce the defendant's privilege.  *Id.*
at 206–07.

benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.'" *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (internal citations omitted and alteration in original). "[W]hen a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005)).  The district court in *Apex Municipal Fund v. N-Group Securities.*, a securities fraud case, applied these principles to find that when the defendant (that was itself a law firm representing the underwriters in a public offering) "inserted its understanding of the law as a basis for the reasonableness" of its decision to omit certain information from public offering statements, it waived its attorney-client privilege.  841 F. Supp. 1423, 1431 (S.D. Tex. 1993).

Attempting to avoid this body of law concerning waiver in which disclosing any privileged communications in support of its defenses would unquestionably constitute a waiver, KB Home emphasizes that it is not relying on advice of counsel to prove its good faith defenses.  In other words, the KB Home witnesses testifying about good faith will not say "lawyers advised us that the employees do not qualify as outside salespeople"; instead those witnesses will say that their own independent judgment (based on a review of the DOL letters and perhaps other considerations) caused them to conclude that the classification was lawful.  If KB

Home employees made that assessment about the classification's lawfulness without ever consulting its lawyers, the Court would agree that the privilege is not pierced.   Indeed, in that situation there would be no attorney-client communications about the classification decision to protect.   It would be surprising, however, if a company like KB Home did not consult legal counsel on such an issue.  *See Xuedan Wang v. Hearst Corp.*, 2012 WL 6621717, at *2 (S.D.N.Y. 2012) (finding it "difficult to imagine that a good faith defense regarding the FLSA raised by a corporation as large and as sophisticated as [defendant] would not involve the advice of its legal department").   Norton's clarification that counsel did discuss the classification decision with KB Home decisionmakers thus requires the court to address the following issue: can KB Home parse its defense to rely solely on its own nonlawyers' understanding of the FLSA's outside sales exemption and thus maintain as privileged the attorney communications on the same topic?

Two basic aspects of the good faith defenses compel the Court to conclude that KB Home is drawing too fine a line: the defenses requires a *good faith* belief about the *lawfulness* of a classification decision. Communications from lawyers— whose very job is to advise the company on the lawfulness of its policies— concerning the company's classification decision necessarily influence the reasonableness of any belief the company has about the lawfulness of its policy.

Otherwise, why seek legal advice (which isn't cheap) at all?   And as a psychological matter, it seems very difficult, if not impossible, for a witness to compartmentalize his reliance on what he may have independently understood regarding the law and what he was told by attorneys.

The Court does not know the substance of the attorney communications concerning the "outside sales" exemption, but consider the possibilities demonstrates why this information should be disclosed.  Whether the legal advice supports or undermines KB Home's defense, such communications are highly probative of whether it had a good faith belief in the lawfulness of its policy.  Consider a hypothetical conversation during 2010 in which KB Home's attorneys informed KB Home's decisionmakers that the earlier "outside salesperson" classification was wrong.  Or consider legal advice during 2007 in which counsel opined that the DOL letters confirmed the lawfulness of the outside sales classification.  Either of those communications inevitably would have affected the decisionmakers' beliefs about the policy's lawfulness.  And the first hypothetical, in which the legal advice substantially undermines a belief in the policy's lawfulness, directly implicates the fairness concerns that arise when a party injects into the case an issue about its supposed belief in the lawfulness of its action, yet continues to "shield" communication that might undermine that belief.[3]   *See*

---

[3] This is just as true for the specific good faith defense in section 259 concerning reliance on

*Conkling*, 883 F.2d at 434; *United States v. Bilzerian*, 925 F.2d 1285, 1292 (2d Cir.

1991) ("[T]he privilege may implicitly be waived when defendant asserts a claim

that in fairness requires examination of protected communications." (internal

citations omitted)); *see also* 2 Paul R. Rice, *Attorney-Client Privilege in the United*

*States* § 9:53 (2014) (explaining that the "most common situation in which courts

have found waiver [of the attorney-client privilege] is where the client claims that

he acted on the 'good faith' belief that his conduct was reasonable and legal" and

citing *Bilzerian*, 926 F.2d at 1293).  At bottom, KB Home's position would prevent

disclosure of the evidence most probative on whether it had a good faith belief in

the lawfulness of its classification decision, a belief that is an issue in this case

only because KB Home decided to make it one.

