IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KIP EDWARDS, ET AL., on behalf of themselves and all others similarly situated, | § § § § | Civil Action No.  3:11-cv-240 |
| Plaintiffs, | § § | |
| v. | § § | COLLECTIVE ACTION (JURY TRIAL) |
| KB HOME, | § § | |
| Defendant. | § § | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
WITH RESPECT TO THE RETAIL SALES EXEMPTION, HIGHLY
COMPENSATED EXEMPTION AND ADMINISTRATIVE EXEMPTION**

Rhonda H. Wills
ATTORNEY-IN-CHARGE
WILLS LAW FIRM, PLLC
1776 Yorktown, Suite 570
Houston, Texas 77056
Telephone: (713) 528-4455
Facsimile: (713) 528-2047
rwills@rwillslawfirm.com

John M. Padilla
PADILLA & RODRIQUEZ, L.L.P.
5433 Westheimer, Suite 825
Houston, Texas 77056
Telephone: (713) 574-4600
Facsimile: (713) 574-4601
jpadilla@pandrlaw.com

ATTORNEYS FOR PLAINTIFFS
Dated: July 20, 2015

# TABLE OF CONTENTS

I.   OVERVIEW ....................................................................................................1

II.   BACKGROUND .............................................................................................2

III.   SUMMARY JUDGMENT STANDARD ........................................................3

IV.   ARGUMENT AND AUTHORITIES .............................................................5

A.   KB Home Bears the Heavy Burden of Proving that Its Salespersons "Plainly
and Unmistakably" Fall Within The "Terms and Spirit" of the Claimed FLSA
Exemptions. ......................................................................................................5

    1.   The Retail Sales Exemption Is Not Applicable to KB Home as a Matter
of Law. ....................................................................................................... 6

        a.   KB Home is Not a Retail or Service Establishment within the Meaning of
the FLSA Because KB Home Makes the Product it Sells—New Homes.
……………………………………………………………………………..7

        b.   KB Home is Not a Retail or Service Establishment Within the Meaning
of the FLSA Because the Regulation Specifically Excludes Real Estate
Companies. ...........................................................................................10

    2.   KB Home Does Not Meet the Salary Basis Test, and therefore, the
Highly Compensated Exemption and Administrative Exemption Cannot
Apply as a Matter of Law................................................................. 12

        i.   KB Home has admitted that it does not pay its salespersons a salary. ....13

        ii.   KB Home's compensation scheme does not meet the salary basis test
because salespersons' draws are not "free and clear."............................15

        iii.   KB Home's compensation plan does not satisfy the salary basis
requirement because the draw is performance-based such that it can be
reduced or eliminated. ..........................................................................22

    3.   The Administrative Exemption Does Not Apply to Salespersons as a
Matter of law............................................................................................ 29

a. KB Home cannot meet the administrative exemption because salespersons' primary duty is sales. ........................................................25

b. The administrative exemption and the outside sales exemption are mutually exclusive....................................................................................26

V. CONCLUSION ................................................................................28

# TABLE OF AUTHORITIES

## Cases

*Aikins v. Warrior Energy Servs. Corp.*,
    2015 WL 1221255 (S.D. Tex. Mar. 17, 2015) ........................................9

*Arnold v. Ben Kanowsky, Inc.*,
    361 U.S. 388 (1960) ................................................................. 10, 11

*Barefoot v. Mid-America Dairymen, Inc.*,
    16 F.3d 1216, 1994 WL 57686 (5th Cir. Feb. 18, 1994).....................10

*Bowman v. Builder's Cabinet Supply Co.*,
    2006 WL 2460817 (E.D. Ky. Aug. 23, 2006) ....................................27

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................9

*Chapman v. BOK Fin. Corp.*,
    2014 WL 3700870 (N.D. Okla. July 25, 2014)....................................32

*Cheatham v. Allstate Ins. Co.*,
    465 F.3d 578 (5th Cir. 2006) ......................................................10

*Dalheim v. KFDW-TV*,
    918 F.2d 1220 (5th Cir. 1990) .....................................................10

*Dunlop v. Martin Brick Co.*,
    1981 U.S. Dist. LEXIS 16861 (N.D. Tex. Sept. 30, 1981) ..................17

*Homemakers Home and Health Care Services, Inc. v. Carden*,
    538 F.2d 98 (6th Cir.1976) ..........................................................11

*King v. Stevenson Beer Distrib. Co.*,
    11 F. Supp. 3d 772 (S.D. Tex. 2014)..............................................9

*Liger v. New Orleans Hornets NBA Ltd. Partnership*,
    565 F. Supp. 2d 680 (E.D. La. 2008) .............................................12

*Lott v. Howard Wilson Chrysler-Plymouth, Inc.*,
   203 F.3d 326 (5th Cir. 2000) ................................................................................10

*Donovan v. Nekton, Inc.*,
   703 F.2d 1148 (9th Cir.1983) ...............................................................................10

*Parker v. ABC Debt Relief, LTD. Co.*,
   No. 3:10-CV-1332-P, 2013 WL 371573 (N.D. Tex. Jan. 28, 2013)....................15

*Perez v. Mortgage Banker's Ass'n*,
   135 S. Ct. 1199 (2015) ........................................................................................30

*Reich v. Cruises Only, Inc.,*
   1997 WL 1507504 (M.D. Fla. June 5, 1997) ......................................................12

*Reich v. Delcorp*,
   3 F.3d 1181 (8th Cir. 1993) ................................................................................12

*Singer v. City of Waco, Tex.*,
   324 F.3d 813 (5th Cir. 2003) ................................................................................9

*Smith v. City of Jackson, Miss.*,
   954 F.2d 296 (5th Cir. 1992) ..............................................................................10

*Songer v. Dillon Res., Inc.*,
   618 F.3d 467 (5th Cir. 2010) ..............................................................................10

