## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **KIP EDWARDS,** *et al.,* | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **NO. 3:11-CV-00240** |
| | § | |
| **KB HOME,** *et al.,* | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE RETAIL SALES, HIGHLY <u>COMPENSATED, AND ADMINISTRATIVE EXEMPTIONS</u>

## TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ........................................................................1

II.  STATEMENT OF MATERIAL FACTS .......................................2

III. STANDARD OF REVIEW ........................................................5

IV.  ARGUMENTS AND AUTHORITIES .........................................6

    A.   KB Home's Sales Counselors Are Exempt Employees of a
        Retail or Service Establishment ...........................................6

        1.   Plaintiffs Fail to Prove that KB Home is Not a "Retail or
            Service Establishment" Under Section 207(i) .........................7

        2.   KB Home Satisfies the "Retail Concept" Requirement ...........9

            a.   KB Home's Sales Offices Constitute "Retail or
                Service Establishments" Under the FLSA ...................10

                (1)   KB Home Employees Do Not Engage in the
                    Manufacturing Process ........................................11

                (2)   The KB Home Sales Office is a Physically
                    Distinct Place of Business ....................................12

                (3)   KB Home's Sales Offices Constitute Retail
                    or Service Establishments Under Section
                    207(i) ...................................................................15

            b.   KB Home is Not a Real Estate Company.....................18

    B.   Some of KB Home's Sales Counselors Are Highly
        Compensated ........................................................................21

        1.   KB Home's Compensation Plan Satisfies the "Salary
            Basis" Requirement ...............................................................22

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

2.  KB Home's Use of Terms Other Than "Salary" When Compensating Employees on a Commission Basis is Immaterial ....................................................................26

3.  Plaintiffs' Arguments Do Not Compel a Different Result ......27

C.  Plaintiffs Fail to Prove They Are Not Exempt Administrative Employees ....................................................................30

V.  CONCLUSION..............................................................................34

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Alvarado v. Corporate Cleaning Serv., Inc.*,
   719 F. Supp. 2d 935 (N.D. Ill. 2010)...................................................................20

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................................................................5

*Barnett v. Washington Mutual Bank, FA*,
   2004 WL 1753400 (N.D. Cal. Aug. 5, 2004) ......................................................14

*Brennan v. Great Am. Discount & Credit Co., Inc.*,
   477 F.2d 292 (5th Cir. 1973) ..................................................................................8

*Cash v. Cycle Craft Co., Inc.*,
   508 F.3d 680 (1st Cir. 2007)..................................................................................32

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................................................5

*Chen v. Major League Baseball*,
   6 F. Supp. 3d 449, 459 (S.D.N.Y. 2014) ..............................................................13

*Chessin v. Keystone Resort Mgmt., Inc.*,
   184 F.3d 1188 (10th Cir. 1999) .............................................................................13

*Darveau v. Detecon, Inc.*,
   515 F.3d 334 (4th Cir. 2008) .................................................................................32

*English v. Ecolab, Inc.*,
   No. 06 Civ. 5672(PAC), 2008 WL 878456 (S.D.N.Y. Mar. 31, 2008) ................
   .................................................................................................8, 13, 14, 19

*Gatto v. Mortg. Specialists of Illinois, Inc.*,
   442 F. Supp. 2d 529 (N.D. Ill. 2006)......................................................................7

*Hogan v. Allstate Ins. Co.*,
   210 F. Supp. 2d 1312 (M.D. Fla. 2002)................................................................29

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*In re RBC Dain Rauscher Overtime Litigation*,
   703 F. Supp. 2d 910 (D. Minn. 2010)................................................28

*Kaiser v. At The Beach, Inc.*,
   08-CV-586-TCK-FHM, 2011 WL 6826577 (N.D. Okla. Dec. 28, 2011)..........26

*Liger v. New Orleans Hornets NBA Ltd. P'Ship*,
   No. 05-1969, 2006 WL 2850157 (E.D. La. Oct. 4, 2006)..................16

*Lott v. Howard Wilson Chrysler-Plymouth, Inc.*,
   203 F.3d 326 (5th Cir. 2000) .............................................6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)......................................................5

*Mechmet v. Four Seasons Hotels, Ltd.*,
   825 F.2d 1173 (7th Cir. 1987) ...........................................9

*Rachal v. Allen*,
   376 F.2d 999 (5th Cir. 1967) ...........................................20

*Reich v. Delcorp, Inc.*,
   3 F.3d 1181 (8th Cir. 1993) .............................................7

*Schaefer-LaRose v. Eli Lilly & Co.*,
   679 F.3d 560 (7th Cir. 2012) ...........................................31

*Selz v. Investools, Inc.*,
   No. 2:09-CV-1042-TS, 2011 WL 285801 (D. Utah Jan. 27, 2011).................14

*Smith v. Johnson & Johnson*,
   593 F.3d 280 (3d Cir. 2010) ...........................................32

*Takacs v. A.G. Edwards & Sons, Inc.*,
   444 F. Supp. 2d 1100 (S.D. Cal. 2006) ................................28, 29

*Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*,
   246 F. Supp. 2d 886 (S.D. Ohio 2003) ..................................10

- iv -

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Wells v. Taxmasters, Inc.*,
No. 4:10-CV-2373, 2012 WL 4214712 (S.D. Tex. Sept. 18, 2012) ........8, 14, 20

*Williams v. Trendwest Resorts, Inc.*,
No. 2:05-CV-0605-RCJ-LRL, 2007 WL 2429149 (D. Nev. Aug. 20,
2007) ...............................................................................................................16, 17

*Wirtz v. Keystone Readers Servs., Inc.*,
418 F.2d 249 (5th Cir. 1969) ...............................................................13, 15, 16

*Zannikos v. Oil Inspections (U.S.A.), Inc.*,
No. 14-20253, 2015 WL 1379882 (5th Cir. Mar. 27, 2015) ..............................31

**STATUTES**

29 U.S.C. §§ 206 ........................................................................................................6

29 U.S.C. § 207 ..................................................................................................passim

29 U.S.C. § 213 ................................................................................................6, 7, 8

Fair Labor Standards Act ("FLSA") ..................................................................passim

**OTHER AUTHORITIES**

29 C.F.R. § 541.200 ...............................................................................................30

29 C.F.R. § 541.201 ..........................................................................................30, 31

29 C.F.R. § 541.202 ...............................................................................................31

29 C.F.R. § 541.205 ...............................................................................................30

29 C.F.R. § 541.601 ............................................................................................6, 21

29 C.F.R. § 541.602 ...............................................................................................21

29 C.F.R. § 541.604 ...............................................................................................22

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

29 C.F.R. 775. .............................................................................................19

29 C.F.R. § 779 ............................................................ 7, 8, 9, 11, 12, 13, 19, 20

FED. R. CIV. P. 56 .........................................................................................5

U.S. DOL Op. Letter WH-129 ...................................................................29

Wage & Hour Div. Op. Letter FLSA2006-43, 1, 3 (Nov. 27, 2006)
    ("FLSA2006-43") ..........................................................................passim

