IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KIP EDWARDS, ET AL., on behalf of themselves and all others similarly situated, | § § § | Civil Action No.  3:11-cv-240 |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | COLLECTIVE ACTION |
| KB HOME, ET AL., | § | (JURY TRIAL) |
| Defendants. | § | |
| | § | |

---

**PLAINTIFFS' <u>REPLY</u> TO DEFENDANTS' RESPONSE
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
WITH RESPECT TO THE RETAIL SALES EXEMPTION, HIGHLY
COMPENSATED EXEMPTION AND ADMINISTRATIVE EXEMPTION**

---

Rhonda H. Wills
ATTORNEY-IN-CHARGE
WILLS LAW FIRM, PLLC
1776 Yorktown, Suite 570
Houston, Texas 77056
Telephone: (713) 528-4455
Facsimile: (713) 528-2047

John M. Padilla
PADILLA & RODRIQUEZ, L.L.P.
5433 Westheimer, Suite 825
Houston, Texas 77056
Telephone: (713) 574-4600
Facsimile: (713) 574-4601

Dated: September 15, 2015

# TABLE OF CONTENTS

I.   ARGUMENT AND AUTHORITIES .................................................................1

  A.  KB Home Cannot Meet its Burden on the Retail Sales Exemption Because It
      Is Not A Retail Establishment...........................................................................1

    1.  KB Home's model home sales office is not a separate establishment..........1

      a.  KB Home requires a significant interchange of employees between the
          sales office and the rest of the community.................................................2

      b.  The model home sales office is not physically separate from KB Home's
          business activities. .....................................................................................5

      c.  The sales office is not a functionally separate unit. ...................................7

    2.  KB Home is not a retail establishment under the FLSA because KB Home
        lacks a retail concept. .................................................................................9

      a.  KB Home's reliance on *English v. Ecolab, Inc.* is misplaced. .................9

      b.  KB Home is a Real Estate Company that lacks a retail concept. ............11

  B.  The Highly Compensated and Administrative Exemptions Are Inapplicable to
      Plaintiffs Because KB Home Does Not Meet the Salary Basis Test..............14

    1.  KB Home Admitted That It Does Not Pay Salespersons a Salary. ............15

    2.  KB Home Does Not Satisfy the Salary Basis Test Because Salespersons'
        Draws Are      Not "Free and Clear."...........................................................15

    3.  KB Home Fails the Salary Basis Test Because the Draw is Performance-
        Based..........................................................................................................17

  C.  The Administrative Exemption Does Not Apply to Salespersons..................19

II.  CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Bowman v. Builder's Cabinet Supply Co.,*
  2006 WL 2460817 (E.D. Ky. Aug. 23, 2006) ......................................................19

*Brennan v. Great Am. Discount & Credit Co., Inc.,*
  477 F.2d 292 (5th Cir. 1973) ...........................................................................9, 10

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
  467 U.S. 837, 104 S. Ct. 2778, 81 L.Ed.2d 694 (1984) ........................................12

*Collins v. Horizon Training Centers, L.P.,*
  2003 WL 22388448 (N. D. Tex. Sept. 30, 2003) ................................................. 13

*Davidson v. Orange Lake Country Club, Inc.,*
  2008 WL 254136 (M. D. Fla. Jan. 29, 2008) ......................................................11

*English v. Ecolab, Inc.,*
  2008 WL 878456 (S.D.N.Y. Mar. 31, 2008).......................................................9, 10

*Ford v. Houston Independent School Dist.,*
  2015 WL 1246780 (S. D. Tex. Mar. 18, 2015) .....................................................12

*Gilreath v. Daniel Funeral Home, Inc.,*
  421 F.2d 504 (8th Cir. 1970) ...............................................................................2

*Liger v. New Orleans Hornets NBA Ltd. P'ship,*
  565 F. Supp. 2d 680 (E.D. La. 2008)......................................................... 1, 8, 13

*Luther v. Z. Wilson, Inc.,*
  528 F. Supp. 1166 (S. D. Ohio 1981) ..................................................................13

*Marshall v. Sundial Assocs., Ltd.,*
  588 F.2d 120 (5th Cir. 1979) .............................................................................2, 7

*Martin v. Refrigeration School, Inc.,*
  968 F.2d 3(9th Cir. 1992) ..................................................................................1, 8

*Montalvo v. Tower Life Bldg.,*
  426 F.2d 1135 (5th Cir. 1970) ............................................................................5, 7

*Parker v. ABC Debt Relief, Ltd.,*
  2013 WL 371573 (N. D. Tex. Jan. 28, 2013) ............................................... 10, 13

*Reich v. Delcorp*,
  3 F.3d 1181 (8th Cir. 1993) ....................................................................................1

*Russel v. Promove, LLC*,
  2009 WL 1285885 (N.D. Ga. May 5, 2009).........................................................11

*Takacs v. A.G. Edwards & Sons, Inc.*,
   444 F. Supp. 2d 1100 (S.D. Cal. 2006)................................................................16

*Wells v. Taxmasters, Inc.*,
  2012 WL 4214712 (S. D. Tex. Sept. 18, 2012)....................................................13

