United States District Court
Southern District of Texas
**ENTERED**
November 10, 2015
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KIP EDWARDS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:11-CV-240 |
| | § | |
| KB HOME, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The Plaintiffs in this Fair Labor Standards Act (FLSA) collective action are former home salespersons who worked for Defendant KB Home. It is undisputed that Plaintiffs were paid in commissions that did not provide additional compensation for any overtime worked. The central dispute is whether Plaintiffs were exempt from the FLSA's overtime requirement. KB Home asserts that the salespersons are not owed overtime wages because Plaintiffs fall within several FLSA exemptions; the (1) outside sales exemption; (2) the retail sales exemption; (3) the administrative exemption; and (4) the highly compensated exemption. Plaintiff moves for summary judgment on the retail sales exemption, the administrative exemption, and the highly compensated exemption. The Plaintiff's motion for summary judgment on the administrative exemption and the highly compensated exemption is GRANTED. The Court does not decide the retail sales exemption motion at this time.

1 / 7

## I.      Factual Background

Plaintiffs were employed as "Sales Counselors" who sold new homes.  Sales Counselors were paid solely on a commission basis, rather than a fixed salary. Docket Entry 223–G at 8.  A Sales Counselor who did not sell a home during a pay period was paid a "draw" against future commissions.[1]  Docket Entry 206–6 at 16. For every pay period, a Sales Counselor's paycheck would thus reflect either the draw or a commission payment that exceeded the draw.  Docket Entry 223–C at 14.

If a Sales Counselor was unsuccessful in selling homes for a period of time and became indebted to KB Home because of draws that had not been credited against commissions, then KB Home would reduce or eliminate the employee's draw amount, thereby reducing the paycheck.  Docket Entry 231–12; 231–13. Similarly, if an employee was terminated and had a draw backlog, KB Home had the right, through their employment agreement, to demand that the outstanding draw amounts be repaid to KB Home.  Docket Entry 206–6 at 4.

## II.     Standard of Review

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material

---

[1] The employment agreement fixes the default draw amount at $2,500.  Docket Entry 206–6 at 16.  But a Sales Counselor could have her draw reduced because of poor sales performance when the draw balance exceeds a set amount.  *Id.*  In one instance, KB Home halved several employees draw payments when they had excessive draw balances, which resulted from insufficient commissions.  Docket Entry 231–12 at 1.

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

All reasonable doubts on questions of fact must be resolved in favor of the party

opposing summary judgment.  *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th

Cir. 2001) (citation omitted).  KB Home bears the burden of proof on its affirmative

defenses, including the FLSA exemptions. *See Singer v. City of Waco, Tex.*, 324

F.3d 813, 820 (5th Cir. 2003) (employer bears the burden of demonstrating that an

employee is exempt).

## III.   The "Salary Basis" Test

Both the highly compensated exemption and the administrative exemption

require an employer to meet the "salary basis" test, which requires that employees

earn more than $455 per week.  29 C.F.R. § 541.601; *Id.* § 29 C.F.R. § 541.200(a).

Department of Labor regulations explain the types of compensation

arrangements that meet this requirement.  *Id.* § 541.604.  One means of

compensation is payment on a "salary basis."  *Id.* § 541.602(a).  An employee is paid

on a salary basis "if the employee regularly receives each pay period on a weekly,

or less frequent basis, a predetermined amount constituting all or part of the

employee's compensation, which amount is not subject to reduction because of

variations in the quality or quantity of the work performed."  *Id.*  This minimum

payment must be made "free and clear," meaning "finally and unconditionally."  29

C.F.R. § 531.35.  So long as "the employment arrangement . . . includes a guarantee

of at least the minimum weekly-required amount paid on a salary basis," the employer may also provide the employee with "*additional* compensation," including commission on sales.  29 U.S.C. § 541.604(a) (emphasis added).