Similar reasoning led to two recent rulings from the Southern District of

New York finding waiver in FLSA cases in which the defendants also sought to

maintain privilege while asserting a good faith defense that did not invoke advice

of counsel.  *See Scott v. Chipotle Mex. Grill, Inc.*, --- F. Supp. 3d ----, 2014 WL

7236907, at *6 (S.D.N.Y. Dec. 18, 2014); *Wang*, 2012 WL 6621717, at *1.  As the

---

agency guidance like the DOL letters as it is for the general section 260 good faith defense.  It
may be that a nonlawyer could more easily understand the implications of a DOL letter to the
extent it expressly approves of a classification decision.  But again, the only reason to consult
lawyers about the meaning of those letters—as Norton says KB Home decisionmakers did—is
because there was a need to obtain legal advice.  If lawyers confirmed the nonlawyer's belief that
the DOL letters endorsed the classification decision, then KB Home has nothing to worry about
from a privilege waiver.  But if the lawyers advised that the DOL letters may not provide a
complete defense, then that information impeaches both good faith defenses.

*Scott* court explained, because the "evidence overwhelmingly demonstrate[d] that Chipotle did receive advice on its classification decision," plaintiffs were "entitled to know if [Chipotle] ignored counsel's advice." *Scott,* 2014 WL 7236907, at \*6, \*8. The *Wang* court rejected the same line KB Home seeks to draw here, describing the employer's "assurance that it would 'limit any good faith defense to one in which the state of mind was not formed on the basis of legal advice'" as one that "amount[ed] to little more than semantics." 2012 WL 6621717, at \*2.

Indeed, recognizing the distinction KB Home purports to draw—between a good faith defense that relies on advice of counsel and one that does not even though such advice was given—would essentially result in a good faith defense never resulting in waiver of adverse legal advice. A return to hypothetical communications illustrates this point. Assume a human resources director concludes that certain types of employees can be classified as exempt under the FLSA. She then consults the legal department. If the legal department confirms that her classification is correct, the party can assert a good faith defense that relies on that advice of counsel and use the lawyer's comments to support its position. But if the answer conflicts with the earlier classification decision, then the party can attempt to maintain privilege over that conflicting legal advice by invoking a good faith defense that does "not assert[] the advice of counsel as a defense, nor [take] any other affirmative act to rely on the advice of counsel in support of its

good-faith defenses." *See* Docket Entry No. 196 at 13 (KB Home motion for protective order). This "heads I win, tails you lose" result—in which a party asserting good faith could use attorney communications that help its cause, but shield the communications when they do not by characterizing the defense as one that does not rely on advice of counsel—would undo, and is at odds with the fairness concerns that animate, the longstanding recognition that asserting a claim or defense that depends on a belief in the lawfulness of one's conduct waives privilege. *See Conkling*, 883 F.2d at 434; *United States v. Bilzerian*, 925 F.2d at 1292; *see also* 2 Paul R. Rice, *Attorney-Client Privilege in the United States* § 9:53 (2014)

Given that KB Home "had, and perhaps ignored, the advice of counsel in classifying its employees as exempt," *see Scott*, 2014 WL 7236907, at *8, the Court
finds that KB Home has waived its privilege concerning those communications by injecting into the case its good faith belief in the lawfulness of its classification. That does not end the inquiry, however. This waiver is not limitless; given that waiver stems from the assertion of the good faith defense, the waiver extends only to communications to concerning that classification decision. KB Home has not waived its privilege (or work product) as to prior overtime litigation or other attorney communications to the extent they are not probative on what KB Home

decisionmakers were told about the lawfulness of the classification decision. *See Apex*, 841 F. Supp. at 1431 (finding waiver of attorney-client privilege only with respect to the relevant topics); *Wang*, 2012 WL 6621717, at *3 (requiring production of emails that bore on the defendant's state of mind regarding the relevant employment policy). The Court recognizes that this will entail some line-drawing challenges and it stands ready to inspect in camera any "close calls."[4] The privilege log will also be useful in determining which documents implicate the good faith defense. Of course, in light of this ruling, KB Home may elect to withdraw its good faith defenses, in which case the privilege would still attach. *See Scott*, No. 12-cv-08333 (S.D.N.Y. Apr. 20, 2015) (providing that defendant's withdrawal of good faith affirmative defenses reinstated privilege).

Accordingly, the Court **DENIES** KB Home's Motion for Protective Order, Docket Entry No. 196, to the extent it seeks to maintain privilege over all the requested communications. As noted above, however, the Court may have to consider on an individual basis which documents constitute advice relevant to the good faith defenses. The Court recognizes that disclosing the relevant communications and materials may require Norton's deposition to be postpone. The parties should request a telephone conference to discuss any necessary

---

[4] This is likely more of an issue for documents than deposition questions. The corporate representative will presumably only have knowledge of what legal advice the company received. The universe of documents extends beyond that, however, to include communications about other litigation that may not have been directed at the individuals involved in the classification decision.

amendments to the scheduling order.

SIGNED this 18th day of July, 2015.

_____
Gregg Costa
United States Circuit Judge