*Swigart v. Fifth Third Bank,*
   870 F. Supp. 2d 500 (S.D. Ohio 2012)................................................................32

*Takacs v. A.G. Edwards & Sons, Inc.*,
   444 F. Supp. 2d 1100 (S.D. Cal. 2006). ................................................. 20, 21, 23

*Villegas v. Regions Bank*,
   No. 11-904 (S.D. Tex. July 19, 2012) (J. Rosenthal).........................................28

*Webb v. Cardiothoracic Surgery Assoc. of N. Tex., P.A.*,
   139 F.3d 532 (5th Cir. 1998) ................................................................................9

iv

*Wells v. TaxMasters, Inc.,*
    2012 WL 4214712 (S.D. Tex. Sept. 18, 2012) ...................................................12

*Williams v. Trendwest Resorts, Inc.,*
    2007 WL 2429149 (D. Nev. Aug. 20, 2007) ......................................... 12, 13, 15

*Zannikos v. Oil Inspections (U.S.A.), Inc.,*
    2015 WL 1379882 (5th Cir. Mar. 27, 2015) ......................................................30

**Statutes**
29 U.S.C. § 207(a)(2) ..................................................................................................10

29 U.S.C. § 207(i) ......................................................................................................11

**Regulations**

29 C.F.R. § 531.35 .............................................................................................. 17, 22

29 C.F.R. § 541.201(a) ...............................................................................................29

29 C.F.R. § 541.500(a) ...............................................................................................31

29 C.F.R. § 541.601 (a) ..............................................................................................17

29 C.F.R. § 541.601(b)(1) ..........................................................................................17

29 C.F.R.§541.601(d)……………………………………………………………………..17

29 C.F.R. § 541.602 ...................................................................................................17

29 C.F.R. § 541.602(a) .......................................................................................... 17, 27

29 C.F.R. § 541.604(a) ...............................................................................................17

29 C.F.R. § 541.604(b) ...............................................................................................17

29 C.F.R. § 541.700(a) ...............................................................................................29

29 C.F.R. § 779.312 ...................................................................................................12

29 C.F.R. § 779.316 .........................................................................................14

29 C.F.R. § 779.317 ............................................................................. 14, 15, 16

29 C.F.R. § 779.318(a).....................................................................................13

**Federal Codes**

FED. R. CIV. P. 30(b)(6)...................................................................................18

FED. R. CIV. P. 56(a)…………………………………………………………..9

**Opinion Letter**

Opinion Letter, FLSA 2006-43, 2006 WL 3832994 ................................24

Opinion Letter WH-129, 1971 DOLWH LEXIS 22 ................................22

Opinion Letter, 1995 WL 1032470 (DOL WAGE-HOUR),...................................23

Opinion Letter, 2010 WL 1822423 (DOL WAGE-HOUR)............................ 30, 32

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs, on behalf of themselves and all others similarly situated, (collectively, "Plaintiffs") respectfully file this Motion for Summary Judgment With Respect to the Retail Sales Exemption, Highly Compensated Exemption and Administrative Exemption, and show as follows:

## I.    OVERVIEW

This Fair Labor Standards Act ("FLSA") collective action is brought by 406 KB Home onsite salespersons[1] (hereinafter, "onsite salespersons" or "salespersons") against Defendants (collectively, "Defendants" or KB Home").  Plaintiffs worked out of a sales office located inside a KB Home model home sales center where they sold newly constructed KB Homes.  KB Home misclassified its salespersons as exempt commission-only employees and denied them overtime compensation for all hours they worked over forty in a workweek.

It is undisputed that the onsite salespersons work more than forty hours per week[2] without payment of any overtime compensation.  KB Home has asserted that salespersons are not entitled to overtime wages pursuant to four FLSA exemptions: (1) the outside sales exemption; (2) the retail sales exemption; (3) the highly

---

[1] Onsite Salespersons are also known as "sales representatives," "sales associates," and salespersons."

[2] Ex. 1, Deposition of Mickey D. Caddell, p. 146, ll. 10-17; Ex. 2, Deposition of Kyle Scott Davison, p. 77, l. 16-24.

compensated exemption; and (4) the administrative exemption.[3]  In this Motion, Plaintiffs seek summary judgment with respect to the latter three exemptions: the retail sales exemption, the highly compensated exemption and the administrative exemption.

## II.    BACKGROUND

KB Home builds homes and develops new home communities in various states across the country.[4]  Plaintiffs are 406 current and former KB Home salespersons who hail from 13 different states.  As onsite salespersons, Plaintiffs' primary job duty is to sell the homes that KB Home makes.[5]  Along with the sale of new homes, salespersons are also required to encourage the new home buyers to purchase a KB Home mortgage, to prequalify a buyer for a mortgage and to assist

---

[3] Sixth Defense in Defendant's Original Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint, p. 20 [Doc. 161] ("Specifically, Plaintiffs' claims are barred because the work they performed falls within the exemptions…provided for in the FLSA, including, but not limited to, the outside sales, the administrative, the highly compensated and the 7i exemptions under the FLSA.").

[4] *See* Ex. 2, Davison Depo., p. 14, ll. 16-23; p. 22 – p. 23 (describing the various KB Home territories including Texas, Colorado, Illinois, Indiana, Louisiana, etc.).

[5] Ex. 3, Deposition of Deanna Schmitt, Vol. I,  p. 222, ll. 12 – 15 ("Q: And would you agree with me that the KB Home sales representatives – their primary job duty is to sell those houses that KB Home builds? A: Yes.").

with the mortgage loan process until closing.[6]   Plaintiffs accomplished their job duties inside their sales offices and KB Home's other places of business.[7]

As salespersons for KB Home, Plaintiffs regularly worked more than 40 hours per workweek, and they were not paid any overtime compensation.   Instead, Plaintiffs were misclassified by KB Home as exempt employees under the FLSA, and KB Home paid Plaintiffs on a commission-only basis.   Salespersons were sometimes paid on a draw against commissions under which KB Home would loan/advance salespersons a predetermined amount of money each pay period, the "draw," which the salespersons would then repay to KB Home.   If the salespersons were unsuccessful in selling homes for a consecutive period of time and, as a result, became indebted to KB Home with a large draw backlog, KB Home would reduce or potentially eliminate the salespersons' draw amount.   The salespersons' draw was, therefore, directly tied to each salespersons' performance.