Wage & Hour Div. Op. Letter FLSA2007-4, January 25, 2007.............................17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **KIP EDWARDS et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **NO. 3:11-CV-00240** |
| | § | |
| **KB HOME et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS'[1] RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE RETAIL SALES, HIGHLY COMPENSATED, AND ADMINISTRATIVE EXEMPTIONS

### I.    INTRODUCTION

In their motion for summary judgment on the issue of the application of various exemptions under the Fair Labor Standards Act ("FLSA"), Plaintiffs largely rely on unsubstantiated assertions and conclusory allegations lacking any support in the record.  Summary judgment for Plaintiffs is inappropriate at this stage because Plaintiffs cannot establish an absence of any material fact dispute[2] on a number of issues, including, *inter alia*, whether KB Home sales offices constitute

---

[1] While this action is currently limited to claims by Houston Plaintiffs who are current or former employees of KB Home Lone Star Inc., all Defendants to this action oppose this motion because Plaintiffs have sued all of the Defendants in this action. Defendants specifically deny that any of the Defendants, other than KB Home Lone Star Inc., are the current or former employer of any Houston Division Plaintiff or proper defendants in this matter.

[2] Indeed, Defendants go further, as set out in their Motion for Summary Judgment on the Retail Sales Exemption, and contend that the record clearly establishes the opposite--Defendants are entitled to summary judgment on that exemption.

independent retail or service establishments, whether KB Home is a real estate company, whether KB Home's Sales Counselors have ever been subjected to improper draw deductions, and whether any KB Home Sales Counselors perform exempt administrative duties in addition to their sales duties.

## II.   STATEMENT OF MATERIAL FACTS

KB Home sells both inventory and built-to-order homes directly to its customers.[3] KB Home acts as the general contractor for the majority of its communities and hires experienced subcontractors for all production activities.[4] At all stages of production, KB Home's administrative and on-site supervisory personnel coordinate the activities of subcontractors and oversee that the work subcontractors perform meets quality and cost standards.[5]   "Built to Order," KB Home's core business model, allows customers to walk into a community, purchase a single-family home, and "make selections to customize that home to their wants and their needs."[6]   Thus, built-to-order homes are homes that a buyer can design based on certain parameters provided by KB Home, such as various pre-designed floor plans, choices regarding exterior building materials, and various types of interior finishes.[7]   KB Home's business model differs from typical

---

[3] Ex. V, Declaration of Renee Gervais, Doc. No. 208-1, ¶ 23 ("Gervais Decl.")
[4] Ex. J, August 24, 2015 Declaration of Renee Gervais.
[5] *Id.*
[6] Ex. A, Deposition of Deanna Schmitt, 85:6-85:11 ("Schmitt Dep."); *see also* Ex. B, Mitchell Dep., 59:10-59:19 (noting that "KB Home was not an inventory home builder.").
[7] Ex. V, Gervais Decl. ¶ 25.

residential real estate transactions, in which a buyer will tour various individual homes owned by different sellers in determining which home to purchase.[8]

KB Home employs Sales Counselors to sell its new homes to customers. KB Home's Sales Counselors work out of temporary sales offices located in various communities throughout the Houston area.   A customer seeking to purchase a house from KB Home must visit one of KB Home's storefronts, generally the particular community's model home sales office, in order to determine what products are available.[9]  The sales office is typically located in a trailer, the garage, or one of the model homes in that community.[10]  The sales office is generally not located in the demonstrative area of the model home, but is instead in the garage or in an isolated area, completely separate from the model home itself.[11]  To enter a model home with a garage office, the Sales Counselor and customer exit the door of the sales office, walk to the front of that particular model home, and enter the model home using the front door.[12]  With respect to those communities that have no sales office, the Sales Counselors work from a remote location or a neighboring community.[13]

---

[8] Ex. V, Gervais Decl., ¶ 29.
[9] Ex. V, Gervais Decl. ¶ 31.
[10] Ex. V, Gervais Decl. ¶ 7.
[11] *Id.*
[12] *Id.*
[13] *Id.* at ¶ 8.

KB Home's Sales Counselors are not involved in the actual build process of KB Home's operations. Some plaintiffs testified that they "never" or "rarely" went out to the construction sites on which the new homes were built[14] and did not deal with the construction aspect of KB Home's business at all.[15] Instead, KB Home hires construction managers who are responsible for overseeing the construction of the new homes.[16]

KB Home's Sales Counselors earn commissions rather than a salary as compensation for their efforts.[17] While commissions may vary from month to month depending on the number of homes sold in that period, Sales Counselors receive a draw on commission, typically in the amount of $2500 per month for every pay period they work. The draw is not required to be repaid during their first three months of employment with KB Home.[18] After the first three months, they receive a draw that is repaid out of their commissions.[19] For every pay period, Sales Counselors either receive the draw or a commission payment exceeding the draw.[20] Consequently, KB Home's Sales Counselors "are paid a combination of

---

[14] Ex. C, Vinson Dep., 61:9-61:14 ("That was construction"); Ex. F, Edwards Dep., 82:10-82:21 ("I think that's very dangerous.").

[15] Ex. C, Vinson Dep., 62:3-62:5; *see also* Heidmann Dep., 109:12-109:18 (sales and construction as separate departments).

[16] Ex. A, Schmitt Dep., 129:5-129:18.

[17] Ex. G, Heidmann Dep., at 342:3-342:10.

[18] Ex. E, Spillers Dep., 31:11-31:19.

[19] Ex. H, Winthrop Brown Dep., 76:1-76:18.

[20] Ex. C, Vinson Dep., 102:10-102:17.  *See also* Ex. I, Sliepcevic Dep., 45:3-45:6 (received a minimum of $2500.00 per month for every pay period he worked at KB Home); Ex.K Ericsson Dep., 91:13-91:18 (never had a work week at KB Home where he did not receive either his draw or a commission payment); Ex. L, Brailey Dep., 74:3-74:11 (does not recall ever receiving a paycheck for a two-week pay period that was not at least $1500).

draw payments and commissions."[21]   KB Home's Sales Counselors still receive their draw payment and commissions as scheduled when they are off for vacation.[22]

### III.   STANDARD OF REVIEW

Summary judgment should be granted if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The initial burden of demonstrating the absence of a genuine issue of material fact rests on the moving party— in this case, Plaintiffs.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant makes such a showing, the non-movant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c)(1).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   All reasonable inferences must be drawn in favor of the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

The decision regarding whether an employee is exempt from the FLSA's overtime provisions is "primarily a question of fact," but the "ultimate decision whether the employee is exempt from the FLSA's overtime compensation

---

[21] Ex. A, Schmitt Dep., at 208:9-208:14.
[22] Ex. A, Schmitt Dep. vol. II, 46:7-46:11.

provisions is a question of law." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330-31 (5th Cir. 2000).