*Williams v. Trendwest Resorts, Inc.*,
  2007 WL 2429149 (D. Nev. Aug. 20, 2007)……........................................ 1, 9, 11

*Wirtz v. Savannah Bank & Trust Co. of Savannah*,
  362 F.2d 857 (5th Cir. 1966) ..............................................................................5, 6

*Zannikos v. Oil Inspections (U.S.A), Inc.*,
  2015 WL 1379882 (5th Cir. Mar. 27, 2015)………………………………………19

## Rules

29 C.F.R. § 531.35 ................................................................................................15

29 C.F.R. § 541.201(a)..........................................................................................19

29 C.F.R. § 541.700(a)..........................................................................................19

29 C.F.R. § 779.303 ................................................................................................2

29 C.F.R. § 779.305 ................................................................................................2

29 C.F.R. § 779.312 ....................................................................................8

29 C.F.R. § 779.314 ..................................................................................10

29 C.F.R. § 779.315 ..................................................................................10

29 C.F.R. § 779.317 ..................................................................... 10, 11, 12, 13

29 C.F.R. § 779.318 ..................................................................... 13, 14

**Department of Labor Opinion Letter**

FLSA 2006-33.............................................................................................12

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs, on behalf of themselves and all others similarly situated, (collectively, "Plaintiffs") respectfully file this Reply:

## I.     ARGUMENT AND AUTHORITIES

### A.     KB Home Cannot Meet its Burden on the Retail Sales Exemption Because It Is Not A Retail Establishment.

Contrary to Defendants' assertions, KB Home does not meet the requirements of the retail sales exemption because it is not a FLSA "retail establishment."

#### 1.     KB Home's model home sales office is not a separate establishment.

District courts across the country, including courts within the Fifth Circuit, have been consistent in reasoning that an employer cannot be classified as a retail or service establishment within the meaning of the FLSA if it produces or makes the product it sells.[1]   Nonetheless, KB Home seeks to avoid this general rule of law through its illogical contention that the KB Home sales office is a separate and independent unit, unassociated with the rest of KB Home's business.   KB Home's attempt at partitioning its business into separate parts is a disingenuous effort to fit within the retail exemption and illogically claim that "KB Home is not a manufacturer."[2]   In other words, KB Home is attempting to disingenuously argue

---

[1] *See Liger v. New Orleans Hornets NBA Ltd. P'ship*, 565 F. Supp. 2d 680 (E.D. La. 2008); *see also Martin v. Refrigeration School, Inc.*, 968 F.2d 3, 9 (9th Cir. 1992); *Williams v. Trendwest Resorts, Inc.*, 2007 WL 2429149, *7 (D. Nev. Aug. 20, 2007) (citing *Reich v. Delcorp*, 3 F.3d 1181, 1183-1184 (8th Cir. 1993)).

[2] Doc. 223 at pg. 18.

that its sales operations are completely separate from the manufacturing of the homes that are sold.

A subsection of an enterprise can only be deemed a separate establishment if three criteria are met by the employer: (a) there is no interchange of employees between the purported separate establishments; (b) each subsection is physically separated from the employer's other activities; and (c) the unit in question is functionally operated as a separate unit having separate records and bookkeeping. 29 C.F.R. § 779.305; *see also Gilreath v. Daniel Funeral Home, Inc.*, 421 F.2d 504, 510 (8th Cir. 1970); *Marshall v. Sundial Assocs., Ltd.*, 588 F.2d 120 (5th Cir. 1979). The employer must satisfy ***each*** criterion in order to qualify as separate establishments. *Gilreath*, 421 F.2d at 510. KB Home cannot establish any of these criteria.

### a.   KB Home requires a significant interchange of employees between the sales office and the rest of the community.

In support of its argument that the KB Home sales office is an independent unit unassociated with the rest of KB Home's business operations, KB Home quotes and relies heavily on 29 C.F.R. § 779.303 which defines the term "establishment" as a distinct physical place of business.  However, KB Home conveniently ignores a proximate regulation which explains that in order for a subsection of a business to qualify as a separate establishment there can be "no interchange of employees" between the purported separate establishments. 29 C.F.R. § 779.305.

2

For example, in *Gilreath*, the court explained that an interchange of employees can even be found between two completely different businesses. *Id.* The court rejected the employer's argument that its funeral home business should qualify as a separate and distinct unit from a neighboring insurance company because the two companies were operated by the same board of directors, and some funeral home employees also performed work for the insurance company. *Id.* Therefore, the funeral home business and the insurance company constituted only one establishment. *Id.*

Here, the undisputed evidence shows significant interchange of employees between the KB Home employees who work within the KB Home communities, particularly salespersons and construction personnel.  In fact, KB Home trains its salespersons and construction superintendents to act as a part of *one* team through a training course entitled "Community Teams" on KB Home University, an online training portal.[3] At KB Home, sales counselors and construction superintendents are taught to work as a "*cross-functional team* that is responsible for managing a specific community."[4] As one cross-functional unit, the Community Team is directed to "meet weekly to discuss every homebuyer in backlog and construction