KB Home argues that their sales counselors received above the minimum weekly amount of $455 in draws, and any fluctuation in the amount paid that is above the minimum amount required is permissible under the regulations.  It relies on the Department of Labor's analysis of a financial services company's compensation system that adjusted commissions for cancelled trades, trader errors, and other trading-related losses.  Dep't of Labor, Opinion Letter, FLSA2006–43 (Nov. 27, 2006).  Notably, however, the employees described in that latter were guaranteed a salary of at least $455 a week, regardless of how much they received through the commissions that were subject to adjustment.  *Id.*  The Department emphasized that "[w]hat matters is that the employee receives no less than the weekly-required amount as a guaranteed salary constituting all or part of total compensation, which amount is not subject to reduction due to the quality or quantity of the work performed, and that the employee is never required to repay any portion of that salary even if the employee fails to earn sufficient commissions or fees."  *Id.*

KB Home's draw system is different from the compensation plan described in the 2006 DOL letter and does what the letter says is impermissible. Unlike the brokers who were paid commissions "in addition to the guaranteed salary amount,"

*id.* at 2; *see also id.* (noting that the "minimum salary/draw" is "coupled with an *added* component" of either commissions or fees), the KB Sales Counselors are paid entirely on commissions.[2]  Their draw is just that, a draw against future commissions and not a separate guaranteed weekly payment.  Docket Entry 231–7 at 3.  This pure draw system means that employees are not being paid any amounts for certain pay periods.  If a Sales Counselor goes two months without a sale and then sells five homes during the third month, then she is only being compensated for the third month with amounts received from the first two months being drawn against the third month's commissions.  This contrasts with the situation in the 2006 DOL letter when the employee is receiving guaranteed pay all three months that is never credited against future commissions (she would just receive higher pay during the third month via the "additional" commissions received for sales that month).

In addition, the KB Home draw can be reduced based on sales performance.  Docket Entry 223–G at 8.  In one instance, five employees had their draw payments halved because they had "excessive draw balances" as the result of inadequate sales.  Docket Entry 231–12 at 1.  Another employee's draw was completely eliminated.

---

[2] KB Home repeatedly tries to fit its system within that described in the 2006 letter by stating that it paid "a combination of draw payments and commissions."  There was a combination in the sense that sometimes an employee would receive a draw and other times a commission (depending on whether sales were made during the pay period).  But a "combination" system is different from a system in which the commissions are paid *in addition* to the weekly payment amounts.  The 2006 letter makes clear that it was addressing this latter scenario involving additional commissions.  The  which is also the line the DOL regulation draws.  *See* 29 C.F.R. § 541.604(a).

Docket Entry 231–13.

KB Home's corporate representative conceded that the draw was a loan, because it was an advance against commissions that had to be repaid through future commissions.  *Id.*  Also damaging to KB Home's position is its employment agreement which states that if an employee is terminated, she can be asked to repay the draw.  Docket Entry 206–6 at 4.  KB Home argues that Plaintiffs have presented no evidence showing that an employee was in fact paid less than $455 a week.  But in asserting an affirmative defense, KB Home bears the burden of producing some evidence in support of its position at the summary judgment stage.  More fundamentally, what matters is whether the compensation system itself guarantees a minimum salary paid to employees.  For example, even if every Sales Counselors sold two homes a week and thus made far in excess of the draw, that would not change the fact that the system does not guarantee any salary.  The undisputed descriptions of KB Home's draw and compensation system demonstrate that it does not guarantee a "free and clear" minimum salary.  Courts have held that similar draw payment systems do not meet the "salary basis test."  *See Bowman v. Builder's Cabinet Supply Co.*, 2006 WL 2460817, at *4 (E.D. Ky. Aug. 23, 2006) (finding the "salary basis test" unsatisfied when plaintiff's draw amount was contingent on her monthly sales and could be reduced or eliminated with poor performance); *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1110 (S.D. Cal. 2006) (rejecting

a draw system that was not paid "free and clear" when deficits in earned commissions are carried forward).

## IV.    Conclusion

For these reasons, Plaintiff's motion for summary judgment (Docket Entry No. 206) on the administrative exemption and the highly compensated exemption are GRANTED.

SIGNED this 10th day of November, 2015.

_____
Gregg Costa
United States Circuit Judge*

---

* Sitting by Designation