### III.   SUMMARY JUDGMENT STANDARD

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material

---

[6] Ex. 1, Caddell Depo., p. 130, ll. 8 – 10 ("Q: Wasn't it required of the sales counselors to try to sell Bank of America to the prospective buyers? A: Yes, ma'am. ); Ex. 2, Davison Depo., p. 159, ll. 6-11 ("Q: "[y]ou understand that indeed they [salespersons] were paid to sell the Countrywide mortgage? A: Yes."); p. 49, ll. 4-6 ("Q: Certainly before KB Home would start building that house, the buyer had to be prequalified? A: Prequalified, preapproved, yes.").

[7] Ex. 5, Deposition of Angela Denise Ross, p. 38, ll. 14 – 19.

fact and the movant is entitled to judgment as a matter of law." *Aikins v. Warrior Energy Servs. Corp.*, 2015 WL 1221255, at *2 (S.D. Tex. Mar. 17, 2015) (citing FED. R. CIV. P. 56(a)).  A party who bears the burden of proof on a particular claim or defense must factually support each element of its claim or defense.  *King v. Stevenson Beer Distrib. Co.*, 11 F. Supp. 3d 772, 779 (S.D. Tex. 2014).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

KB Home bears the burden of proof on its affirmative defenses including the FLSA exemptions that are the subject of this motion.  *See Singer v. City of Waco, Tex.*, 324 F.3d 813, 820 (5th Cir. 2003) (employer bears the burden of demonstrating that an employee is exempt).  Accordingly, KB Home must respond to this motion and "go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories and admission on file, designate specific facts that show there is genuine issue for trial." *King*, 11 F. Supp. 3d at 780 (citing *Webb v. Cardiothoracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998)).

## IV.   ARGUMENT AND AUTHORITIES

**A.   KB Home Bears the Heavy Burden of Proving that Its Salespersons "Plainly and Unmistakably" Fall Within The "Terms and Spirit" of the Claimed FLSA Exemptions.**

The Fair Labor Standards Act (FLSA) requires employers to compensate employees at one and one-half times the regular rate of pay for work more than forty hours in a workweek. 29 U.S.C. § 207(a)(2).  However, the FLSA provides that certain employees are exempt from the overtime compensation requirement. Exemptions under the FLSA are "construed narrowly" against the employee, and the employer bears the burden of establishing a claimed exemption. *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir. 2010) (*citing Barefoot v. Mid-America Dairymen, Inc.*, 16 F.3d 1216, 1994 WL 57686, at *2 (5th Cir. Feb. 18, 1994)); *see also Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th Cir. 1992); *Dalheim v. KFDW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990). Moreover, the employer must establish that the employee falls "plainly and unmistakably" within the "terms and spirit" of the exemption.  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

Whether an employee is exempt under the FLSA is primarily a question of fact, but the ultimate decision regarding the applicability of any FLSA exemption is a question of law. *See Cheatham v. Allstate Ins. Co.,* 465 F.3d 578, 584 (5th Cir. 2006); *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000); *Dalheim*, 918 F.2d at 1226.  The employer carries the heavy and strict burden

5

of proving that it is plainly and unmistakably classified as a retail or service establishment within the meaning of the FLSA. *See Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir.1983); *Homemakers Home and Health Care Services, Inc. v. Carden*, 538 F.2d 98, 101 (6th Cir.1976) (citing *Arnold v. Ben Kanowsky*, Inc., 361 U.S. 388, 392 (1960)).

As discussed in more detail below, the application of the retail sales exemption, the highly compensated exemption and the administrative exemption must be construed narrowly against KB Home.  KB Home cannot meet its heavy burden of proving these exemptions.

### 1.   The Retail Sales Exemption Is Not Applicable to KB Home as a Matter of Law.

The FLSA contains three requirements for the retail sales exemption:

(1)   Employee's pay exceeds one and one half times the minimum hourly rate under the FLSA;

(2)   Employee earns more than half of his/her compensation as commissions on goods or services; and

(3)   Employer is a ***retail or service establishment***.

29 U.S.C. § 207(i) (emphasis added).  Here, as a matter of law, KB Home is not a "retail or service establishment," and therefore, this exemption does not apply.

> **a.**   **KB Home is Not a Retail or Service Establishment within the Meaning of the FLSA Because KB Home Makes the Product it Sells—New Homes.**

District courts across the country, including district courts within the Fifth Circuit, have been consistent in reasoning that an employer cannot be classified as a "retail or service establishment" within the meaning of the FLSA exemption if it makes the product it sells. *See Liger v. New Orleans Hornets NBA Ltd. Partnership*, 565 F. Supp. 2d 680, 688-89 (E.D. La. 2008) ("Accordingly, the Court is not convinced that the Hornets operate within the retail or service establishment "concept" considered by the FLSA because the Hornets have the dual characteristic of a manufacturer and a retailer, and thus, cannot meet the Department of Labor requirements."); *compare, with Wells v. TaxMasters, Inc.,* No. 4:10-CV-2373, 2012 WL 4214712 (S.D. Tex. Sept. 18, 2012) (holding the employer is a retail establishment because it did not engage in the manufacturing process); *Reich v. Cruises Only, Inc.,* 1997 WL 1507504 (M.D. Fla. June 5, 1997) (same).