## IV.   ARGUMENTS AND AUTHORITIES

The FLSA requires employers to pay their employees minimum wage and overtime pay when they work more than 40 hours per week.   29 U.S.C. §§ 206(a)(1), 207(a)(1).  The FLSA also, however, expressly exempts certain types of employees from these requirements.  *See* 29 U.S.C. § 213.  First, employers are not required to pay overtime compensation to certain commissioned employees of a retail or service establishment.   29 U.S.C. § 207(i).   Second, certain highly compensated employees are exempt from the FLSA's overtime requirements if they customarily and regularly perform any of the exempt duties or responsibilities of an administrative employee.  29 C.F.R. § 541.601.  Third, the FLSA's overtime requirements do not apply to employees who are employed in an administrative capacity.  29 U.S.C. § 213(a)(1).

### A.   KB Home's Sales Counselors Are Exempt Employees of a Retail or Service Establishment.

Congress chose to exempt from the FLSA's overtime requirements employees who meet the following criteria: (1) the employee's regular rate of pay exceeds one and one-half times the FLSA's minimum hourly rate; (2) more than half of the employee's compensation for a representative period (not less than one month) represents commissions on goods or services; and (3) the employee works

for a "retail or service" establishment.   29 U.S.C. § 207(i).   Plaintiffs do not

dispute that the first two elements of the retail sales exemption are satisfied, and

instead move for summary judgment solely on the issue of whether KB Home's

Sales Counselors work for a "retail or service establishment."   The record contains

ample evidence demonstrating that KB Home satisfies the criteria for a "retail or

service establishment" under the FLSA.   Regardless, the determination of whether

a particular Sales Counselor works out of such an establishment is necessarily a

question of fact on which Plaintiffs have produced no factual evidence.

Accordingly, this Court should deny Plaintiffs' Motion for Summary Judgment.

> ### 1.   Plaintiffs Fail to Prove that KB Home is Not a "Retail or Service Establishment" Under Section 207(i).

Section 207(i) of the FLSA does not define the term "retail or service

establishment."   *See Gatto v. Mortg. Specialists of Illinois, Inc.*, 442 F. Supp. 2d

529, 537 (N.D. Ill. 2006) (noting the same).   Instead, courts apply the definition set

forth in former section 213(a)(2) to determine whether a particular employer

qualifies as a "retail or service establishment" under section 207(i).   *See Reich v.

Delcorp, Inc.*, 3 F.3d 1181, 1183 (8th Cir. 1993) (discussing the legislative history

of the exemption and concluding that the repeal of section 13(a)(2) did not change

the meaning of the phrase "retail or service establishment" as used in section

207(i)); 29 C.F.R. § 779.411.

In former section 13(a)(2) of the FLSA, Congress defined a "retail or service establishment" to mean "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry."  29 U.S.C. § 213(a)(2); *Wells v. Taxmasters, Inc.*, No. 4:10-CV-2373, 2012 WL 4214712, at *4 (S.D. Tex. Sept. 18, 2012).   Additionally, the Fifth Circuit has held that a business must meet a threshold "retail concept" test "before the industry characterization of its sales can be considered." *Brennan v. Great Am. Discount & Credit Co., Inc.*, 477 F.2d 292, 295 (5th Cir. 1973); *see also* 29 C.F.R. § 779.316 (the term "retail or service establishment" does not include "establishments in industries lacking a 'retail concept'").

Importantly, however, while courts interpreting the section 207(i) exemption rely on language in former section 213(a)(2), "the two provisions were designed to address fundamentally different wage and hour concerns." *English v. Ecolab, Inc.*, No. 06 Civ. 5672(PAC), 2008 WL 878456, at *2 (S.D.N.Y. Mar. 31, 2008).  The U.S. Department of Labor's ("DOL's") regulations emphasize the rationale behind the section 7(i) exemption:

> Section 7(i) was enacted to relieve an employer from the obligation of paying overtime compensation to certain employees of a retail or service establishment **paid wholly or in greater part on the basis of commissions**. These employees **are generally employed in so-called "big ticket" departments and those establishments or parts of**

> **establishments where commission methods of payment traditionally have been used**, typically those dealing in furniture, bedding and home furnishings, floor covering, draperies, major appliances, musical instruments, radios and television, men's clothing, women's ready to wear, shoes, corsets, home insulation, **and various home custom orders. There may be other segments in retailing where the proportionate amount of commission payments would be great enough for employees employed in such segments to come within the exemption.** Each such situation will be examined, where exemption is claimed, to make certain the employees treated as exempt from overtime compensation under section 7(i) are properly within the statutory exclusion.

29 C.F.R. § 779.414 (emphasis added).  Such well-compensated, commissioned employees "are not the marginal, non-unionized workers for whom the overtime provisions were designed; they are the employees of a big-ticket department, whom section 207(i) was intended to exempt[.]"  *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1176 (7th Cir. 1987).

In the present action, more than seventy-five (actually one hundred) percent of KB Home's annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry, and Plaintiffs do not dispute either point.  Thus, the only issue remaining is whether KB Home satisfies the threshold "retail concept" test.

## 2. KB Home Satisfies the "Retail Concept" Requirement.

Plaintiffs failed to establish that there are no genuine issues of material fact regarding whether KB Home satisfies the "retail concept" requirement.  Plaintiffs

submitted no evidence as to whether any particular KB Home employee works out of a retail or service establishment or as to the nature of the unique industry in which KB Home operates.   Further, they have not introduced any evidence that would establish that *none* of KB Home's Sales Counselors work out of a "retail or service establishment."   To the contrary, Plaintiffs merely assert that KB Home cannot qualify as a retail or service establishment because: (1) it makes the product it sells and (2) the regulations exclude real estate companies.   For the reasons set forth below, Plaintiffs' arguments are misplaced and unavailing.

> a.    KB Home's Sales Offices Constitute "Retail or Service Establishments" Under the FLSA.

In determining whether a particular business is a "retail or service establishment," courts may consider whether the business possesses certain attributes that are generally associated with retail or service establishments. *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 892 (S.D. Ohio 2003).  The DOL highlighted some of these attributes in its 1971 interpretive bulletin, providing that a retail or service establishment (1) "is one which sells goods or services to the general public[;]" (2) serves the everyday needs of the community in which it is located; (3) "performs a function in the business organization of the Nation which is at the very end of the stream of distribution"; and (4) disposes in small quantities of the products and skills of such

organization and does not take part in the manufacturing process.   29 C.F.R. §
779.318(a).

Plaintiffs do not dispute that KB Home sells goods or services to the general
public, serves the needs of the communities in which it is located, or disposes of its
products in small quantities.[23]   Instead, Plaintiffs contend only that KB cannot
qualify as a retail or service establishment because it makes the product it sells—
new homes.   Plaintiffs argue that an employer cannot both engage in the creation
or manufacturing of the product it sells and exist at the very end of the stream of
commerce.   As shown below, however, KB Home is not a manufacturer.   KB
Home employees do not engage in the manufacturing process, and KB Home's
Sales Counselors work out of a retail or service <u>establishment</u> that is physically
distinct from the operations overseen by KB Home's construction employees.