---

[3] Each of the Named Plaintiffs as well as an overwhelming majority of the Houston opt-in Plaintiffs completed the same "Community Teams Certification" training module.  *See* Ex. 10, Compilation of the Houston Subclass' KB University Training Transcripts with "Community Teams Certification"; Ex. 9, Community Teams Training Packet.
[4] Ex. 9, Community Teams Training Packet, pgs. 3, 7.

starts on the horizon."[5]  The weekly meetings between construction personnel and the salespersons take place inside the model home.[6]  Plaintiffs are required to obtain updates from construction employees constantly, so that salespersons can report updates to the buyers.[7] As part of their job as salespersons, Plaintiffs routinely are required to provide services directly relating to KB Home's construction process.[8] This significant interchange of employees demonstrates that the model home sales office is not a distinct establishment. Instead, Plaintiffs act as middle men between buyers and construction personnel during the construction of the home, working regularly and directly with construction superintendents to ensure that each KB Home buyer experiences a smooth transition between signing a contract, constructing the new home, and moving into the new home. KB Home operates its business as *one* unit, ensuring that its team of employees—including sales and

---

[5] Ex. 9, Community Teams Training Packet, pg. 4.

[6] Ex. 3, Deposition of Mark Heidmann, p. 221, ll. 7-11 (Q: And then the community meetings were held at one of the on-site sales offices with the on-site sales counselor, the construction manager, and possibly a customer service person?  A: Correct.).

[7] Ex. 1, Deposition of Lacy Vinson, p. 60, l. 23 – p. 61, l. 4. (Q: What were your contacts with the construction staff? A: We had weekly meetings with them, and then we kept in very close contact with them.); *see also* Ex. 2, Deposition of Michelle Brailey, p. 93, ll. 3-6. (explaining that she conversed with construction over the phone, during weekly follow-up meetings, and when "they stopped by the office.")

[8] *See* Ex. 3, Heidmann Dep., p. 374 ll. 5-9 ("[It] doesn't matter if you're in construction, doesn't matter if you're in sales or any other department, let's – let's first work as a team."); *See also* Ex. 4, Deposition of Kyle Davison, p. 89 l. 15 – p. 90, l. 6 (Q: And what was the purpose of those meetings?  A: Primarily to go through the backlog, make buyer phone calls as a community team, update every buyer on the progress of their home. And – and primarily the purpose of that was to do two things: No. 1, community as a team where we are with every buyer, every home every week, and also to convey to the – the prospective buyer, the homeowner, where they were and develop a relationship and rapport to keep them posted on the home construction process.).

construction—works in unison to advance KB Home's business purpose of building and selling new homes.

### b. The model home sales office is not physically separate from KB Home's business activities.

KB Home argues that each model home sales office constitutes a distinct physical place of business merely because the sales office "is located in a trailer or in a room of one of the model homes in the community."[9] This contention oversimplifies the issue and contradicts Fifth Circuit precedent.

In *Montalvo*, the Fifth Circuit considered whether an office building that was owned by a life insurance company that was located in the building and operated as a division of the insurer's business constituted a distinct physical establishment for purposes of the Fair Labor Standards Act. *Montalvo v. Tower Life Bldg.*, 426 F.2d 1135, 1144-45 (5th Cir. 1970). The Court rejected defendants' argument that the businesses constituted two separate establishments, one composed of insurance office employees and another composed of building employees. *Id.* at 1144. In reaching this conclusion, the Court relied on its previous holding in *Wirtz*, a similar case involving employees of a building which was owned and operated by the defendant, a bank. *Id.* (citing *Wirtz v. Savannah Bank & Trust Co. of Savannah*, 362 F.2d 857, 858 (5th Cir. 1966)).  Although the employees in *Wirtz* worked only within

---

[9] Doc. 223 at pg. 21.

the bank building's rental office space, the Fifth Circuit rejected the bank's argument that the rental space was a "distinct physical place of business," separate from the bank's office space. *Wirtz*, 362 F.2d at 864. The court further explained:

> The operation of the office building cannot be divorced from that of the Bank, as contended by the appellee. . . . Thus, the revenue-producing capacity of the office space in the Bank building is necessary to enable the Bank to occupy its present location. In addition to providing space for future expansion, the building stands as a symbol in the public mind of the stability and the position of the Bank in the community.

*Id.* at 860.

The Fifth Circuit Court of Appeals found the fifteen story office building, occupied by numerous separate businesses, to qualify as **one physically distinct establishment** simply because the building was owned by one common owner. *Id.* Certainly here, KB Home's model home sales office cannot be divorced from the model home itself or from the community of homes that is built by KB Home and sold by Plaintiffs.[10]  As Mark Heidmann, Director of Sales for the Houston division, confirms, the sales office serves as a central assembly point within the KB Home community and is regularly utilized by both construction employees and salespersons.[11]  Heidmann describes the utility of this central assembly space explaining that community team meetings were "typically in the model because we

---

[10] Ex. 9, Community Teams Training Packet, pg. 7 (identifying sales counselors, construction superintendents, and construction assistant superintendents as members of the Community Team).