In other words, if an employer manufactures the product that it sells, it cannot be deemed a "retail or service establishment" as a matter of law.  The requirement that retail businesses not engage in the creation or manufacture of the product it sells is strictly applied. *See Williams v. Trendwest Resorts, Inc.*, No. 2:05–CV–0605–RCJ–LRL, 2007 WL 2429149, *7 (D. Nev. Aug. 20, 2007) (citing *Reich v. Delcorp*, 3 F.3d 1181, 1183-1184 (8th Cir. 1993)). To qualify as a retail establishment, an

employer must exist at the <u>very end of the stream of commerce</u> and engage in simply selling the product but not making it. *Liger,* 565 F. Supp. 2d at 689; *see also* 29 C.F.R. § 779.312.  A "retail or service establishment" cannot possess dual qualities of a manufacturer and a retailer.  *Id.*

For example, in *Liger*, the plaintiffs were employees of the defendant—a partnership that operated a professional sports franchise. *Id.* at 681. The employer argued that it did not owe overtime wages to the employees because it was a retail or service establishment under the FLSA. *Id.* at 682.  However, because the employer manufactured the product that it sold, the court found the employer to have the dual characteristics of both a retailer and a manufacturer.  *Id.* at 688.  The court found that "as one of the teams in the National Basketball Association, the Hornets are in the business of both producing and selling entertainment to the public."  *Id.*  The court further noted that an establishment must be "at the very end of the stream of commerce," and cannot "take part in the manufacturing process" in order to qualify for the exemption. *Id.* (quoting 29 C.F.R. § 779.318(a)).  In result, the court found that the employer did not meet the crucial requirements of the Department of Labor. *Id.*

Similarly, in *Williams*, the employer argued that it did not owe its sales and administrative employees overtime wages because it was a "retail or service establishment." *Williams v. Trendwest Resorts, Inc.*, 2007 WL 2429149, at *7 (D.

Nev. Aug. 20, 2007). The employer developed and marketed timeshare condominiums and resorts. *Id.* Because the employer manufactured the product it sold—timeshares and condominiums—the court found that, among other reasons, the employer did not qualify for the retail sales exemption under the FLSA. *Williams,* 2007 WL 2429149, at *7.

Like the employers in *Liger* and *Williams*, KB Home makes the very product that it sells—new homes. The employer in *Liger* was not a retail establishment because it was found to be "both producing *and* selling" its entertainment services to the public, and similarly, the employer in *Williams* was not a retail establishment because it was found to be producing *and* selling real estate interests and condominiums to its customers.  KB Home, too, is in the business of both producing *and* selling new homes and real estate interests in new homes.[8]  KB Home builds new homes, and then utilizes its salespersons to sell its new homes to homebuyers.[9] As in *Liger* and *Williams*, KB Home's business is not the type that exists at the very end of the stream of commerce.  Because KB Home both produces and sells its new homes, it cannot qualify as a retail or service establishment within the meaning of the Act, and the retail sales exemption is inapplicable.

---

[8] *See* Ex. 2, Davison Depo., p. 41, ll. 4 – 24.

[9] *See supra* note 7; *supra* note 4.

9

**b.      KB Home is Not a Retail or Service Establishment Within the Meaning of the FLSA Because the Regulation Specifically Excludes Real Estate Companies.**

Under the Code of Federal Regulations, there are some entities that simply <u>do not</u> qualify as a "retail or services establishment" under any circumstances within the meaning of the Act.  29 C.F.R. § 779.317.  In fact, 29 C.F.R. § 779.317 specifically identifies certain businesses that lack a retail concept and therefore are not considered a "retail establishment" for purposes of the exemption. District courts within this Circuit have used this list to determine whether or not an establishment lacks a retail concept. *See Parker v. ABC Debt Relief, LTD. Co.*, No. 3:10-CV-1332-P, 2013 WL 371573, at *7 (N.D. Tex. Jan. 28, 2013) (holding the employer's business lacks a retail concept because it operates similarly to the businesses listed in 29 C.F.R. § 779.317).

The list set forth in the Code of Federal Regulations specifically identifies "***Real Estate Companies***" as a business that is not considered a retail establishment, and therefore, cannot avail itself of the retail sales exemption.  *See* Ex. 7, 29 C.F.R. § 779.317.  Accordingly, as a matter of law, the federal regulations exclude KB Home—a new home builder selling real estate—from being deemed a retail establishment.

For the same reasons, in *Williams* the district court determined that the retail sales exemption could not apply to the employer, Trendwest Resorts.  In *Williams*,

10

the employer argued that its employees, condominium and timeshare salespeople, were exempt from the FLSA under the retail sales exemption. *Williams v. Trendwest Resorts, Inc.*, No. 2:05–CV–0605–RCJ–LRL, 2007 WL 2429149, *7 (D. Nev. Aug. 20, 2007). The employees argued that the employer cannot be a retail or service establishment because it lacks a "retail concept" as its customers buy ownership, non-retail interests that "operate much like real estate." *Id.* The court cited 29 C.F.R. § 779.317 and noted that "Real Estate Companies" have been held to lack a retail concept. *Id.* at *9. Because the employer's customers received real estate interests, the court ruled that Trendwest Resorts could not be deemed an entity that possesses a retail concept. *Id.*

Like the employer in *Williams*, KB Home sells real estate interests in new homes. It is akin to a "Real Estate Company"—an establishment listed in 29 C.F.R. § 779.317 as one that lacks a retail concept and is not covered by the retail sales exemption. Accordingly, KB Home's salespersons are not exempt from the FLSA under the retail sales exemption because KB Home (1) produces the product it sells—new homes, and (2) KB Home sells a real estate interest and is the type of "Real Estate Company" that the federal regulations specifically exclude from the retail sales exemption. 29 C.F.R. § 779.317.