(1)   ***KB Home Employees Do Not Engage in the
Manufacturing Process.***

KB Home hires subcontractors for all production activities and, at all stages
of production, has "administrative and on-site supervisory personnel coordinate the
activities of subcontractors and oversee that the work subcontractors perform
meets quality and cost standards."[24]   Accordingly, KB Home's construction
superintendents oversee sub-contractors who provide building materials and
physically build the homes in order to ensure that each home is built correctly and

---

[23] *See* Defs' Mot for Summ. J., Doc No. 208.
[24] Ex. J, August 24, 2015 Declaration of Renee Gervais.

in a timely manner.[25]  Plaintiffs have not demonstrated an absence of *any* dispute of material fact regarding whether KB Home or any of its employees engage in manufacturing activities.

(2)   ***The KB Home Sales Office is a Physically Distinct Place of Business.***

Plaintiffs contend that KB Home cannot qualify as a retail or service establishment simply because a separate unit or department of KB Home's business enterprise is charged with oversight of the creation of the product that KB Home's Sales Counselors ultimately sell to customers.   Plaintiffs' argument ignores the significance of Congress's decision to exempt certain commissioned employees of a retail or service **establishment**, rather than a retail or service business or enterprise, under section 207(i) of the FLSA.

The DOL has expressly recognized that "the term 'establishment' as used in the [FLSA] means a distinct physical place of business" and, consequently, is "not synonymous with the words 'business' or 'enterprise' when those terms are used to describe multiunit operations."   29 C.F.R. § 779.303.   Thus, in a multi-unit operation, some of the establishments may qualify for the exemption, while other establishments do not.  *Id.* "For example, a manufacturer may operate a plant for production of its goods, a separate warehouse for storage and distribution, and

---

[25] Ex. A, Schmitt Dep., 128:5-129:22.

several stores from which its products are sold." *Id.* "Each such physically separate place of business is a separate establishment." *Id.*

Accordingly, "[f]or purposes of both the [section 207(i) and section 13(a)(2) exemptions], Congress chose to use the individual establishment, rather than the entire enterprise, as the business unit for evaluating the applicability of the exemption." *Ecolab*, 2008 WL 878456, at *9; *Chessin v. Keystone Resort Mgmt., Inc.*, 184 F.3d 1188, (10th Cir. 1999) ("Both the Supreme Court and the Tenth Circuit have held that 'Congress used the word establishment to mean a distinct physical place of business rather than an integrated business enterprise.") (citing *Brennan v. Yellowstone Park Lines, Inc.*, 478 F.2d 285, 289 (10th Cir. 1973); *Phillips, Inc. v. Walling*, 324 U.S. 490 (1945)); *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 459 (S.D.N.Y. 2014) ("arguably, the only reason for defining the 'establishment' as a distinct physical place of business . . . was so that it could be distinguished from an integrated business enterprise.") (internal citations and quotations omitted). "Thus, the pertinent inquiry is not whether the business enterprise as a whole is engaged in retailing, but whether the **particular establishment under scrutiny** is engaged in retailing." *Wirtz v. Keystone Readers Servs., Inc.*, 418 F.2d 249, 254 (5th Cir. 1969) (emphasis added).

KB Home's sales office, which is located in a trailer or in a room of one of the model homes in the community,[26] is a physically distinct places of business that qualifies as a "retail or service establishment" under the FLSA. *See Selz v. Investools, Inc.*, No. 2:09-CV-1042-TS, 2011 WL 285801, at *7-*9 (D. Utah Jan. 27, 2011) (employer qualified as a retail or service establishment, despite the fact that it developed and manufactured its products **in the same building**, where its sales employees were hired to conduct sales from a call center that occupied a physically distinct space on a separate floor of that building and were not employed in the production phase of the business); *Wells,* 2012 WL 4214712, at *5 (employer exempt as a retail or service establishment where it custom designed tax resolution and representation services to meet the specific needs of each customer and employed sales people, who worked in a call center, to sell those services directly to consumers); *Ecolab*, 2008 WL 878456, at *10 (service specialists who maintained a fixed, physical workspace in their homes were employees of an establishment under the FLSA); *Barnett v. Washington Mutual Bank, FA*, 2004 WL 1753400, at * (N.D. Cal. Aug. 5, 2004) (the court's "inquiry is focused on the Santa Rosa call center and not defendants' business as a whole.").    Therefore, KB Home's sales office, <u>not</u> the entire KB Home enterprise, is the relevant business unit for evaluating the applicability of the section 207(i) exemption.

---

[26] Ex. V, Gervais Decl., at ¶ 7.

(3)    ***KB Home's Sales Offices Constitute Retail or Service Establishments Under Section 207(i).***

KB Home's Sales Counselors do not take part in the manufacturing process because they are hired to sell its homes, *not* to build its homes or otherwise engage in the build process.[27]  KB Home's Sales Counselors work out of sales offices that are physically separate from the home sites on which KB Home construction employees and subcontractors participate in the build phase of KB Home's build to order process.[28]  Even in those communities that have no sales office, Sales Counselors work from a remote location or a neighboring community.[29]

In addition, KB Home's Sales Counselors perform a function that is at the very end of the stream of distribution—selling newly-constructed, residential homes to customers.  Such sales are at the very end of the stream of distribution because they are made directly to the consumer, are not for resale (which Plaintiffs do not dispute), and are designed specifically by each customer to meet that customer's particular needs.  Under the circumstances, this Court should conclude

---

[27] Certain Plaintiffs testified they rarely walked through construction sites on which new homes were built and did not deal with the construction aspect of the business.  *See*  Ex. C, Vinson Dep., 61:9-61:14 ("That was construction"); Ex. F, Edwards Dep., 82:10-82:21 ("I think that's very dangerous.").

[28] While Sales Counselors are customarily and regularly engaged in sales activities outside of the sales office, this fact does not preclude the sales office's qualification as a retail establishment.  *See Wirtz v. Keystone Readers Servs., Inc.*, 418 F.2d 249, 255 (5th Cir. 1969) ("where substantial sales activity is conducted at a business office, the office may, despite subordinate clerical activity, constitute a bona fide retail outlet servicing the consuming public.") (emphasis added).  In *Wirtz*, the Fifth Circuit analyzed whether a door-to-door sales employee's "office" constituted a retail or service establishment.  *Id.*  The court found that the particular office at issue in *that* case did not qualify as a retail establishment because it was not equipped to make magazine sales, its functions were "entirely clerical in nature[,]" it held only a few samples, but no magazines or displays, and there was no evidence that any full-time sales employees were "retained" at the office or that consumers looked to the office as a potential source of magazine supply. *Id.* at 257.

[29] *Id.* at ¶ 8.

that KB Home's Sales Counselors are employed by a retail or service establishment.