[11] Ex. 3, Heidmann Dep., p. 221, ll. 7-11 (Q: And then the community meetings were held at one of the on-site sales offices with the on-site sales counselor, the construction manager, and possibly a customer service person?  A: Correct.).

really didn't want that meeting being disrupted."[12] Senior Vice President, Renee Gervais, further clarifies that the model home sales office is also independently used by construction personnel, the very component of KB Home's business that KB Home disingenuously attempts to separate from salespersons.[13]  Plaintiffs work side by side with construction personnel in this same physical location to accomplish KB Home's goal of selling new homes.[14]

### c.    The sales office is not a functionally separate unit.

As the Fifth Circuit explained in *Montalvo*, "The concept of functional unity is normally invoked to show that two or more places of business which are physically separated should be considered a ***single*** establishment." *Montalvo*, 426 F.2d at 1135. Similarly in *Sundial*, the units in question were found to be "completely physically intertwined." *Marshall v. Sundial Assocs., Ltd.*, 588 F.2d 120, 123 (5th Cir. 1979). As a result, the units were deemed a single establishment despite the fact that they "maintained separate business identities, books, and payrolls" because these factors "only become significant once the employer has shown that a distinct physical establishment exists." *Id.*

---

[12] Ex. 3, Heidmann Dep., p. 222, ll. 3-5.
[13] Ex. 5, Deposition of Renee Gervais, p. 120, l. 14 – p. 121, l. 2 (Q: What's the preconstruction meeting?  A: So the superintendent will sit down with the buyer … Q: And where does this preconstruction meeting take place?  A: It can take place onsite; it can take place in one of the model homes; it can take place in the sales office.)
[14] Ex. 9, Community Teams Training Packet, pg. 3 ("A Community Team is a **cross-functional team** that is responsible for managing a specific community.")

Even if KB Home could establish that the model home sales office is a physically separate establishment from the rest of the business, which it is not, the sales office is clearly not functionally separate. Rather, in every aspect of the operation, the sales office is inextricably intertwined with the rest of KB Home's business. This fact is evidenced by KB Home's unified record keeping system, by which salespersons are required to input construction updates and notes relating to the status of the construction of new homes into KB Home's corporate computer system on a weekly basis.[15] Senior Vice President, Renee Gervais, noted that KB Home maintains a unified record keeping, explaining that "typically the CPR log is filled out during the community team meeting, which occurs in one of the models and they'll do it jointly with construction."[16]

Because the model home sales office is inextricably intertwined with the rest of the KB Home business, including construction of its new homes, Defendants' disingenuous contention that "KB Home is not a manufacturer"[17] fails as a matter of law. An employer cannot qualify as an exempt retail sales establishment unless the employer exists at the very end of the stream of commerce.[18] KB Home makes the

---

[15] Ex. 7, Deposition of Deanna Schmitt, Vol. II, p. 138, l. 21 – p. 139, l. 15 (explaining that salespersons were required to complete backlog calls, in which salespersons would contact customers to provide construction updates on a weekly basis, then input that data into the KB Home system).

[16] Ex. 5, Gervais Dep., p. 217, ll. 1-8. *See also* Ex. 3, Heidmann Dep., p. 217, ll. 1-13 ("In Houston, though, we used more of communication logs that were, you know, done at the community team meeting … our calls there were done with sales and construction, you know, in the same – at the same time[.]").

[17] Doc. 223 at pg. 18.

[18] *See* 29 C.F.R. § 779.312; *see also Liger v. New Orleans Hornets NBA Ltd. P'ship*, 565 F. Supp.2d 680 (E.D. La. 2008) (holding that a basketball team was not a retail establishment because it was in the business of both producing and selling entertainment and did not exist solely "at the very end of the stream of commerce"); *Martin v. Refrigeration*

product it sells—new homes. Therefore, KB Home does not exist at the very end of the stream of commerce, a prerequisite for the Section 207(i) exemption. KB Home cannot avoid this general principle through its illogical attempt to separate its sale of new homes from its construction of the homes. Therefore, Defendants' insincere assertion that "KB Home is not a manufacturer" fails as a matter of law, and the retail sales exemption is inapplicable.

### 2.  KB Home is not a retail establishment under the FLSA because KB Home lacks a retail concept.

This Circuit has referred to the "retail concept" prong as the threshold test that a business must meet before considering the second prong concerning industry characterizations. *See Brennan v. Great Am. Discount & Credit Co. Inc.*, 477 F.2d 292 (5th Cir. 1973).  Contrary to KB Home's assertions, KB Home does not possess a retail concept.

### a.  KB Home's reliance on *English v. Ecolab, Inc.* is misplaced.

KB Home opens its response with a misguided reliance on *English v. Ecolab, Inc.*, 2008 WL 878456, at *2 (S.D.N.Y. Mar. 31, 2008)[19] in support of its argument that this Court should ignore the long-recognized purpose of the retail sales

---

*School, Inc.*, 968 F.2d 3, 9 (9th Cir. 1992) (holding that a refrigerator repair school encompassed the "manufacturing" and not the "retail" concept); *Williams v. Trendwest Resorts, Inc.*, 2007 WL 2429149, at *7 (D. Nev. Aug. 20, 2007) (timeshare business could not be a retailer because it develops the product it sells).