2.    **KB Home Does Not Meet the Salary Basis Test, and therefore, the Highly Compensated Exemption and Administrative Exemption Cannot Apply as a Matter of Law.**

The highly compensated exemption[10] and administrative exemption both require that the employer must establish that the exempt employee's pay meets the "salary basis test." *See* 29 C.F.R. § 541.601(b)(1); 29 C.F.R. § 541.602. Under the salary basis test, an employee must be paid at least $455 per week paid on a ***salary*** basis during a 52-week period. Here, it is undisputed that Plaintiffs were not paid on a salary basis.[11]

The Code of Federal Regulations describe "salary basis" as "the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). The Department of Labor ("DOL") requires that the employment arrangement must "include[ ] a *guarantee* of at least the minimum weekly required amount paid." 29 C.F.R. § 541.604(b) (emphasis added). Employers can meet the salary basis test by paying salary plus

---

[10] In order to qualify as an exempt highly compensated employee, the three general requirements are that: (1) the employee's total annual compensation is at least $100,000; (2) total annual compensation must include at least $455 per week paid on a salary or fee basis during a 52-week period; and (3) the employee's primary duties include performing office or non-manual work directly related to the management or general business operations of the employer or the employer's customers. 29 C.F.R. § 541.601 (a) – (b)(1), (d).

[11] Ex. 4, Schmitt Depo., Vol. II, p. 185, ll. 13 – p. 186, l. 1.

commissions <u>only if</u> "the employment arrangement also includes a *guarantee* of at least the minimum-weekly requirement amount." 29 C.F.R. § 541.604(a).   Most importantly, "'wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or **'free and clear**.'" 29 C.F.R. § 531.35 (emphasis added); *see Dunlop v. Martin Brick Co.*, 1981 U.S. Dist. LEXIS 16861, at *9 (N.D. Tex. Sept. 30, 1981).

Here, the Plaintiffs' compensation plan does not meet the salary basis requirement because: (1) KB Home has admitted that it does not pay its salespersons on a salary basis; (2) the biweekly "draw" paid to salespersons at KB Home's discretion does not constitute a salary because KB Home salespersons are required to repay the draw which violates the "free and clear" requirement and constitutes an impermissible offset to each salesperson's compensation, and (3) the salespersons' compensation plan is performance-based which also violates the salary basis test. Accordingly, both the highly compensated and administrative exemptions cannot apply as a matter of law.

### i.   KB Home has admitted that it does not pay its salespersons a salary.

KB Home designated Deanna Schmitt as its corporate representative pursuant to Fed. R. Civ. P. 30(b)(6) to testify on topics pertinent to this matter.[12]  Ms. Schmitt

---

[12] Ex. 4, Schmitt Depo. Vol. II, p. 8, ll. 2-10.

13

testified on KB Home's behalf to the compensation of salespersons including, but not limited to, wage rates, commission, salary rates, bonuses, overtime rate, minimum wages, incentive compensation, and total compensation paid to salespersons.[13] On this specific topic relating to the salespersons' compensation, KB Home, by way of its corporate representative, Deanna Schmitt, admitted that salespersons do not receive a salary.

> **Q:** Okay. If I could direct your attention to the next page, please, of Exhibit 7. Under "Starting Salary" – do you see that? It's the first full paragraph of the page that's Bates-labeled KB-P000016.
>
> **A:** Yes.
>
> **Q:** It says, "Employee understands and agrees that the Sales Representative position is a commission only position, and as such, Employee shall not be eligible to receive a salary." Did I read that correctly?
>
> **A:** Yes.
>
> **Q:** You would agree that the salespersons did not receive a salary; correct?
>
> **A:** Correct.[14]

Based on this testimony of the KB Home corporate representative and the KB Home sales agreement which expressly renders salespersons ineligible to receive a

---

[13] Ex. 4, Schmitt Depo., Vol. II, p. 10, ll. 9 – 25.

[14] Ex. 4, Schmitt Depo., Vol. II, p. 185, ll. 13 – p. 186, l. 1.

salary[15], it is disingenuous for KB Home to rely on any FLSA exemption, including the administrative and highly compensated exemptions, which requires satisfaction of the salary basis test.  Moreover, even without the admission of KB Home through its corporate representative and the clear evidence of the sales agreement, it is clear that the KB Home pay scheme cannot meet the salary basis test.

      ii.    **KB Home's compensation scheme does not meet the salary basis test because salespersons' draws are not "free and clear."**

KB Home's compensation scheme does not meet the salary basis test because the draw paid to salespersons is not "free and clear" as required by the regulations. Salespersons are paid on a draw against commissions basis.  Payment of the draw is at KB Home's sole discretion.[16]  The draw is advanced to salespersons each pay period in an amount subject to KB Home's discretion, and the draw is then recovered back from the salespersons by KB Home when the salesperson earns commissions above and beyond the draw amount.  Essentially, the draw is a "loan" that salespersons pay back to KB Home once they sell a home and earn commissions.[17]

---

[15] Ex. 6, KB Home Salesperson Employment Agreement. [KB-P000016].

[16] Ex. 6, KB Home Salesperson Employment Agreement, [KB-P000004] ("Advances or draws are a privilege, not a condition of employment, and represent an advance on commission to be earned in the future which constitute a loan to be repaid out of future commissions and/or when Employee's employment with the Company is terminated as provided below.").

[17] *See supra* note 15; Ex. 4, Schmitt Depo., Vol. II, p. 46, ll. 13-17 ("Q: Isn't it true, though, that the draw is basically a loan that has to be repaid? A: It's an advance against commissions. Q: And it has to be repaid; correct? A: Correct.").

The draw, therefore, is not "free and clear" because is an impermissible offset against the salespersons' compensation that violates the salary basis test. *See Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1110 (S.D. Cal. 2006).