The cases cited by Plaintiffs are inapposite. First, the court in *Liger v. New Orleans Hornets NBA Ltd. P'Ship* analyzed the entire Hornets enterprise, rather than an individual establishment within the larger enterprise, for purposes of the applying the exemption.[30] 565 F. Supp. 2d 680, 688 (E.D. La. 2008). Unsurprisingly, the court found that the organization "was in the business of both producing and selling entertainment to the public" because it selected the players and coaches to form the team and those players and coaches subsequently performed the work required to compete. *Id.* at 688, n.2. Therefore, the court was "not convinced" that the Hornets operated within the retail or service establishment 'concept' considered by the FLSA because the Hornets have the dual characteristics of a manufacturer and a retailer[.]" *Id.* at 689. The proper business unit for analyzing the applicability of the exemption in <u>this</u> case is the individual establishment, <u>not</u> KB Home's entire enterprise.

The second case cited by Plaintiffs on this point is similarly distinguishable. *See Williams v. Trendwest Resorts, Inc.*, No. 2:05-CV-0605-RCJ-LRL, 2007 WL 2429149 (D. Nev. Aug. 20, 2007). In *Trendwest Resorts, Inc.*, the court used the

---

[30] The plaintiffs in *Liger* had previously moved for summary judgment on the grounds that section 213(a)(3)'s amusement or recreation exemption did not apply to them because they were employed in the Hornets' business offices, which were separate establishments from the organization's amusement or recreation activities. *Liger v. New Orleans Hornets NBA Ltd. P'Ship*, No. 05-1969, 2006 WL 2850157, at *2 (E.D. La. Oct. 4, 2006). In response, the Hornets' organization argued that the business offices <u>**were not separate establishments**</u> because they had "a functional unity with the organization's amusement or recreational activities." *Id.*

entire enterprise as the business unit for evaluating the applicability of the exemption and determined that an employer engaged in developing and marketing timeshare interests was not a retail or service establishment under the FLSA. *Id.* at *9. Specifically, the court found that because vacation credit owners received a stake in the company's assets and management as well as "non-retail interests that operate much like real estate," Trendwest did not operate as a traditional retail establishment solely at the end of the stream of distribution. *Id.* at *7.

Unlike *Trendwest*, the relevant business unit for evaluating the applicability of the exemption in the present case is the sales office—an individual establishment—not the entire enterprise. Further, KB Home's customers purchase newly-constructed homes designed to meet their specific needs at the end of the stream of distribution, not limited, intangible timeshare interests that operate "much like real estate" and grant holders management rights in the company and a stake in the company's assets.[31]

Based on the above criteria, Plaintiffs failed to both (1) prove that KB Home is a manufacturer or that its employees engage in the manufacturing process; and (2) demonstrate that KB Home cannot constitute a "retail or service establishment"

---

[31] In its 2007 opinion letter analyzing the application of the outside sales exemption to employees selling timeshare interests, the DOL expressly noted that it reached a different conclusion in cases involving real estate sales employees selling lots of land on a model home in a subdivision because, in those cases, the employer does not maintain a continuing interest in the subdivision lots once they are sold or in the other facilities in the subdivision, and thus these areas are not part of the employer's place of business." Wage & Hour Div. Op. Letter FLSA2007-4, January 25, 2007.

under the FLSA simply because another unit of the company is involved in the creation of the product that KB Home sells to its consumers.

b.      KB Home is Not a Real Estate Company.

Plaintiffs' argument that KB Home cannot avail itself of this defense as a matter of law because an interpretive bulletin issued before section 207(i) of the FLSA was enacted into law lists "Real estate companies" as one of several types of businesses supposedly lacking a retail concept is similarly unconvincing.[32] *See* 29 C.F.R. § 779.317.   First, Plaintiffs fail to provide *any* factual basis for their contention that KB Home is a real estate company.   The DOL defines a real estate agency to mean "one which represents both in-state and out-of-state clients in negotiating the purchase or sale of property within the State in which the broker is located, or negotiates for the purchase or sale of property in other states, or collects or remits rents or other monies for property owners."[33]  In contrast, KB Home's business model differs markedly from typical residential real estate transactions, in which a real estate company assists buyers in touring various individual homes owned by different sellers in determining which house to purchase.[34]

KB Home's Sales Counselors are charged only with selling KB Home's products to customers and, as a result, are not real estate agents.   In fact, KB Home's Sales Counselors in the Houston division are prohibited from having

---

[32] Doc. No. 206, Pls.' Mot. for Summ. J. 11.
[33] Ex. W, Fact Sheet #5: Real Estate and Rental Agencies Under the Fair Labor Standards Act (FLSA).
[34] Ex. V, Gervais Decl., ¶ 29.

active real estate licenses while working for KB Home.[35]   Plaintiffs' own deposition testimony, which highlights a myriad of differences between builders,[36] like KB Home, and real estate companies, only further supports the conclusion that KB Home operates in a separate industry from traditional real estate companies[37] and, consequently,  is not a real estate company.

Second, even if KB Home was a real estate company, which it is not, it would nevertheless qualify as a "retail or service establishment." because, as previously discussed, it satisfies the characteristics of such an establishment.  The fact that section 779.317 of the DOL's *interpretive bulletin* lists "[r]eal estate companies," as lacking a retail concept does not alter this conclusion.[38] The interpretative guidance (as opposed to a regulation promulgated by the DOL) is not entitled to deference in this particular instance.[39]

---

[35] Ex.C, Vinson Dep., 31:23-32:3 (testifying that she did not maintain her real estate license when she went to work for KB Home because"[w]orking for a builder, they prefer you to send it back to the state because it's a conflict of interested, and I never got it reinstated."); Ex. D, Sherrow Dep., 18:1-18:5 ("most new home sales don't want you to be a real estate agent when you're selling for them, so I just let [my real estate license] go."); Ex.E, Spillers Dep., 146:7-146:12 (noting he would like to reactivate his real estate license "and work in real estate again," while adding that he "would consider the possibility, if it was a good company, to work for a builder again.").

[36] *See* Ex. K, Ericsson Dep., 63:10-63:13 (noting that he got into "the new home sales industry after going through the process myself"); Ex. C, Vinson Dep., 28:16-29:1; 30:8-31:2 (recalling that she had little contact with builders when she was working for a real estate company and describing the pluses and minuses of working for a new home builder instead of working as a real estate agent); Ex. O, Garner Dep.,58:16-59:3 (testifying that he did not visit realtors more often because he had "experience in real estate" and "understood that that was—that was a waste of time."); Ex. L, Brailey Dep.,16:4-16:13 (testifying that she stopped keeping her real estate license active after she decided to try new home sales).

[37] *See also* Ex. T, Colorado Division of Labor, Position Letter, p. 1 (July 16, 2007) (concluding that a home builder may be "covered by the provisions of Wage Order 23 as a retail and service entity pursuant to Section 2(A)").

[38] *See Ecolab*, 2008 WL 878456, at *8 (noting that the provisions interpret a repealed statute, have not been updated since 1970, and "do not take into account the very substantive changes to the character of the national retail economy[.]").

[39] *See* 29 C.F.R. 775.1.