[19] Doc. 223 at pg. 15.

exemption, which is meant to apply to traditional local retail establishments that serve the everyday needs of the community.[20]

In *Ecolab*, the Southern District of New York chose to abandon this conventional purpose in favor of a new approach. The New York district court determined that the policy justification for the retail sales exemption has "more to do with the employee's compensation than with the exact nature of the goods or services sold." *English*, 2008 WL 878456, at *4.

KB Home's reliance on *Ecolab* as support for this Court to abandon the conventional purpose of the retail sales exemption is entirely misplaced. As the Northern District of Texas recently explained in *Parker v. ABC Debt Relief, Ltd.,* courts within the Fifth Circuit "consistently rely on the expertise of the Department of Labor, which has promulgated an extensive series of regulations and interpretive rules that accompany [section 207(i) of the FLSA]."[21] 2013 WL 371573, at *9 (N. D. Tex. Jan. 28, 2013). The Northern District of Texas district court explained that, "The Department of Labor's regulations consistently emphasize that the [retail sales] exemption is meant to apply to *'traditional' local retail establishments*,"[22] which supply products in small quantities at relatively modest costs—products that satisfy "the everyday needs of the community."[23] KB Home is neither a local establishment

---

[20] *See Parker v. ABC Debt Relief, Ltd.,* 2013 WL 371573, at *9 (N. D. Tex. Jan. 28, 2013).
[21] *Id.* (quoting *Brennan v. Great Am. Discount & Credit Co., Inc.*, 477 F.2d 292, 296 (5th Cir. 1973)).
[22] *Id.* (emphasis added) (citing 29 CFR §§ 779.314, 779.315, and 779.317).
[23] *Id.* at *9-10

nor does is serve the everyday needs of the community.  In fact, the *Parker* court expressly rejected the defendants' synonymous reliance on *Ecolab*, noting that the case is "not binding in this jurisdiction." [24]  As a matter of law, the salespersons in *Parker* were not exempt from overtime pay under the retail sales exemption because defendants' business was "similar to other establishments that lack a 'retail concept,'" as listed in 29 C.F.R. § 779.317.[25]  Like *Parker*, this Court should decline to follow *English v. Ecolab, Inc.* and instead follow Fifth Circuit precedent which has consistently relied on the Department of Labor's series of regulations and interpretive rules that accompany section 207(i).

### b. KB Home is a Real Estate Company that lacks a retail concept.

As Plaintiffs have previously explained, "***Real Estate Companies***" are listed in the Regulations as establishments that lack a retail concept.  *See* 29 C.F.R. § 779.317. District courts across the country adhere to 29 C.F.R. § 779.317's definition and have consistently held that real estate companies, and even companies that merely conduct business in a manner *similar* to a real estate company, lack a retail concept.[26] In an attempt to avoid 29 C.F.R. § 779.317, KB Home disingenuously argues that it is not a real estate company despite the fact that it sells

---

[24] *Id.* at *10, n. 10.

[25] *Id.* at *10 (citing 29 C.F.R. § 779.317).

[26] *See Williams v. Trendwest Resorts, Inc.*, 2007 WL 2429149, at *7 (D. Nev. Aug. 20, 2007); *see also Russel v. Promove, LLC*, 2009 WL 1285885, at *5 (N.D. Ga. May 5, 2009); *Davidson v. Orange Lake Country Club, Inc.*, 2008 WL 254136, at *6 (M. D. Fla. Jan. 29, 2008).

11

new homes and transfers title to the property on which the new home sits.  [Doc. 223 at 18]. It is indisputable that KB Home is a builder that sells interests in real estate— new homes. In fact, Kyle Davison, KB Home's Regional General Manager over the Houston area, referred to the sale of KB Homes as "real estate transactions."[27]

The U.S. Department of Labor has stated that "the section 7(i) exemption is an establishment-based exemption, and is based upon the nature of the employer's business rather than on the work actually performed by the employees of the establishment."  FLSA 2006-33.  The nature of KB Home's business is clearly within the real estate industry. Moreover, in building and selling new homes, KB Home is transferring an interest in real estate.

In arguing that it is not a real estate company, KB Home cites to cases—some within the Fifth Circuit—that have chosen not to follow 29 C.F.R. § 779.317 in deciding whether or not an employer lacks a retail concept.  While it is true that on rare occasions some courts will decline to follow regulations such as 29 C.F.R. § 779.317, the Fifth Circuit has held that, "the regulations and the clarifications of regulations by the DOL ___are entitled to deference___ unless they are unreasonable."[28] District courts within the Fifth Circuit have agreed with this proposition, and have looked directly to 29 C.F.R. § 779.317 for guidance when deciding if an employer

---

[27] Ex. 4, Davison Depo., p. 147, l. 19 – p. 148, l. 11.