In the KB Home Salesperson Employment Agreement, Section III (c) Advances or Draws states "[t]he Company shall pay to the Employee *advances or 'draws' against commissions*. . . payable semi-monthly, less normal withholding and employee deductions. . . . The Company shall *deduct from any commissions paid to the Employee the then-current outstanding balances of all previously paid advances or draws*" (emphasis added).[18] Additionally, in Addendum A to the Salesperson Employment Agreement, "[t]he company **will** reduce Employee's draws if Employee's outstanding draw balance exceeds the lesser of either 50% of all commissions in backlog or $10,000.00."[19] Thus, the draw payments provide a compensation base-level if the salesperson's commission does not rise above the certain draw amount per month. If the salespersons fail to earn sufficient commissions in a particular month to cover the monthly draw, the deficit would be carried forward and deducted from subsequent months.[20]   Essentially, the salespersons' draw amounts are not "free and clear" and must be repaid.

---

[18] Ex. 6, KB Home Salesperson Employment Agreement [KB-P000004].

[19] Ex. 6, Addendum A to the Salesperson Employment Agreement [KB-P000016].

[20] For example, if the draw rate was $5,000 per month, or $2,500 semi-monthly, the employee would have to make more than $2,500 every two weeks to repay the draw. However, because

The case before this Court is analogous to *Takacs v. A.G. Edwards & Sons, Inc.*, in which the court denied the defendant's motion for summary judgment and found that a draw deduction is an "impermissible offset" taken from the plaintiffs' guaranteed salary. *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d at 1110. In *Takacs*, the plaintiffs worked as financial consultants and received a predetermined guaranteed amount of at least $1,150 per month ($265 per week) which was considered the plaintiffs' "draw." *Id.* at 1107.  If the plaintiffs did not earn above $1,150 per month in commissions, the defendant would supplement the plaintiffs' commissions with the draw amount. *Id.* at 1108. The difference between monthly commissions and the draw would be deducted from the plaintiffs' subsequent paychecks.  *Id.*   The plaintiffs in *Takacs* argued that the draw arrangement did not meet the salary basis test because in order to qualify as a salary, the required amount must be paid "free and clear," meaning *finally* and *unconditionally* under the DOL regulation 29 C.F.R. § 531.35. *Id.* at 1108 (emphasis in the original).

The plaintiffs relied on a 1971 DOL Opinion Letter which provides that "[t]he employer may not satisfy the salary requirement by adopting an offset method whereby deficits in earned commission are carried forward or earned commissions

---

salespersons did not make commissions regularly, the outstanding balance or accumulation of draw payments would be deducted from the commissions earned.

are held in reserve." Opinion Letter WH-129, 1971 DOLWH LEXIS 22, at *2. The defendant rebutted that the draw deduction from subsequent paychecks is permissible and cited the 1971 DOL Opinion Letter and a 1995 DOL Opinion Letter as support for its argument. *Takacs*, 444 F. Supp. 2d at 1110.

The 1995 DOL Opinion Letter discussed a compensation scheme in which a commission or bonus based on a percentage of revenues could be paid in addition to the fixed weekly salary. Opinion Letter, 1995 WL 1032470 (DOL WAGE-HOUR), at *1. The DOL stated that "[i]n no event will this result in a reduction of the amount of guaranteed fixed weekly salary" and the bonus would not affect the employee's salary basis of payment or employee's exempt status. *Id.*

The district court stated that the 1971 Opinion Letter "only applies to situations where 'deficit commissions' are deducted from future commissions that are in addition to the guaranteed salary and/or draw payment." *Takacs*, 444 F. Supp. 2d at 1110. Moreover, the 1995 Opinion Letter refers to a situation in which commission is paid in addition to a weekly salary, which was not the situation in *Takacs. Id.* The court found the draw deduction was an impermissible offset to the plaintiffs' guaranteed salary, not a variable in the calculation of commissions paid. *Id.* Thus, the defendant was unable to meet its burden of proving its draw compensation system came within salary basis test of the administrative exemption, and the court denied the defendant's motion for summary judgment. *Id.*

Similar to the plaintiffs in *Takacs* who received a draw that would be deducted from commissions in later months, KB Home salespersons are paid commissions net of advances semi-monthly in the subsequent months. In other words, the salesperson's then-current outstanding draw balance, which may consist of multiple monthly draws, is deducted from commissions earned and is paid in the following month. This draw arrangement does not fall within the scope of the 1995 DOL Opinion Letter used by the defendant in *Takacs* because, here, the Plaintiffs' commission is not paid *in addition* to the guaranteed weekly salary. Furthermore, the draw deduction is not a variable in the calculation of commissions paid but is simply a deduction from the commissions earned. Following the reasoning of the court in *Takacs*, the draw deduction from subsequent paychecks is an impermissible offset to each Plaintiffs' salary as stated in the 1971 DOL Opinion Letter. Because KB Home cannot prove that the draw arrangement component of each Plaintiffs' salary comes within the salary basis test, KB Home is unable to meet the burden of proving that the Plaintiffs come within the highly compensated employee or administrative exemption.

In a more recent Opinion Letter, FLSA 2006-43, the DOL concluded that employees are paid on a salary basis specifically when there is "a reconciliation between the salary/draw and fee/commission components, *i.e.,* the relevant formula for calculating the commissions or fees may take into account the predetermined

minimum amounts paid to a registered representative in the current and/or previous pay periods." Opinion Letter, FLSA 2006-43, 2006 WL 3832994, at *3.   In that compensation model, the DOL stated that the reconciliation process for calculating excess commissions or fees above the guaranteed predetermined minimum amount "does not result in a reduction in the guaranteed predetermined minimum amount paid." *Id.* at *7. The employee "at all times is "guaranteed and receives not less than" the predetermined $455 minimum weekly amount. *Id.* The employer indicated that "**at no point in the registered representative's employment is he or she asked to repay the guaranteed minimum salary/draw payments** if he or she does not earn enough credits in excess commissions or fees above the minimum salary/draw amounts" and the draw was "not subject to reduction" because of variations in the quality or quantity of the work performed by the registered agent." *Id*. at *3, *7.   As a result, the DOL determined that the specific employment arrangement included a guarantee of at least the required amount paid on a salary basis. *Id.*