There is a long line of authorities refusing to defer to section 779.317 "where there is no discernible rational basis for the Secretary of Labor's determination that a particular type of business lacks a retail concept." *See Rachal v. Allen*, 376 F.2d 999, 1003 (5th Cir. 1967) (noting that "[t]here is no magic in placing a business in a category and then asserting that since it is in that category, it is like all businesses with which it has been placed" and declining to adopt the "blanket determination that the air transportation industry has no retail concept"); *Wells*, 2012 WL 4214712, at *5 (declining to defer to the DOL's list); *Alvarado v. Corporate Cleaning Serv., Inc.*, 719 F. Supp. 2d 935, 945-46 (N.D. Ill. 2010) (declining to defer to section 779.317 where case law did not support DOL's inclusion of building maintenance enterprises on the list and employer satisfied the criteria set forth in section 779.318).

In the instant case, the DOL has provided no guidance or rationale in support of its conclusion that real estate companies should not be able to avail themselves of the retail sales exemption under any circumstances, despite the fact that establishments in other industries, such as cemeteries, coal yards, embalming establishments, farm implement dealers, floor covering stores, furniture stores, public parking lots, and automobile dealers, are allowed to do so. *See* 29 C.F.R. § 779.320. Therefore, in light of the DOL's failure to provide any discernible rational basis for the Secretary of Labor's determination that real estate companies

lack a retail concept, this Court should decline to defer to this interpretative guidance.

**B.**     **Some of KB Home's Sales Counselors Are Highly Compensated.**

Highly compensated employees are exempt from the FLSA's minimum wage and overtime requirements if they satisfy the following requirements: (1) have a total annual compensation of at least $100,000.00; (2) which includes at least $455.00 per week paid on a salary or fee basis; and (3) customarily and regularly perform at least one of the duties of an executive, administrative, or professional employee.  29 C.F.R. § 541.601(a), (b)(1).[40]

An employee is paid on a 'salary basis' within the meaning of the DOL's regulations "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602 (emphasis added).   Further, and subject to certain delineated exceptions, "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."  *Id.* Finally, the DOL's regulations provide:

---

[40] In this context, "[a] high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties."  29 C.F.R. § 541.601(c).

(a) An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis.   Thus, for example, an exempt employee guaranteed at least $455 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales. **An exempt employee also may receive a percentage of the sales or profits of the employer if the employment arrangement also includes a guarantee of at least $455 each week paid on a salary basis**.

29 C.F.R. § 541.604(a) (emphasis added).   Here, summary judgment for Plaintiffs is inappropriate because they failed to prove that they were not compensated on a salary basis.

### 1.    KB Home's Compensation Plan Satisfies the "Salary Basis" Requirement.

KB Home's compensation plan, which involves draws against commission, satisfies the salary basis requirement.   In 2006, the DOL issued an opinion letter addressing whether certain "registered representatives" in the financial services industry who were compensated with a draw plus commission arrangement were paid on a salary basis for purposes of satisfying the minimum salary requirement of the administrative exemption.   Wage & Hour Div. Op. Letter FLSA2006-43, 1, 3 (Nov. 27, 2006) ("FLSA2006-43").   The registered representatives' compensation structure included a guaranteed minimum "salary/draw" that met or exceeded the $455 per week minimum salary requirement, coupled with an added component of

either (i) commissions, (ii) fees, or (iii) some combination thereof. *Id.* at 2. The predetermined amount, "referred to as a salary, a draw, or a minimum payment" was never less than $455 per week and was not subject to reduction because of variations in the quality or quantity of the work performed. *Id.*

Under the commission model, the second component of compensation generated additional compensation above the amount provided by the guaranteed minimum draw or salary. *Id.* This amount was calculated by formula that tracked the transactional fees incurred by the client for securities transactions and could take into account certain adjustments for cancelled trades, trade errors, expenses, and other trading-related losses. *Id.* Those adjustments did not affect the payment of the guaranteed minimum amount of at least $455 per week. *Id.*

Finally, the employer described a "reconciliation process between the salary/draw and fee/commission components" whereby the formula for calculating the commissions could take into account the predetermined minimum amounts paid to a registered representative in the current and/or previous pay periods. *Id.* At no point during his or her employment was the employee asked to repay the salary/draw payments if he or she did not earn commissions or fees. *Id.*

The DOL concluded that because the employment arrangement included a guarantee of at least the required amount paid on a salary basis, the registered representative's compensation structure, as described, met the salary basis

requirements. *Id.* (citing 29 C.F.R. § 541.604(a); *Hogan*, 361 F.3d at 625 (as long as there is a non-deductible minimum, additional compensation on top of the non-deductible salary is permissible); Opinion Letter FLSA2006-24 (July 6, 2006) (stating that cash shortage deductions from additional compensation, as opposed to from the guaranteed salary, are permissible)).  In reaching its conclusion, The DOL emphasized that the reconciliation process between the formula for calculating excess commissions or fees above the guaranteed predetermined minimum amount did **not result in a reduction in the guaranteed predetermined minimum amount paid to the registered representatives**. *Id.* at 7.

In a footnote, the DOL emphasized:

This interpretation of salary basis finds support in a line of Wage and Hour Opinion Letters going back to June 6, 1969. There are other opinion letters, however, that may cause confusion on this point. **They suggest that the requirement that a salary basis payment be made "free and clear" is not satisfied under an offset plan where** (1) commissions and other payments allocated to the particular pay period do not yield at least the guarantee and the employer makes up the deficiency but makes a corresponding reduction in a subsequent pay period of higher earnings (see Opinion Letters of June 2, 1980; February 11, 1980; and March 27, 1969); or (2) the employer adopts an offset method whereby deficits in earned commissions are carried forward or earned commissions are held in reserve (see Opinion Letter of May 4, 1971). **To the extent these four prior opinion letters are inconsistent with the interpretation of "free and clear" payment on a "salary basis" expressed in this opinion letter, they are hereby withdrawn. It is immaterial what specific terms (draw against commission, draw plus extra compensation, offset method) an employer uses when compensating employees**

**on a fee or commission basis.** What matters is that the employee receives no less than the weekly-required amount as a guaranteed salary constituting all or part of total compensation, which amount is not subject to reduction due to the quality or quantity of the work performed, and that the employee is never required to repay any portion of that salary even if the employee fails to earn sufficient commissions or fees. Provided that these requirements are met, the employee will be considered to be paid "on a salary basis" irrespective of any additional sums paid to the employee, such as the amount by which commissions earned for a specific period exceed the total of the weekly guarantee paid for the same period.

*Id.* at n.5 (emphasis added).

Similarly here, KB Home's Sales Counselors are paid "a combination of draw payments and commissions."[41]  KB Home's Sales Counselors are paid commissions as compensation for their efforts, but may also receive a draw on commission in the amount of $2500.00 per month.[42]  KB Home's Sales Counselor Agreement provides for a reconciliation process in which KB Home has the discretion to deduct from any commission paid to the Sales Counselor the then-current outstanding balance of all previously paid advances or draws.[43]  According to the DOL's opinion letter, such a reconciliation process is fine as long as it does not result in a reduction in the guaranteed predetermined minimum amount paid to the Sales Counselors.