[28] *Ford v. Houston Indep. Sch. Dist.*, 2015 WL 1246780, at *6 (S.D. Tex. Mar. 18, 2015) (emphasis added) (*citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-42. 104 S. Ct. 2778, 81 L.Ed.2d 694 (1984)).

lacks a retail concept.[29]  Moreover, where the Fifth Circuit has chosen not to solely

rely on the list in 29 C.F.R. § 779.317, it will look to the requirements in 29 C.F.R.

§ 779.318, instead, for guidance.  *See Wells v. Taxmasters, Inc.*, No. 4:10-CV-2373,

2012 WL 4214712, at n.5 (S.D. Tex. Sept. 18, 2012).  Entitled "Characteristics and

Examples of Retail or Service Establishments," 29 C.F.R. § 779.318 provides a

template of how a typical retail or service establishment operates and what it

provides to the community it serves:

> Typically a retail or service establishment is one which sells goods or services
> to the general public. It serves the everyday needs of the community in which
> it is located. The retail or service establishment performs a function in the
> business organization of the Nation which is at the very end of the stream of
> distribution, disposing in small quantities of the products and skills of such
> organization and *does not take part in the manufacturing process…*

Like 29 C.F.R. § 779.317, real estate companies have been also found to lack

a retail concept under Section 779.318.  For example, in *Luther*, the employer argued

it was a retail or service establishment, and therefore, was absolved from paying

overtime wages under the FLSA.  *Luther v. Z. Wilson, Inc.*, 528 F. Supp. 1166, 1172

(S. D. Ohio 1981).  The employer acted as a broker for real estate and negotiated

sales of property.  *Id.* at 1168.  The court agreed with the Regulation in holding that

---

[29] *See Parker v. ABD Debt Relief, LTD. Co.*, 2013 WL 371573, at *10 (N. D. Tex. Jan. 28, 2013) (looking to the regulation in determining whether employer's business was similar to establishments that lack a retail concept); *see also Collins v. Horizon Training Centers, L.P.*, 2003 WL 22388448, at *5 (N.D. Tex. Sept. 30, 2003) (looking to 29 C.F.R. § 779.317 in deciding whether employer lacked a retail concept); *see also Liger v. New Orleans Hornets NBA Ltd. P'ship*, 565 F. Supp. 2d 680, 688 (E. D. La. 2008) (looking through 29 C.F.R. § 779.317 to see if it mentions professional sports teams as establishments that lack a retail concept).

**_there is no retail concept in the real estate industry._** *Id.* at 1173 (emphasis added). The *Luther* court further held that, "[p]urchasing a home or other property is not part of the 'everyday needs of the community,' but is a major investment occurring infrequently in the lives of most people." *Id.* (*citing* 29 C.F.R. § 779.318). In citing 29 C.F.R. § 779.318, the court in *Luther* listed examples of traditional retail establishments "such as grocery stores, hardware stores, and clothing stores" that supply products in small quantities at relatively modest costs—products that satisfy "the recurrent needs of the community." *Id.* Because "defendant's business partakes in none of these elements of the retail concept," the employee was therefore not exempt as an employee of a retail or service establishment. *Id.*

**B.     The Highly Compensated and Administrative Exemptions Are Inapplicable to Plaintiffs Because KB Home Does Not Meet the Salary Basis Test.**

The highly compensated and administrative exemptions require satisfaction of the salary basis test. Plaintiffs were not paid on a salary basis, and accordingly, Plaintiffs are not exempt employees under the highly compensated exemption and/or administrative exemption.

### 1.   KB Home Admitted That It Does Not Pay Salespersons a Salary.

KB Home has admitted that its salespersons do not receive a salary.[30]  Based on the testimony of KB Home's corporate representative and the KB Home sales agreement—which expressly renders salespersons ineligible to receive a salary[31]—it is disingenuous for KB Home to rely on any FLSA exemption, including the administrative and highly compensated exemptions, which requires satisfaction of the salary basis test.

### 2.   KB Home Does Not Satisfy the Salary Basis Test Because Salespersons' Draws Are Not "Free and Clear."

Essentially, a KB Home Salesperson's draw is a "loan" that must be repaid to KB Home.[32]  Moreover, payment of the draw is subject to KB Home's sole discretion, and may be reduced or completely eliminated.[33] The draw, therefore, is not "free and clear," because "wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally." 29 C.F.R. § 531.35.  Moreover, because the draw must be repaid,

---

[30] Ex. 7, Schmitt Depo., Vol. II, p. 10, ll. 9 – 25. (Q: Okay. If I could direct your attention to the next page, please, of Exhibit 7. Under "Starting Salary" – do you see that? It's the first full paragraph of the page that's Bates-labeled KB-000016. A: Yes. Q: It says, "Employee understands and agrees that the Sales Representative position is a commission only position, and as such, Employee shall not be eligible to receive a salary." Did I read that correctly? A: Yes. Q: You would agree that the salespersons did not receive a salary; correct? A: Yes.).

[31] Ex. 11, KB Home Salesperson Employment Agreement [KB-P000016].