Applying the reasoning of FLSA 2006-43 to these facts, the KB Home compensation plan does not meet the salary basis test. The matter before this Court is distinguishable from the situation described in FLSA 2006-43. To begin, KB Home salespersons under the KB Home Salesperson Agreement are <u>required</u> to repay the guaranteed minimum draw payments in subsequent months without regard to whether or not they earn commission.  In fact,

20

> In the event that either Employee or the Company [KB Home] terminates Employee's employment with the Company at any time in which Employee has an outstanding balance of advances or draws against commissions, the Company shall have the right, but not the obligation, to provide Employee with a written demand for the outstanding balance of such advances or draws against commissions (the "Repayment Notice").  If the Company, in its sole discretion elects to provide such Repayment Notice, Employee shall be obligated to pay the Company such funds within ten (10) days of his or her receipt of such Repayment Notice.[21]

Thus, Plaintiffs are in fact required to repay the minimum draw amount which violates the salary basis test and is inconsistent with the facts presented to the DOL in FLSA 2006-43.

Furthermore, under Addendum A, if salespersons are unable to pay off the outstanding balance due to monthly draws, the draw will be reduced by KB Home. *See* Ex. 6, KB Home Salesperson Employment Agreement [KB-P000016] ("The Company [KB Home] **will** reduce Employee's draws if Employee's outstanding draw balance exceeds the lesser of either 50% of all commissions in backlog or $10,000.00).  KB Home's sales agreement affirmatively shows that salespersons' draw amount was in fact subject to reduction which also takes the matter before this Court outside the purview of FLSA 2006-43.  Case law and the DOL Opinion Letters together demonstrate that KB Home's compensation scheme does not meet the salary basis test because the Plaintiffs are required to repay the minimum guaranteed

---

[21] Ex. 6, KB Home Salesperson Employment Agreement [Bates labeled KB-P000004].

draw, which is an impermissible offset to their salary. Accordingly, because its employees are not paid on a salary basis, KB Home is incapable of meeting the heavy burden of proving that the Plaintiffs meet the highly compensated and administrative exemptions.

> ### iii.   KB Home's compensation plan does not satisfy the salary basis requirement because the draw is performance-based such that it can be reduced or eliminated.

As referenced previously in Addendum A to the KB Home Salesperson Employment Agreement, KB Home will reduce the draw if the employee's sales backlog is insufficient to support further draws. In other words, KB Home can reduce the draw at any time if salespersons are unable to sell homes. Plaintiffs' ability to sell homes, *i.e.* Plaintiffs' performance, is directly linked to their ability to continue receiving the KB Home recoverable draw.

In *Bowman v. Builder's Cabinet Supply Co.*, the court found the plaintiff's pay was performance-based, and subsequently, the defendant was unable to prove that the "salary basis test" was satisfied under the requirements of 29 C.F.R. § 541.602(a). *Bowman v. Builder's Cabinet Supply Co.*, 2006 WL 2460817 (E.D. Ky. Aug. 23, 2006). The defendants argued that the compensation scheme met the "salary basis" requirement because the annual draw yielded a biweekly wage in excess of the minimum $455 per week requirement. *Id.* at *4. The plaintiff in *Bowman* had a three-month grace period in which her draw was "non-recourse,"

meaning she received the draw amount regardless of sales commission earned. *Id.* at *1. However, after the three-month grace period ended, the plaintiff's draw was against any commission, which is similar to the plaintiffs here. *Id.*

The court in *Bowman* discussed that the "draw against commission" payment scheme was one in which: (1) the plaintiff received a draw, but became indebted to the defendant if her monthly sales were less than projected, and (2) after the grace period ended, the plaintiff's draw was tied directly to the amount of sales she made, and due to her poor sales, the draw was reduced and eliminated. *Id.* at *5. The situation in *Bowman* where the plaintiff received her draw, but became indebted to the defendant if her monthly sales were less than projected, is similar to the instant case in which KB Home salespersons receive monthly draws, but are indebted to KB Home if their sales are insufficient to exceed the draw amount. Likewise in *Bowman*, where the plaintiff's draw was reduced and ultimately eliminated due to her poor sales, here the policy is clear in Addendum A that if salespersons are unable to generate commission to pay the deficit owed to KB Home, their monthly draw **will be** reduced. Thus, because Plaintiffs' pay is performance-based, KB Home cannot demonstrate that Plaintiffs are compensated on a salary basis because the reduction of the draw is ultimately tied to sales performance or Plaintiffs' ability to sell homes and receive commission. *See* Ex. 8, *Villegas v. Regions Bank*, No. 11-904 (S.D. Tex. July 19, 2012) (J. Rosenthal) [Doc. 21] (the employer did not pay

plaintiff on a salary basis because the plaintiff's offer letter and affidavit testimony evidenced her draw in 2008 was contingent on whether she met loan production requirements).

Moreover, because the monthly draw **will be reduced** by KB Home, there is no indication that a weekly predetermined amount of $455 is *guaranteed* to the Plaintiffs. In other words, the draw itself does not ensure a fixed weekly salary amount is paid to the employee. Thus, because KB Home is unable to prove that it pays its salespersons a guaranteed predetermined minimum $455 per week in a 52-week period on a salary basis, it is unable to prove that the Plaintiffs come under the highly compensated and administrative exemptions to the FLSA.

### 3. The Administrative Exemption Does Not Apply to Salespersons as a Matter of Law.

Not only is the administrative exemption inapplicable because of the failure to meet the salary basis test, but the Department of Labor has determined that as a matter of law the administrative exemption does not apply to employees whose primary duty[22] is sales.

Under the administrative exemption, for the employee's work to be directly related to the management or the general business operations of the employer, the work must be related "to assisting with the running or servicing of the business, as

---

[22] An employees' "primary duty" under the regulations means "the principal, main, major or most important duty the employee performs." 29 C.F.R. § 541.700(a).

distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a); *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 2015 WL 1379882, at *2 (5th Cir. Mar. 27, 2015); *see also Reyes v. Texas Ezpawn, L.P.*, 459 F. Supp. 2d 536, 560 (stating in a retail setting, "activities relating to the administrative operations of a business [are] distinguished from sales work.").