---

[41] Ex. A, Schmitt Dep., at 208:9-208:14.
[42] Ex. P, 2009 Sales Counselor Employment Agreement, Addendum A, 4 (Ex. 7 to Schmitt Dep., vol. II).
[43] *Id.*

Plaintiffs have not produced *any* evidence establishing that a particular reconciliation ever resulted in such a reduction of the guaranteed minimum received by KB Home's employees.  Further, Plaintiffs have produced no evidence in support of their assertion that "KB Home salespersons under the KB Home Salesperson Agreement are <u>required, in fact,</u> to repay the guaranteed minimum draw payments in subsequent months without regard to whether or not they earn a commission."[44]  Nor have Plaintiffs offered *any* evidence that KB ever paid Plaintiffs less than $455 a week.  *See Kaiser v. At The Beach, Inc.*, 08-CV-586-TCK-FHM, 2011 WL 6826577, at *14-15 (N.D. Okla. Dec. 28, 2011) (refusing to find that an employer with a threatening payroll deduction policy in place had an actual practice of taking improper deductions absent evidence of at least one actual deduction taken during the relevant time frame).  Accordingly, Plaintiffs have failed to demonstrate that KB Home's compensation plan fails to satisfy the FLSA's "salary basis" requirement.

> **2.  KB Home's Use of Terms Other Than "Salary" When Compensating Employees on a Commission Basis is Immaterial.**

As discussed, in its 2006 opinion letter, the DOL expressly provided that "[i]t is immaterial what specific terms (draw against commission, draw plus extra compensation, offset method) an employer uses when compensating employees on

---

[44] Plts' Mot. for Summ. J., Doc. No. 206, 20.

a fee or commission basis."  FLSA2006-43, 7, n.5.  In fact, the DOL uses the terms "salary/draw" interchangeably throughout the opinion letter.  *See id.*

In her deposition, Deanna Schmitt, KB Home's corporate representative, agreed with Plaintiffs' counsel's assertion that KB Home's Sales Counselors did not receive a salary.[45]  Ms. Schmitt did so immediately after reading a provision in KB Home's sales agreement providing that "Employee understands and agrees that the Sales Representative position is a commission only position, and, as such, Employee shall not be eligible to receive a salary."[46]  Plaintiffs attempt to characterize Ms. Schmitt's agreement as an admission on behalf of KB Home that its Sales Counselors do not receive a salary and now assert that it is "disingenuous for KB Home to rely on any FLSA exemption" requiring satisfaction of the salary basis test.  In doing so, Plaintiffs conveniently fail to acknowledge that Ms. Schmitt *also* testified that KB Home's Sales Counselors "are paid a combination of draw payments and commissions."[47]

### 3.     Plaintiffs' Arguments Do Not Compel a Different Result.

The DOL has expressly noted that "[r]ecovery of salary advances would not affect an employee's exempt status, because it is not a deduction based on variations in the quality and quantity of the work performed."  Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside

---

[45] Ex. M, Schmitt Dep. vol. II, 185:13-186:1.
[46] *Id.*
[47] Ex. A, Schmitt Dep., at 208:9-208:14.

Sales and Computer Employees; Final Rule, 69 Fed. Reg. 22178 (Apr. 23, 2004); *see also In re RBC Dain Rauscher Overtime Litigation*, 703 F. Supp. 2d 910, 925-26 (D. Minn. 2010) (rejecting argument that any salary must be "free and clear" without regard to an employee's productivity and deferring to the DOL's interpretation of its regulations).

Plaintiffs nevertheless posit that a draw is the equivalent of a loan and that a loan is never "free and clear" because it must be repaid.   In reaching this conclusion, Plaintiffs rely on *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1108-10 (S.D. Cal. 2006), a pre-FLSA2006-43 case, in which the court defined the employer's motion for summary judgment after finding that the draw deduction was an impermissible offset.   In *Takacs*, the employees' commission paid was calculated by summing commission credits for completed transactions with commission debits for charges associated with any losses (including certain errors made by the employees).   444 F. Supp. 2d at 1107.[48]   If the commission did not exceed at least $1,150 per month, the employer would then supplement the employees' salary with a "draw" amount.   *Id.*  While the court was apparently fine with the commission "debits" used in calculating the commission paid, it held that

---

[48] Thus, the compensation scheme in *Takacs* was distinguishable from KB Home's compensation scheme in that it allowed for commission debits for charges associated with any losses (including certain errors made by the employees). *Id.* at 1107.

deduction of the employees' draw salary from a subsequent paycheck constituted an impermissible offset.[49] *Id.*

KB Home's compensation system is *not* similar to the compensation system in *Takacs* because KB Home does not allow commission debits for charges associated with losses.[50] Additionally, the court in *Takacs* relied heavily on a 1971 Opinion Letter suggesting that the requirement that a salary basis payment be made free and clear is not satisfied under an offset plan where the employer adopts an offset method whereby deficits in earned commissions are carried forward or earned commissions are held in reserve. *See Takacs*, 444 F. Supp. 2d at 1109-10 (discussing U.S. DOL Op. Letter WH-129, 1971 DOL WH LEXIS 22, at *2 (May 4, 1971). In FLSA 2006-43, however, the DOL expressly withdrew the 1971 opinion letter on which the court in *Takacs* relied to the extent that it was inconsistent with the DOL's interpretation of "free and clear" payment on a "salary basis" in FLSA2006-43.

Plaintiffs also contend that KB Home's compensation plan does not satisfy the salary basis requirement because the draw is "performance-based" such that it can be reduced or eliminated.[51] Plaintiffs cite no applicable legal authority

---

[49] The court discussed *Hogan*, a case distinguishing between repayment of the guaranteed monthly minimum and repayment of "excess negative premiums," and concluded that Hogan "teaches that if a guaranteed monthly minimum was required to be repaid in subsequent months, it would not be free and clear." *Id.* at 1109 (citing *Hogan v. Allstate Ins. Co.*, 210 F. Supp. 2d 1312, 1317 (M.D. Fla. 2002)).
[50] *See generally* Ex. P, 2009 Sales Counselor Employment Agreement, Addendum A.
[51] Plaintiffs primarily rely on *Bowman v. Builder's Cabinet Supply Co.*, another pre-FLSA2006-43 case, in which the court found that an employee's pay was "performance-based" because "her draw was tied directly to the amount

establishing that a draw may never be reduced without jeopardizing an employee's exempt status, particularly where the amount of the draw post-reduction would remain well above $455 per week.  Further, Plaintiffs have not produced *any* evidence of instances in which KB Home actually reduced a Sales Counselors' draw due to poor sales performance.

### C.  Plaintiffs Fail to Prove They Are Not Exempt Administrative Employees.

Congress expressly chose to exempt from the FLSA's overtime requirements any employee who meets the salary basis test and whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers and includes the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200.

Work is "directly related to management or general business operations" if it is "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201.  Such work must be "of substantial importance to the management or operation of the business of his employer or his employer's customers."  29 C.F.R. § 541.205.