[32] Ex. 7, Schmitt Depo., Vol. II, p. 46, ll. 13-17 ("Q: Isn't it true, though, that the draw is basically a loan that has to be repaid? A: It's an advance against commissions. Q: And it has to be repaid; correct? A: Correct.").

[33] Ex. 11, KB Home Salesperson Employment Agreement, [KB-P000004] ("Advances or draws are a privilege, not a condition of employment, and represent an advance on commission to be earned in the future which constitute a loan to be repaid out of future commissions and/or when Employee's employment with the Company is terminated as provided below.").

the draw is an impermissible offset against the salespersons' compensation, which violates the salary basis test. *See Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1110 (S.D. Cal. 2006).

Addendum A to the Salesperson Employment Agreement further states, "[t]he company **will** reduce Employee's draws if Employee's outstanding draw balance exceeds the lesser of either 50% of all commissions in backlog or $10,000.00."[34] If the salespersons fail to earn sufficient commissions in a particular month to cover the monthly draw, the deficit would be carried forward and deducted from subsequent months.

This payment system is analogous to *Takacs v. A.G. Edwards & Sons, Inc.*, in which the court found that a draw deduction is an "impermissible offset" taken from the plaintiff's guaranteed salary. 444 F. Supp. 2d 1100, 1100 (S.D. Cal. 2006). In that case, if the plaintiffs did not earn above $1,150 per month in commissions, the defendant would supplement the plaintiffs' commissions with the draw amount. *Id.* at 1108. Then, the difference between monthly commissions and the draw was later deducted from the plaintiffs' subsequent paychecks. *Id.* The court found the draw deduction was an impermissible offset to the plaintiffs' guaranteed salary, not a variable in the calculation of commissions paid. *Id.* at 1110. Thus, the defendant was unable to meet its burden of proving its draw

---

[34] Ex. 11, Addendum A to the Salesperson Employment Agreement [KB-P000016].

compensation system came within the salary basis test of the administrative exemption, and the court denied the defendant's motion for summary judgment. *Id.*

Similar to the plaintiffs in *Takacs* who received a draw that would be deducted from commissions in later months, KB Home salespersons are paid commissions net of advances semi-monthly in the subsequent months.[35] Following the reasoning of the court in *Takacs*, the draw deduction from subsequent paychecks is an impermissible offset to each Plaintiffs' pay. Because KB Home cannot prove that the draw arrangement component of each Plaintiffs' pay comes within the salary basis test, KB Home is unable to meet the burden of proving that the Plaintiffs come within the highly compensated employee or administrative exemption.

### 3. KB Home Fails the Salary Basis Test Because the Draw is Performance-Based.

Contrary to KB Home's assertions, Plaintiffs' ability to sell homes, *i.e.* Plaintiffs' performance, is directly linked to their ability to continue receiving the KB Home recoverable draw. Pursuant to Addendum A to the KB Home Salesperson Employment Agreement, KB Home may reduce a salesperson's draw at any time if the salesperson is unable to sell homes.[36] KB Home boldly states

---

[35] *See* Ex. 11, KB Home Salesperson Employment Agreement [KB-P000004] (stating that "commissions earned between the first and last day of each calendar month shall be paid, net of advances as hereinafter set forth, on the 15th day of the following calendar month.").

[36] Ex. 11, KB Home Salesperson Employment Agreement [KB-P000016].

that "Plaintiffs have not produced *any* evidence of instances in which KB Home actually reduced a Sales Counselors' draw due to poor sales performance."[37] However, Ex. 12, an email chain between Vicki Dooly, Human Resources/Office Manager for the Houston Division, and Shannon A. Mazzie, Director of Human Resources, evidences that salespersons draws were reduced due to poor sales performance.  In the email, Ms. Dooly states:

> Shannon, I'd like to reduce draw payments from $1,250 to $625 (half of usual, but still over minimum wage of $6.55/hr) on the following employees due to their excessive draw balances.
>
> - Amoo, Thomas - $15,950 draw balance (has $14,000 in BL)
> - Abrego, Juan - $11,054 draw balance (has $10,800 in BL)
> - Holmes, Nakia - $12,150 draw balance (has $7,600 in BL)
> - Jones, Alicia - $14,125 draw balance (has $5,000 in BL)
> - Lemons, Sweeta - $11,400 draw balance (has $5,900 in BL)
>
> Wording in their signed sales agreement states: "The Company will reduce or eliminate Employee's draws if the Employee's draw balance exceeds $10,500."

As further evidence that draw reduction/elimination was not an empty threat, Ex. 13 shows that on the same day Ms. Dooly sent the "Reducing draw (Houston)" email to Ms. Mazzie, salesperson Nakia Holmes's draw was ***completely eliminated***.  Nakia Holmes's draw was reduced from $1,250 to $0, and the comments state, "taking EE [employee] off auto draw."   KB Home's compensation scheme is clearly performance based.

---

[37] Doc. 223 at 30.

KB Home's compensation scheme is directly analogous to the situation in *Bowman v. Builder's Cabinet Supply Co.*, where the court held that the salary basis test was not satisfied because the employee's draw was reduced and ultimately eliminated due to her poor sales.  2006 WL 2460817 (E.D. Ky. Aug. 23, 2006).