### a. KB Home cannot meet the administrative exemption because salespersons' primary duty is sales.

Salespersons at KB Home are not administratively exempt because their primary job duty is sales. Deanna Schmitt, current Vice President of Human Resources for KB Home,[23] testified that the primary job duty of the sales representatives is to **sell** the homes that KB Home builds.[24] By law, where an employee's primary duty is sales, his/her primary duty cannot also be related to the management or general business operations of his/her employer for purposes of the administrative exemption. *See, e.g.,* Opinion Letter, 2010 WL 1822423 (DOL WAGE-HOUR), at *9 (stating the primary duty of mortgage loan officers is to make sales, which is not directly related to the management or general business operations of their employer or their employer's customers, and therefore, mortgage loan

---

[23] Ex. 3, Schmitt Dep., Vol. I, p. 39, ll. 13-17.

[24] Ex. 3, Schmitt Dep., Vol. I., p. 222, ll. 12 – 15.

officers do not qualify as bona fide exempt administrative employees).[25] Thus, KB Home salespersons cannot, by law, be exempt under the administrative exemption where their primary duty is sales.[26]

> **b.** **The administrative exemption and the outside sales exemption are mutually exclusive.**

In addition to asserting the administrative exemption as a defense to liability, KB Home has also asserted the outside sales exemption as a defense. However, by law, KB Home cannot claims that salespersons are exempt under both the administrative exemption and the outside sales exemption. Under 29 C.F.R. § 541.500(a), the term "outside salesman" means any employee:

(1) Whose primary duty is: (1) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

---

[25] The DOL Opinion letter issued on March 24, 2010, which concluded that mortgage-loan officers, whose primary duty is to make sales, do not qualify for the FLSA administrative exemption is still valid. *See Perez v. Mortgage Banker's Ass'n*, 135 S. Ct. 1199, 1201 (2015) (reversing an earlier decision and holding that the judge-made procedural right to the notice-and-comment process when an agency changes its interpretation of a regulations (the *Paralyzed Veterans* doctrine) is "contrary to the clear text of the APA's rulemaking provision and improperly imposes on agencies an obligation beyond the APA's maximum procedural requirements.").

[26] KB Home does also not meet the salary basis test for purposes of the administrative exemption. Plaintiffs incorporate here their discussion of KB Home's failure to meet the salary basis test *supra*, p. 12-24.

By definition under the Regulations, the primary duties elements of the outside sales exemption (making sales) and the administrative exemption (management or general business operations) render the two exemptions mutually exclusive. *Swigart v. Fifth Third Bank,* 870 F. Supp. 2d 500, 511 (S.D. Ohio 2012) (holding that the outside sales exemption and administrative exemption are mutually exclusive because the outside sales exemption requires the employees to have a primary job duty of sales which would disqualify them from coverage under the administrative exemption); *Chapman v. BOK Fin. Corp.*, 2014 WL 3700870, at *4 (N.D. Okla. July 25, 2014) (agreeing with the court in *Swigart* by holding that the outside sales exemption and the administrative exemption are mutually exclusive by their varying terms).

Thus, an employee cannot be exempt under both the administrative exemption and the outside sales exemption because of the conflict in primary job duties. *See, e.g.,* Opinion Letter, 2010 WL 1822423, at *9 (stating the primary duty of mortgage loan officers is to make sales, which is not directly related to the management or general business operations of their employer or their employer's customers, and therefore, mortgage loan officers do not qualify as bona fide exempt administrative employees). As a matter of law, KB cannot claim that salespersons are exempt under both the administrative exemption and the outside sales exemption.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs Motion for Summary Judgment on KB Home's misclassification of the salesperson position pursuant to the following FLSA exemptions: (1) retail sales exemption; (2) highly compensated exemption; and (3) administrative exemption.

Dated: July 20, 2015

<div style="margin-left:40%;">

Respectfully submitted,

By: /s/ Rhonda H. Wills
    Rhonda H. Wills
    ATTORNEY-IN-CHARGE
    State Bar No. 00791943
    S.D. Id. No. 20699
    WILLS LAW FIRM, PLLC
    1776 Yorktown, Suite 600
    Houston, Texas  77056
    Telephone:  (713) 528-4455
    Facsimile:  (713) 528-2047


ATTORNEYS FOR PLAINTIFFS

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on **July 20, 2015**, I electronically filed the foregoing document with the clerk of the court for the Southern District of Texas using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" and a copy of this document to all attorneys of record by electronic means.


<u>/s/ Rhonda H. Wills</u>
Rhonda H. Wills

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KIP EDWARDS, ET AL., on behalf of themselves and all others similarly situated, | § § § § | Civil Action No.  3:11-cv-240 |
| Plaintiffs, | § § | |
| v. | § § | COLLECTIVE ACTION (JURY TRIAL) |
| KB HOME, | § § | |
| Defendant. | § | |

## APPENDIX
### TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Ex. 1:       Excerpts from Deposition Transcript of Mickey D. Caddell

Ex. 2:       Excerpts from Deposition Transcript of Kyle Scott Davison

Ex. 3:       Excerpts from Deposition Transcript of Deanna Schmitt (Volume I)

Ex. 4:       Excerpts from Deposition Transcript of Deanna Schmitt (Volume II)

Ex. 5:       Excerpts from Deposition of Angela Denise Ross

Ex. 6:       KB Home Salesperson Employment Agreement

Ex. 7:       29 C.F.R. § 779.317 – Establishments Lacking "Retail Concept"

Ex. 8:       *Villegas v. Regions Bank*, No. 11-904 (S.D. Tex. July 19, 2012) (J. Rosenthal)