---

of sales she made; and due to her poor sales, it was reduced and ultimately eliminated." No. 04-201-DLB, 2006 WL 2460817, at *5 (E.D. Ky. Aug. 23, 2006). Despite Plaintiffs contention that KB Home's Sales Counselors are similarly indebted to KB Home if their poor sales are insufficient to exceed the draw amount, Plaintiffs have failed to produce any evidence demonstrating that a particular Sales Counselor's draw was reduced and ultimately eliminated because of poor performance.

According to the regulations, "work directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . advertising; marketing; research . . . public relations . . . and similar activities." 29 C.F.R. § 541.201(b). "Some of these activities may be performed by employees who would qualify for another exemption." *Id.*

In general, the exercise of discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). "The term 'matters of significance,'" to which that discretion must apply, "refers to the level of importance or consequence of the work performed." *Id.* "An employee need not exercise final decision-making authority to meet this standard." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, No. 14-20253, 2015 WL 1379882, at *5 (5th Cir. Mar. 27, 2015) (citing 29 C.F.R. § 541.202(c); *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000)). "Nevertheless, the exercise of discretion requires 'more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources.' *Id.* (quoting 29 C.F.R. § 541.202(e)).

Plaintiffs fail to acknowledge a multitude of federal cases holding that sales employees may qualify for the FLSA's administrative exemption depending on their particular duties. *See Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 573-

81 (7th Cir. 2012) (holding that pharmaceutical sales representatives were exempt administrative employees); *Smith v. Johnson & Johnson*, 593 F.3d 280, 285 (3d Cir. 2010) (holding senior professional sales representative for pharmaceutical company was exempt was an administrative employee); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 338-39 (4th Cir. 2008) (hold V.P of sales fell within the administrative exemption because of his significant role in both conducting specific sales and shaping the employer's more general marketing strategy); *Cash v. Cycle Craft Co., Inc.*, 508 F.3d 680, 686 (1st Cir. 2007) (holding New Purchase/Customer Relations Manager at a motorcycle store was an exempt administrative employee).

Here, the evidence demonstrates that KB Home's Sales Counselors perform tasks related to KB Home's general business operations requiring the exercise of discretion and independent judgment, including overcoming customers' objections,[52] tailoring their sales presentation to address each customer's specific needs, preferences, and purchasing power,[53] answering prospective buyers'

---

[52] Ex. I, Sliepcevic Dep., 32:5-32:11 ("And no matter what product you have, there will be positives and perceived negatives, and the concept was to find out what the perceived negatives were and -- and try to overcome that with the customer to make it a lower priority than -- than actually wanting to use the product.").

[53] Ex. N, Henderson Dep., 108:15-108:17 (agreeing that he needed to know lots for each type of buyer or each particular buyer); Ex. I, Sliepcevic Dep., 69:6-69:21 (testifying that "[e]very customer's different" and that his use of certain sales techniques depended on the customer's needs); Ex.C, Vinson Dep., 43:3-43:13 (testifying that she had to get to know her customers and learn their wants and needs); Ex. Q, Pouncy Dep., 64:17-64:22 ("And then you're doing your investigation to see what they're looking for in a home, their time frame that they're looking . . . then you're also doing the financing step . . . to see if they're ready to purchase . . . what we call their buying power is."); Ex. B, Mitchell Dep., 87:19-88:13 (would ask the customer about their preferences, decide which home sites were available, pick a floor plan, and discuss various structural options that the customer may want).

questions,[54] working cross-functionally with divisional partners and mortgage company support teams,[55] and following up on loan applications.[56]  Additionally, KB Home's Sales Counselors engage in a variety of marketing activities, which might include creating action plans to drive their own traffic, contacting and following up with realtors and prospects, planning broker luncheons, researching their competitors,[57] and attending broker and realtor events.[58]

Finally, certain Sales Counselors were selected to be Lead Area Sales Representatives in their respective communities and, as such, were "responsible for backlog management with DUP" (Daily Unit Processing")[59] and managing certain aspects of their respective communities.[60]  For example, Plaintiff Winthrop Brown testified that as the "team lead" in his community, he was responsible for addressing customer service issues, providing advice to other Sales Counselors, collecting information on traffic and sales numbers for his community, and training

---

[54] Ex. U, Martinez Dep., 166:16-166:20 (answering customers' questions);

[55] Ex. I, Edwards Dep., 70:8-70:12 ("if we had our mortgage person there, then we'll let them sit down with the mortgage person for a while. If not, we'll kind of go through with them, maybe even conference call the actual mortgage person or the loan officer, kind of talk to them about their loans.").

[56] Ex. I, Edwards Dep., 83:18-83:22 (describing follow-up efforts).

[57] Ex. I, Edwards Dep., 81:10-81:13 (researching prices offered by competitors).

[58] Ex. H, Winthrop Brown Dep., 88:7-88:17 (discussing his action plan, which involved calling his old customers and "old action B-backs"); Ex. Q, Pouncy Dep., 54:21-54:24; ("I have to call realtors, I have to call prospects to try to get people in the door to do a contract."); Ex. N, Henderson Dep., 90:2-90:4 (understood his job duties to include planning broker luncheons and events); Ex. U, Martinez Dep., 76:16-76:24, 79:18-80:13 (describing various broker events  he attended).

[59] See Ex. R, Sales Leadership "Remember the Titans" (Caddell Dep. Ex. 19) (providing  that "As the select few, you have the initiative and have earned the empowerment of more responsibility" and identifying certain Plaintiffs as "LASRs" in their communities).

[60] Ex. S, Caddell Dep., 268:1-268:17 (LASRs "knew their communities" and would know "what traffic they had, how many realtor offices they went to visit; how many schools they went to visit to the teacher's lounge, they'd drop off balloons, cookies; whatever they had to do to generate centers of influence.").

new Sales Counselors.[61]   Thus, in light of Plaintiffs' failure to produce any evidence demonstrating that specific Sales Counselors cannot qualify for the FLSA's administrative exemption, this Court should reject Plaintiffs' conclusory assertion that KB Home's Sales Counselors are not exempt administrative employees simply because their primary job duty is sales.

## V.    CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that this Court deny *Plaintiffs' Motion for Summary Judgment With Respect to the Retail Sales Exemption, Highly Compensated Exemption and Administrative Exemption* (Doc. No. 206).

---

[61] Ex. H, Winthrop Brown Dep., 78:13-79:13.

Respectfully submitted,

Of Counsel:

Jennifer A. Youpa
Texas Bar No. 01383400
Fed. ID No. 19932
Kimberly Rives Miers
Texas Bar No. 24041482
Fed. ID No. 674452
LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX 75201
214.880.8100 (Telephone)
214.880.0181 (Facsimile)
jyoupa@littler.com
kmiers@littler.com

Kevin Little
Texas Bar No. 24070155
Fed. ID No. 1138412
LITTLER MENDELSON, P.C.
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
klittle@littler.com

/s/ Kimberly Rives Miers
David B. Jordan
Texas Bar No. 24032603
Fed. ID No. 40416
LITTLER MENDELSON, P.C.
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
djordan@littler.com


ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

On August 24, 2015, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case files system of the Court.  I certify I have served all counsel of record electronically.

/s/   Kimberly Rives Miers
Counsel for Defendants