In *Bowman,* the plaintiff's draw was reduced and ultimately eliminated due to her poor sales.  Here, like *Bowman*, the KB Home policy is clear that if salespersons are unable to generate commission to pay the deficit owed to KB Home, their monthly draw will be reduced. Thus, KB Home cannot demonstrate that Plaintiffs are compensated on a salary basis because the reduction of the draw is ultimately tied to sales performance.

## C.    The Administrative Exemption Does Not Apply to Salespersons.

Not only is the administrative exemption inapplicable in this case because of KB Home's failure to meet the salary basis test, but the Department of Labor has also determined that as a matter of law the administrative exemption does not apply to employees whose primary duty[38] is sales. Under the administrative exemption, an employee's work must be directly related to the management or the general business operations of the employer, "as distinguished, for example, from working on a manufacturing production line or <u>selling a product</u>." 29  C.F.R. § 541.201(a); *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 2015 WL 1379882, at *2

---

[38] An employee's "primary duty" under the regulations means "the principal, main, major or most important duty the employee performs." 29 C.F.R. § 541.700(a).

(5th Cir. Mar. 27, 2015).

As current Vice President of Human Resources for KB Home Deanna Schmitt[39] testified, the primary job duty of the sales representatives is to **sell** the homes that KB Home builds.[40] By law, where an employee's primary duty is sales, his/her primary duty cannot also be related to the management or general business operations of his/her employer for purposes of the administrative exemption.[41] Thus, KB Home salespersons cannot, by law, be exempt under the administrative exemption where their primary duty is sales.

Furthermore, KB Home has asserted the outside sales exemption as a defense to liability in addition to asserting the administrative exemption. KB cannot claim that salespersons are exempt under both the administrative exemption *and* the outside sales exemption because of the conflict in primary job duties.[42]

## II.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Summary Judgment pursuant to the: (1) retail sales exemption; (2) highly compensated exemption; and (3) administrative exemption.

---

[39] Ex. 6, Deposition of Deanna Schmitt, Vol. I, p. 39, ll. 13-17.
[40] Ex. 6, Schmitt Dep., Vol. I., p. 222, ll. 12 – 15.
[41] *See, e.g.,* Opinion Letter, 2010 WL 1822423 (DOL WAGE-HOUR), at *9 (stating the primary duty of mortgage loan officers is to make sales, which is not directly related to the management or general business operations of their employer or their employer's customers, and therefore, mortgage loan officers do not qualify as bona fide exempt administrative employees).
[42] *See, e.g.,* Opinion Letter, 2010 WL 1822423, at *9 (stating the primary duty of mortgage loan officers is to make sales, which is not directly related to the management or general business operations of their employer or their employer's customers, and therefore, mortgage loan officers do not qualify as bona fide exempt administrative employees).

Dated: September 15, 2015

Respectfully submitted,

By: /s/ Rhonda H. Wills
    Rhonda H. Wills
    ATTORNEY-IN-CHARGE
    State Bar No. 00791943
    S.D. Id. No. 20699
    WILLS LAW FIRM, PLLC
    1776 Yorktown, Suite 570
    Houston, Texas  77056
    Telephone:  (713) 528-4455
    Facsimile:  (713) 528-2047

    John M. Padilla
    PADILLA & RODRIQUEZ, L.L.P.
    5433 Westheimer, Suite 825
    Houston, Texas 77056
    Telephone: (713) 574-4600
    Facsimile: (713) 574-4601

    ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2015, I electronically filed the foregoing document with the clerk of the court for the Southern District of Texas using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" and a copy of this document to all attorneys of record by electronic means.

    */s/ Rhonda H. Wills*
    Rhonda H. Wills

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KIP EDWARDS, ET AL., on behalf of themselves and all others similarly situated, | § § § § | Civil Action No.  3:11-cv-240 |
| Plaintiffs, | § § | |
| v. | § § | COLLECTIVE ACTION (JURY TRIAL) |
| KB HOME, ET AL., | § § | |
| Defendants. | § | |

**APPENDIX**

**Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment With Respect to the Retail Sales Exemption, Highly Compensated Exemption and Administrative Exemption**

Ex. 1:        Excerpts from Deposition Transcript of Lacy Vinson

Ex. 2:        Excerpts from Deposition Transcript of Michelle Brailey

Ex. 3:        Excerpts from Deposition Transcript of Mark Heidmann

Ex. 4:        Excerpts from Deposition Transcript of Kyle Davison

Ex. 5:        Excerpts from Deposition Transcript of Renee Gervais

Ex. 6:        Excerpts from Deposition Transcript of Deanna Schmitt (Volume I)

Ex. 7:        Excerpts from Deposition Transcript of Deanna Schmitt (Volume II)

Ex. 8:        Community Teams Training Packet

Ex. 9:        Compilation of Houston Subclass' KB University Training Transcripts with "Community Teams Certification"

Ex. 10:     KB Home Salesperson Employment Agreement

Ex. 11:     Email re Reducing Draw (Houston)

Ex. 12:     Nakia Holmes's Personnel Change Notice Eliminating Draw